**WESTERN CENTER ON LAW & POVERTY**
Helen Tran, SBN 290731
Email: htran@wclp.org
David Kane, SBN 292186
Email: dkane@wclp.org
Joy Dockter, SBN 275196
Email: jdockter@wclp.org
Robert Newman, SBN 86534
Email: rnewman@wclp.org
3701 Wilshire Blvd., Suite 208
Los Angeles, CA 90010
Telephone: (213) 487-7211
Fax: (213) 487-0242

(Additional counsel on following page)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re 2025 Children's Hospital of Los Angeles Subpoena | Case No.: _____<br><br>CLASS ACTION<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO QUASH ADMINISTRATIVE SUBPOENA** |

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH ADMINISTRATIVE SUBPOENA**

**LAWYERS FOR GOOD GOVERNMENT**
Amy E. Powell, NC SBN 50300*
Email: amy@lawyersforgoodgovernment.org
Khadijah M. Silver, NY SBN 5473558*
Email: khadijah@lawyersforgoodgovernment.org
Alyssa F. Morrison, TX SBN 24110135*
Email: amorrison@lawyersforgoodgovernment.org
1319 F St. NW Ste 301
PMB 181
Washington, DC 20004

**IMPACT FUND**
Lori Rifkin, SBN 244081
Email: lrifkin@impactfund.org
Fawn Rajbhandari-Korr, SBN 315888
Email: fkorr@impactfund.org
Meredith Dixon, SBN 346864
Email: mdixon@impactfund.org
Megan Flynn, SBN 359394
Email: mflynn@impactfund.org
2080 Addison St., Suite 5
Berkeley, CA 94704
Telephone: (510) 845-3473
Fax: (510) 845-3654

*Attorneys for Moving Parties*

**Pro hac vice application forthcoming*

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH
ADMINISTRATIVE SUBPOENA**

1

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 9

II. FACTUAL BACKGROUND ........................................................................... 9

   A. Children's Hospital provided gender-affirming care. ........................... 9

   B. The Administration attacks transgender people. ................................. 11

   C. The Subpoena seeks minors' medical records. .................................... 13

   D. Moving Parties are parents or guardians of patients harmed by the subpoena. . 16

III. CLASS ALLEGATIONS ................................................................................ 17

IV. STATUTORY BACKGROUND .................................................................... 18

V. ARGUMENT .................................................................................................... 19

   A. The Subpoena is subject to judicial review and Moving Parties have standing to challenge the Subpoena. ........................................................................... 19

   B. The Court should quash the Subpoena because it violates Moving Parties' rights to informational privacy. ................................................................................ 21

     1. The private information requested is extremely sensitive and holds enormous potential for harm, regardless of safeguards. ....................................... 22

     2. The fourth factor weights against disclosure because DOJ does not need this information. ................................................................................................ 25

     3. Public policy weighs in favor of quashing the Subpoena ................................ 28

   C. The Court should quash the Subpoena because it fails to comply with statutory standards. ........................................................................................................ 29

VI. CONCLUSION ................................................................................................ 31

CERTIFICATE OF COMPLIANCE .................................................................... 31

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH
ADMINISTRATIVE SUBPOENA**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Azami v. Ohio Nat'l Life Assurance Corp.*,
  19-cv-2504-JGB, 2020 WL 7264838 (C.D. Cal. Aug. 25, 2020) .......................... 21

*Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO*,
  860 F.2d 346 (9th Cir. 1988) ................................................................... 20

*Buckman Co. v. Pls.' Legal Comm.*,
  531 U.S. 341 (2001) ............................................................................... 26

*Conant v. Walters*,
  309 F.3d 629 (9th Cir. 2002) ................................................................... 29

*Coons v. Lew*,
  762 F.3d 891 (9th Cir. 2014) ................................................................... 22

*Daly v. Pa. Dep't of Corr.*,
  No. 1:20-CV-00023-SPB, 2024 WL 4480103 (W.D. Pa. Aug. 7, 2024)............... 23

*Doe v. Attorney General of U.S.*,
  941 F.2d 780 (9th Cir. 1991) ............................................................... 21, 22

*Doe v. Triangle Doughnuts, LLC*,
  No. 19-CV-5275, 2020 WL 3425150 (E.D. Pa. June 23, 2020) ........................... 24

*Doe v. United States*,
  253 F.3d 256 (6th Cir. 2001) ................................................................... 26

*EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*,
  719 F.2d 1426 (9th Cir. 1983) ............................................................... 19, 29

*Gibson v. Fla. Legislative Investigation Comm.*,
  372 U.S. 539 (1963) ............................................................................... 20

*In re Admin. Subpoena No. 25-1431-019*,
  No. 1:25-MC-91324-MJJ, 2025 WL 2607784 (D. Mass. Sept. 9, 2025) 3, 20, 27, 28

*In re Crawford*,
  194 F.3d 954 (9th Cir. 1999) ................................................................... 22

*In re Grand Jury Proceedings*,
  867 F.2d 562 (9th Cir. 1989) ............................................................... 20, 21

*In re M.T.*,
  106 Cal. App. 5th 322 (2024) ................................................................... 24

*Myers v. Bates*,
  No. 2:19-CV-00786-CKD, 2020 WL 7769926 (E.D. Cal. Dec. 30, 202............... 21

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH
ADMINISTRATIVE SUBPOENA**

*N.L.R.B. v. Cable Car Advertisers, Inc.*,
   319 F. Supp. 2d 991 (N.D. Cal. 2004)................................................................ 21

*Nw. Mem'l Hosp. v. Ashcroft*,
   362 F.3d 92329 (7th Cir. 200 ............................................................................ 23

*Oregon v. Ashcroft*,
   368 F.3d 1118 (9th Cir. 2004)........................................................................... 27

*Peters v. United States*,
   853 F.2d 692 (9th Cir. 1988) ............................................................... 19, 20, 30

*Planned Parenthood of S. Arizona v. Lawall*,
   307 F.3d 783 (9th Cir. 2002) ............................................................................ 23

*Powell v. Schriver*,
   175 F.3d 107 (2d Cir. 1999) ....................................................................... 22, 23

*QueerDoc, PLLC v. DOJ*,
   No. 2:25-MC-00042-JNW, 2025 WL 3013568 (W.D. Wash. Oct. 27, 2025) ...........
   .................................................................................................... 14, 20, 27, 28

*Reich v. Mont. Sulphur & Chem. Co.*,
   32 F.3d 440 (9th Cir. 1994) ......................................................................... 19, 20

*Tucson Woman's Clinic v. Eden*,
   379 F.3d 531 (9th Cir. 2004) ............................................................................ 22

*United States v. Golden Valley Elec. Ass'n*,
   689 F.3d 1108 (9th Cir. 2012) ............................................................. 19, 20, 30

*United States v. Powell*,
   379 U.S. 48 (1964) ........................................................................................... 20

*United States v. R. Enters., Inc.*,
   498 U.S. 292 (1991) .................................................................................... 20, 30

*United States v. Rainer*,
   670 F.2d 70212 (7th Cir. 198 ........................................................................... 21

*United States v. Saxton*,
   No. 120CV01278, 2021 WL 3510274 (E.D. Cal. Aug. 10, 2021)................... 30, 31

*United States v. Westinghouse Elec. Corp.*,
   638 F.2d 570 (3d Cir. 1980) ................................................................. 20, 21, 22

*United States v. Wilson*,
   98 F.4th 1204 (10th Cir. 2024)......................................................................... 30

*Whalen v. Roe*,
   429 U.S. 589 (1977) ......................................................................................... 21

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH
ADMINISTRATIVE SUBPOENA**

## Statutes

18 U.S.C. § 24 .................................................................................................. 18
18 U.S.C. § 24(a) ............................................................................................. 16
18 U.S.C. § 3486 ......................................................................................... 26, 30
18 U.S.C. § 3486(a)(1)(A)(I) .......................................................................... 18
18 U.S.C. § 3486(e) ......................................................................................... 25
18 U.S.C. § 3486(e)(1) ..................................................................................... 25
21 U.S.C. § 331 ............................................................................................... 26
42 U.S.C. §§ 1320d–1320d-9 .......................................................................... 18
Bus. & Prof. Code §§ 850.1, 852 .................................................................... 10
California Health & Safety Code § 1439.50 .................................................... 10

## Rules

Federal Rule of Civil Procedure 45 ................................................................. 21
Federal Rule of Civil Procedure 45(d)(3)(A) .................................................. 21
Federal Rules of Civil Procedure 23(a) and 23(b)(2) ...................................... 17

## Regulations

45 C.F.R. § 164.512 ........................................................................................ 19
45 C.F.R. § 164.512(f)(1)(ii)(C) ........................................................... 19, 29, 30
45 C.F.R. §§ 164.102–164.535 ........................................................................ 18
Cal. Code Regs. tit. 10, § 2561 ....................................................................... 10

## Other Authorities

*Children's Hospital Los Angeles Recognized Among Nation's Top 10 Children's Hospitals 17 Years in a Row*, Children's Hospital (Oct. 7, 2025), perma.cc/PXV9-SVBT ............................................................................................................... 9

Sam Levin, *Trans Youth Fight for Care as California Clinics Cave to Trump: "How Can This Happen Here?"*, The Guardian (July 11, 2025), perma.cc/Q7GG-4WCD 9

Anna Furman, *The biggest gender-affirming care center for trans kids in the US is closing, prompting protests*, Ass. Press (July 11, 2025), perma.cc/NL5D-RH84 ..... 9

*See* GLAAD, Medical Association Statements in Support of Health Care for Transgender People and Youth, perma.cc/824G-K22J ........................................... 10

*See, e.g.,* Tordoff DM, et al., *Mental Health Outcomes in Transgender and Nonbinary Youths Receiving Gender-Affirming Care*, 5 JAMA Netw. Open e220978 (2022), perma.cc/4UG9-KP9A ....................................................................................... 10

Williams Inst., Access to Gender-Affirming Care Associated with Lower Suicide Risk for Transgender People (Sept. 1, 2021), perma.cc/6X3M-2QUG .................. 10

*See also* Gina M. Sequeira et al., *Transgender Youth's Disclosure of Gender Identity to Providers Outside of Specialized Gender Centers,* 66 J. OF ADOLESCENT HEALTH 691, 696 (2020), perma.cc/9ZX3-HZ5X ............................................... 10

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH
ADMINISTRATIVE SUBPOENA**

*See also* Cal. DOJ, *Know Your Rights - Gender-Affirming Care*, https://perma.cc/95YB-MUWJ............................................................................ 10

Executive Order 14187 Attorney General Bonta Reminds Hospitals and Clinics of Anti-Discrimination Laws, Cal. Dep't of Justice (Feb. 5, 2025), perma.cc/PFY6-LGC3 11

*See* White House, President Trump Promised to End Child Sexual Mutilation—and He Delivered (July 25, 2025), perma.cc/GQ7F-9FNV (listing Children's Hospital among those that have stopped providing gender-affirming care to adolescents)  11

*See, e.g.,* Exec. Ord. No. 14183, 90 Fed. Reg. 8757 (Jan. 27, 2025), available at Exec. Ord. No. 14168, 90 Fed. Reg. 8615 (January 20, 2025), available at perma.cc/73J7-Q8WS .................................................................................... 11, 12

Exec. Ord. 14187, 90 Fed. Reg. 8771 (Jan. 28, 2025), available at perma.cc/FVQ9-T5JW............................................................................................................... 11

Victoria Ivie, *As Children's Hospital LA Closes Its Gender-Affirming Care Center, Advocates Worry Kids' Lives Are 'on the line,',*  Los Angeles Daily News (July 15, 2025), perma.cc/E6LV-ZUZ8 ............................................................................ 11

Abby Monteil, *Children's Hospital Los Angeles Will Stop Providing Gender-Affirming Care to Trans Youth*, Them (June 13, 2025), perma.cc/2WC4-H6M7 ... 11

Lindsey Dawson & Jennifer Kates, *Overview of President Trump's Executive Actions Impacting LGBTQ+ Health*, KFF (Sept. 25, 2025), perma.cc/73J7-Q8WS........... 11

Mem. for Select Component Heads at 3-4 (Apr. 22, 2025), perma.cc/FVQ9-T5JW ("April 2025 AG Memo") ........................................................... 12, 25, 28

Proclamation No. 10911, 90 Fed. Reg. 15203 (April 3, 2025), perma.cc/ZC57-T8DZ ........................................................................................................... 12

Exec. Ord. No. 14190, 90 Fed. Reg. 8853 (Jan. 29, 2025), available at perma.cc/Q67Y-ZRZD .......................................................................... 12

The Administration also rescinded prior executive actions that had extended legal protections based on gender identity. *See* Exec. Ord. No. 14148, 90 Fed. Reg. 8237 (Jan. 20, 2025) (rescinding, for example, Executive Order 13988 which directed federal agencies to prevent discrimination based on gender identity and Executive Order 14075 which advanced other protections for LGBTQ+ people), available at perma.cc/DT9H-76YW ..................................................................... 12

*See* Ass't Att'y Gen., Mem re: Civil Div. Enforcement Priorities, at 2-3 (June 11, 2025), available at perma.cc/V9V9-U34B ("June 2025 AAG Memo") ................ 13

DOJ Press Release (July 9, 2025), available at perma.cc/5WA2-XGPF ................... 13

Executive Order 14168 *See* S. Baum, *Reported FBI Probe Targets Trans-Affirming Care Providers — For Procedure They Don't Do*, Erin In The Morning (June 30, 2025), perma.cc/2UW5-V3VT ............................................................................ 14

7

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH
ADMINISTRATIVE SUBPOENA**

Alec Schemmel, *FBI Launches Probes Into 3 Children's Hospitals for Alleged Genital Mutilation of Minors*, Fox News (June 24, 2025), perma.cc/6CAH-6CH6 14

Justice Manual, § 9-44.202, Overview of Authorized Investigative Demands—Limitations, perma.cc/T3P9-MTPJ ........................................................... 8

*See* FDA, Understanding Unapproved Use of Approved Drugs "Off Label", perma.cc/LER6-XAR3 ........................................................... 26

*Steven A. Engel, Whether the FDA Has Jurisdiction over Articles Intended for Use in Lawful Executions, 43 OP. O.L.C. 81, 85 (2019)* ...................................... 27

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH ADMINISTRATIVE SUBPOENA**

## I.    INTRODUCTION

Moving Parties are parents and guardians of minor patients who previously sought medically necessary gender-affirming care at the Center for Transyouth Health and Development ("the Center") of Children's Hospital Los Angeles ("Children's Hospital"). On behalf of themselves, their children, and a proposed class of similarly situated individuals, Moving Parties bring this motion to quash subpoena requests issued by the United States Department of Justice ("DOJ") that improperly seek their families' private medical information. As other federal courts have done with substantially identical subpoenas, this Court should quash the portions of the Subpoena that seek private, identifying or health information of patients and their families because those requests infringe on the constitutional right of personal informational privacy, fail to comply with statutory standards, and are otherwise unreasonable.

## II.    FACTUAL BACKGROUND

### A. Children's Hospital provided gender-affirming care.

Children's Hospital is a nonprofit organization recognized among the country's top children's hospitals.[1] Prior to its closure, the Center provided medical services including counseling, puberty blockers, hormone replacement therapy, and gender-affirming surgeries.[2] *See* Ex. 7, Decl. of Johanna Olson-Kennedy, M.D., M.S. ¶ 19. Providing this care required comprehensive assessments and record-keeping addressing areas such as mental health, gender identity, sexuality, and reproductive

---

[1] *Children's Hospital Los Angeles Recognized Among Nation's Top 10 Children's Hospitals 17 Years in a Row*, Children's Hospital (Oct. 7, 2025), perma.cc/PXV9-SVBT.

[2] Sam Levin, *Trans Youth Fight for Care as California Clinics Cave to Trump: "How Can This Happen Here?"*, The Guardian (July 11, 2025), perma.cc/Q7GG-4WCD; Anna Furman, *The biggest gender-affirming care center for trans kids in the US is closing, prompting protests*, Ass. Press (July 11, 2025), perma.cc/NL5D-RH84.

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH
ADMINISTRATIVE SUBPOENA**

health. *See id.* ¶¶ 24–27. Every major medical association and leading global health authority supports gender-affirming care for youth who need it.[3] Numerous studies link such care to reduced suicide attempts and lower rates of depression and anxiety. Building trust with patients is essential to providing such care.[4] *See* Ex. 7 ¶¶ 19, 20.

California law expressly protects provision of and access to gender-affirming care as "rights secured by the Constitution and laws of California" and declares that any "interference with these rights, whether or not under the color of law, is against the public policy of California."[5] Civ. Code §§ 1798.301-302. California has enacted multiple statutes safeguarding patients and providers involved in these "sensitive services." *See, e.g.*, Civ. Code §§ 56–56.37, 56.108 and 56.109.[6] California law also prohibits health insurance discrimination based on gender identity and requires insurers to cover gender-affirming care without categorical exclusions. Gov't Code § 12926; Ins. Code § 10144.5; Health & Safety Code § 1367.21; Cal. Code Regs. tit. 10, § 2561.2.[7] Despite these protections, Children's Hospital announced in June

---

[3] *See* GLAAD, Medical Association Statements in Support of Health Care for Transgender People and Youth, perma.cc/824G-K22J.

[4] *See, e.g.,* Tordoff DM, et al., *Mental Health Outcomes in Transgender and Nonbinary Youths Receiving Gender-Affirming Care*, 5 JAMA Netw. Open e220978 (2022), perma.cc/4UG9-KP9A; Williams Inst., Access to Gender-Affirming Care Associated with Lower Suicide Risk for Transgender People (Sept. 1, 2021), perma.cc/6X3M-2QUG; *see also* Gina M. Sequeira et al., *Transgender Youth's Disclosure of Gender Identity to Providers Outside of Specialized Gender Centers,* 66 J. OF ADOLESCENT HEALTH 691, 696 (2020), perma.cc/9ZX3-HZ5X.

[5] Moving Parties use the term "transgender" as defined in California Health & Safety Code § 1439.50, meaning "a person whose gender identity differs from the person's assigned or presumed sex at birth."

[6] *See also* Civ. Code § 56.101; Code of Civ. Proc. §§ 2029.300(e) and 2029.350(b); Penal Code §§ 819(b), 847.5, 13778.3; Bus. & Prof. Code §§ 850.1, 852.

[7] *See also* Cal. DOJ, *Know Your Rights - Gender-Affirming Care*, https://perma.cc/95YB-MUWJ; Attorney General Bonta Reminds Hospitals and Clinics of Anti-Discrimination Laws, Cal. Dep't of Justice (Feb. 5, 2025), perma.cc/PFY6-LGC3.

---

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH ADMINISTRATIVE SUBPOENA**

2025—just one day after DOJ announced the current investigation—that it would close the Center, citing recent Executive Branch actions.[8] The White House celebrated the Center's closure as a victory. *See* White House, President Trump Promised to End Child Sexual Mutilation—and He Delivered (July 25, 2025), perma.cc/GQ7F-9FNV (listing Children's Hospital among those that have stopped providing gender-affirming care to adolescents).

**B. The Administration attacks transgender people.**

The Trump Administration is implementing a comprehensive strategy to drive transgender people out of public society, attacking their dignity, character and legitimacy, including statements that transgender people are incapable of living an "honorable, truthful, and disciplined lifestyle." *See, e.g.,* Exec. Ord. No. 14183, 90 Fed. Reg. 8757 (Jan. 27, 2025), available at perma.cc/Q67Y-ZRZD. The Administration's actions display raw animus and a focused intent to eliminate access to gender-affirming care.[9] Executive Order 14168 declared: "[i]t is the policy of the United States to recognize two sexes, male and female. These sexes are not changeable and are grounded in fundamental and incontrovertible reality." Exec. Ord. No. 14168, 90 Fed. Reg. 8615 (January 20, 2025), available at perma.cc/73J7-Q8WS. Executive Order 14187 instructed the Attorney General to investigate gender-affirming care with the explicit aim to "*end*" such care. Exec. Ord. 14187, 90 Fed. Reg. 8771 (Jan. 28, 2025), available at perma.cc/FVQ9-T5JW (emphasis added). The Attorney General similarly issued a memorandum instructing U.S. Attorneys to

---

[8] Victoria Ivie, *As Children's Hospital LA Closes Its Gender-Affirming Care Center, Advocates Worry Kids' Lives Are 'on the Line,'*  Los Angeles Daily News (July 15, 2025), perma.cc/E6LV-ZUZ8; Abby Monteil, *Children's Hospital Los Angeles Will Stop Providing Gender-Affirming Care to Trans Youth*, Them (June 13, 2025), perma.cc/2WC4-H6M7.
[9] Lindsey Dawson & Jennifer Kates, *Overview of President Trump's Executive Actions Impacting LGBTQ+ Health*, KFF (Sept. 25, 2025), perma.cc/73J7-Q8WS.

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH
ADMINISTRATIVE SUBPOENA**

investigate "all suspected cases of [female genital mutilation]—under the banner of so-called 'gender-affirming care' or otherwise" and to prosecute all offenses to the fullest extent possible. *See* Memorandum for Select Component Heads titled "Preventing the Mutilation of American Children." Mem. for Select Component Heads at 3-4 (Apr. 22, 2025), perma.cc/FVQ9-T5JW ("April 2025 AG Memo"). This memo ordered DOJ components to investigate "any violations of the Food, Drug, and Cosmetic Act ["FDCA"] by manufacturers and distributors engaged in misbranding by making false claims about the on- or off-label use of puberty blockers, sex hormones, or any other drug used to facilitate a child's so-called 'gender transition'" as well as to conduct False Claims Act investigations "of false claims submitted to federal healthcare programs for any noncovered services related to radical gender experimentation." *Id*. at 4. The April 2025 AG Memo plainly stated the purpose of those investigations—to bring "an end" to gender-affirming care. *Id*. at 6.

In April 2025, the Administration issued a proclamation for National Child Abuse Prevention Month categorizing "gender ideology" as "one of the most prevalent forms of child abuse facing our country today." Proclamation No. 10911, 90 Fed. Reg. 15203 (April 3, 2025), perma.cc/ZC57-T8DZ. The statement specifically criticized use of "hormone therapy [and] puberty blockers," "affirm[ing] that every perpetrator who inflicts violence on our children will be punished to the fullest extent of the law." *Id*. Other Executive Orders bar transgender people from military service and restrict federal funding for schools promoting "gender ideology." *See* Exec. Ord. No. 14183, ; Exec. Ord. No. 14190, 90 Fed. Reg. 8853 (Jan. 29, 2025), available at perma.cc/Q67Y-ZRZD.[10] Collectively, these actions seek to

---

[10] The Administration also rescinded prior executive actions that had extended legal protections based on gender identity. *See* Exec. Ord. No. 14148, 90 Fed. Reg. 8237 (Jan. 20, 2025) (rescinding, for example, Executive Order 13988 which directed federal agencies to prevent discrimination based on gender identity and Executive

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH**
**ADMINISTRATIVE SUBPOENA**

marginalize transgender people across all areas of life, especially in their access to healthcare.

**C. The Subpoena seeks minors' medical records.**

On June 11, 2025, DOJ announced the agency would "prioritize investigations of doctors, hospitals, pharmaceutical companies, and other appropriate entities" that provide gender-affirming care. *See* Ass't Att'y Gen., Mem re: Civil Div. Enforcement Priorities, at 2-3 (June 11, 2025), available at perma.cc/V9V9-U34B ("June 2025 AAG Memo"). DOJ subsequently announced "more than 20 subpoenas to doctors and clinics involved in performing transgender medical procedures on children." DOJ Press Release (July 9, 2025), available at perma.cc/5WA2-XGPF. The Attorney General warned that "[m]edical professionals and organizations that mutilated children in the service of a warped ideology will be held accountable." *Id.*

While DOJ has not made those subpoenas public or identified the recipients, substantively identical subpoenas have been made public in legal challenges by recipient healthcare institutions and patient groups. On September 9, 2025, the Massachusetts District Court quashed a subpoena to Boston Children's Hospital, finding it was "motivated only by bad faith." *See In re Admin. Subpoena No. 25-1431-019*, No. 1:25-MC-91324-MJJ, 2025 WL 2607784, at *14 (D. Mass. Sept. 9, 2025) ("*In Re: BCH Subpoena*"), motion to alter judgement and notice of appeal pending. The court explained: "It is abundantly clear that the true purpose of issuing the subpoena is to interfere with [Massachusetts'] right to protect [gender-affirming care] within its borders, to harass and intimidate BCH to stop providing such care, and to dissuade patients from seeking such care." *Id.* California and other states have filed an amicus brief opposing the Government's pending motion in that matter. *See* Ex. 10 at 7. Similarly, the Western District of Washington quashed an identical

Order 14075 which advanced other protections for LGBTQ+ people), available at perma.cc/DT9H-76YW.

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH ADMINISTRATIVE SUBPOENA**

subpoena issued to a telehealth provider, finding it was issued for an improper purpose because it "serves to pressure providers to cease offering gender-affirming care rather than to investigate specific unlawful conduct." *QueerDoc, PLLC v. DOJ*, No. 2:25-MC-00042-JNW, 2025 WL 3013568, at *7 (W.D. Wash. Oct. 27, 2025).

Meanwhile, the Eastern District of Pennsylvania is hearing motions to quash an identical DOJ subpoena from both Children's Hospital of Philadelphia ("CHOP") and a group of patients. *See In Re: Admin. Subpoena No. 25-1431-014*, No. 2:25-mc-00039 (E.D. Pa.) ("*In Re CHOP Subpoena*") (hospital's case); *In Re: Admin. Subpoena No. 25-1431-014*, No. 2:25-mc-00054 (E.D. Pa.) (patients' case). The district court has stayed any obligation to comply with the subpoena, pending briefing. *See* Ex. 13, Order, *In Re CHOP Subpoena*, Dkt. No. 4. Patients of University of Pittsburgh Medical Center ("UPMC") have also moved to quash a subpoena to UPMC, and their motion is pending. *See In Re 2025 UPMC Subpoena*, 2:25-mc-01069 (W.D. Pa.).[11] Moving Parties are aware of only the motions to quash other subpoenas that have been made public.[12]

DOJ recently confirmed that Children's Hospital was among the subpoenaed institutions.[13] Ex. 14, Decl. of Helen Tran ¶¶ 13, 16. Although the Subpoena itself has not been made public, DOJ described it as identical to those directed to CHOP

---

[11] DOJ has filed declarations in these cases explaining the nature of the investigation in general. *See, e.g.,* Ex. 11, Decl. of Lisa Hsiao, *In Re 2025 UPMC Subpoena*, 2:25-mc-01069, Dkt. No. 27-1.

[12] Counsel is aware of only two additional cases as of 1:00PM PST on November 19, 2025. *In Re: 2025 Subpoena to Children's National Hospital,* No. 1:25-cv-03780 (D. Md.); *In Re: Department of Justice Admin. Subpoena No. 25-1431-030*, No. 1:25-mc-00063 (D. Colo.).

[13] *See* S. Baum, *Reported FBI Probe Targets Trans-Affirming Care Providers — For Procedure They Don't Do*, Erin In The Morning (June 30, 2025), perma.cc/2UW5-V3VT; Alec Schemmel, *FBI Launches Probes Into 3 Children's Hospitals for Alleged Genital Mutilation of Minors*, Fox News (June 24, 2025), perma.cc/6CAH-6CH6.

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH
ADMINISTRATIVE SUBPOENA**

and Boston Children's Hospital. *See id.*; *see also* Exs. 8, 9. The Subpoena seeks an extensive range of sensitive patient records and related information, including:

> **Request 11:** "Documents sufficient to identify each patient (by name, date of birth, social security number, address, and parent/guardian information) who was prescribed puberty blockers or hormone therapy."
>
> **Request 12:** "For each such patient identified in Subpoena [Request 11], documents relating to the clinical indications, diagnoses, or assessments that formed the basis for prescribing puberty blockers or hormone therapy."
>
> **Request 13:** "All documents relating to informed consent, patient intake, and parent or guardian authorization for minor patients identified in [Request 11], including any disclosures about off-label use (i.e., uses not approved by the United States Food and Drug Administration) and potential risks."

*See* Exs. 8, 9.

Other requests in the Subpoena likely include patient-identifying information for a far broader group of patients than just those who received puberty blockers or hormone therapy. *See, e.g., id.* at **Request 2** ("documents, including billing records, insurance claims, internal protocols, or guidance, concerning the use of . . . diagnosis codes in connection with the treatment of minor patients receiving gender-related care"); **Request 3** ("documents that . . . relate to any use of diagnosis codes for minors other than those specifically identifying transsexualism, gender dysphoria, gender incongruence, or gender identity disorder"); **Request 4** ("communications with public or private health care benefit programs or plans regarding the use of ICD codes for gender-related care"); **Request 15** ("documents relating to any adverse event . . . or medically unfavorable . . . outcome in a minor patient with regard to gender-related care"). The "Relevant Time Period" for documents to be produced pursuant to the Subpoena is January 1, 2020, through the present. *Id.* at 36.

Neither DOJ nor Children's Hospital informed Moving Parties or putative class

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH
ADMINISTRATIVE SUBPOENA**

members about the Subpoena or sought consent for the release of their private information. *See, e.g.,* Ex. 1, Decl. of Parent AA ¶ 4; Ex. 6, Decl. of Legal Guardian FF ¶ 21. In response to communications from Moving Parties, DOJ recently stated Children's Hospital has not yet provided patient records because the hospital claims that it lacks control over such records, although Children's Hospital is processing other responsive documents; DOJ has not withdrawn the subpoena and has made no representations about its future actions. *See* Ex. 14 ¶¶ 13, 17, 18, 25, 28.

### D. Moving Parties are parents or guardians of patients harmed by the subpoena.

Moving Parties are guardians of six minors who received gender-affirming care at the Center since January 2020. Ex. 1, Decl. of Parent AA ¶ 1; Ex. 2, Decl. of Parents BB1 & BB2 ¶ 1; Ex. 3, Decl. of Parent CC ¶ 1; Ex. 4, Decl. of Parent DD ¶ 1; Ex. 5, Decl. of Parent EE ¶ 1; Ex. 6, Decl. of Legal Guardian FF ¶ 1. The patients provided extremely sensitive private medical information to Children's Hospital regarding their mental health, gender identity, and sexuality, and information about their families and communities. Ex. 1 ¶¶ 6, 7; Ex. 2 ¶¶ 7, 8; Ex. 3 ¶ 6; Ex. 4 ¶ 6; Ex. 5 ¶ 6; Ex. 6 ¶ 7; Ex. 7 ¶¶ 19–27. Two patients were prescribed puberty blockers. Ex. 1 ¶ 9; Ex. 5 ¶ 9. One patient was prescribed hormone therapy, and another had already been prescribed hormone therapy at a different clinic when starting care at Children's Hospital. Ex. 1 ¶ 9; Ex. 6 ¶ 9. The patients had their services billed to insurance. Ex. 1 ¶ 10; Ex. 2 ¶ 9; Ex. 3 ¶ 9; Ex. 4 ¶ 9; Ex. 5 ¶ 10; Ex. 6 ¶ 11. Accordingly, Moving Parties have all provided information to Children's Hospital that is subject to the Subpoena.

Moving Parties first learned about the possibility of a subpoena through the news. *E.g.,* Ex. 5 ¶ 16. Despite numerous inquiries, Children's Hospital has *never* acknowledged receipt of the Subpoena, even after DOJ did. Ex. 14 ¶¶ 5, 10, 12, 13, 15, 16, 20, 21, 22. In response to Moving Parties' counsel seeking an accounting of

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH**
**ADMINISTRATIVE SUBPOENA**

disclosures, Children's Hospital did not confirm or deny the existence of the Subpoena, but implied that no patient information had been provided yet. *Id*. ¶¶ 7–10, 12. Children's Hospital orally confirmed that no personally identifiable health information has been provided to state or federal investigators related to gender-affirming care and that there are no imminent plans to do so. *Id*. ¶ 12. However, in the absence of quashal or withdrawal of the subpoena, Moving Parties reasonably fear that their private information may be shared with DOJ, and that any information shared may not be de-identified. *E.g.*, Ex. 2 ¶¶ 22, 23.

Moving Parties have established that they would be harmed by disclosure of their personal information pursuant to the Subpoena. In addition to the invasion of privacy, they reasonably fear harassment, bullying, violence, and prosecution. *E.g.*, Ex. 2 ¶¶ 14–19; Ex. 3 ¶¶ 11–17; Ex. 6 ¶¶ 13–18; Ex. 7 ¶¶ 28–37. Many of these patients have already faced tremendous challenges and discrimination. *E.g.*, Ex. 1 ¶¶ 13, 20; Ex. 4 ¶¶ 16, 18; *see also* Ex. 7 ¶¶ 28–37. Patients' parents are terrified of being investigated by federal authorities, losing custody for providing medically necessary care to their children, or having their children forced into conversion therapy. *E.g.*, Ex. 6 ¶ 14. The mere existence of the Subpoena has been a factor in some parents' decisions to make the "heartbreaking and financially burdensome choice" to flee this country for their health and safety. Ex. 1 ¶ 18; Ex. 3 ¶ 15.

## III.    CLASS ALLEGATIONS

Moving Parties concurrently file a motion for class certification pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) to proceed on behalf of themselves and a proposed class defined as: *All people, and parents/guardians of minors, who sought and/or received "gender-related care" at Children's Hospital Los Angeles from January 1, 2020, to the present.*[14]

---

[14] DOJ defines "gender-related care" to mean "any medical, surgical, psychological, or social treatment provided to individuals to alter their physical appearance or social

---

17

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH**
**ADMINISTRATIVE SUBPOENA**

As set forth in detail in the motion, the proposed class includes more than 3,000 patients, plus parents and guardians of minor patients. Class members have the same or substantially similar informational privacy interests; disclosure of their records in response to the Subpoena threatens the same or substantially similar type of injury; and the legal questions raised by the Subpoena—whether the Subpoena violates their privacy rights, exceeds DOJ's statutory authority, and was issued for an improper purpose—are the same for all proposed class members, making resolution of this issue and injunctive relief appropriate on a class-wide basis.  Moving Parties' claims are typical of the class, their counsel are experienced in class action and civil rights litigation, and Moving Parties and their counsel will fairly and adequately represent the class.

## IV.    STATUTORY BACKGROUND

Congress authorized the issuance of administrative subpoenas related to the investigation of federal healthcare offenses. 18 U.S.C. § 3486(a)(1)(A)(I); *see also* 18 U.S.C. § 24 (defining "Federal health care offense" as including enumerated criminal offenses). The subpoena may require "the production of any records or other things relevant to the investigation," *id*. § 3486(a)(1)(B), but "shall not require the production of anything that would be protected from production under the standards applicable to a subpoena duces tecum issued by a court of the United States," *id*. § 3486(a)(7).

Both the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320d–1320d-9, and California law protect private health information from disclosure even in response to a subpoena. The privacy of individuals' health records is governed by HIPAA's "Privacy Rule," 42 U.S.C. §§ 1320d–1320d-9; 45 C.F.R. §§ 164.102–164.535, which prohibits a "covered entity" from sharing

---

presentation to resemble characteristics typically associated with the opposite biological sex."

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH**
**ADMINISTRATIVE SUBPOENA**

"protected health information" unless the disclosure falls under one of HIPAA's permitted uses. 45 C.F.R. § 164.512. The Privacy Rule permits disclosure of such information in response to an administrative subpoena only when: "(1) The information sought is *relevant and material* to a legitimate law enforcement inquiry; (2) The request is *specific and limited in scope* to the extent reasonably practicable in light of the purpose for which the information is sought; and (3) *De-identified* information could not reasonably be used." 45 C.F.R. § 164.512(f)(1)(ii)(C) (emphasis added). Similarly, California's Confidentiality of Medical Information Act, Civil Code § 56.10, prohibits a healthcare provider from disclosing patient medical information without obtaining an authorization unless the disclosure is compelled by a government agency for a lawful purpose. Recently-enacted legislation prohibits providing the identities of individuals seeking gender-affirming care even to federal law enforcement to the extent permitted by federal law. Civ. Code § 56.109(c).

## V.    ARGUMENT

### A. The Subpoena is subject to judicial review and Moving Parties have standing to challenge the Subpoena.

Administrative subpoenas are subject to judicial review. *See United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012). The subpoena "may not be 'too indefinite or broad.'" *Peters v. United States*, 853 F.2d 692, 699 (9th Cir. 1988). "The critical questions are: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (*en banc*), *overruled on other grounds as recognized in Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299 (9th Cir. 1994). Even if other criteria are satisfied, "a Fourth Amendment 'reasonableness' inquiry must also be satisfied." *See Reich v. Mont.*

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH ADMINISTRATIVE SUBPOENA**

1    *Sulphur & Chem. Co.*, 32 F.3d 440, 444 n.5 (9th Cir. 1994). An administrative

2    subpoena "is sufficient . . . if the inquiry is within the authority of the agency, the

3    demand is not too indefinite and the information sought is reasonably relevant."

4    *Golden Valley Elec. Ass'n*, 689 F.3d at 1115.

5        A subpoena issued in bad faith or for an improper purpose should be quashed.

6    *See United States v. Powell*, 379 U.S. 48, 58 (1964) (explaining the court would not

7    enforce a subpoena that "had been issued for an improper purpose, such as to harass

8    or pressure the taxpayer to settle a collateral dispute, or for any other purpose

9    reflecting on the good faith of the particular investigation"); *In Re: BCH Subpoena*,

10   2025 WL 2607784, at *5 (quashing DOJ subpoena to BCH); *QueerDoc*, 2025 WL

11   3013568, at *7 (quashing DOJ subpoena to telehealth provider). The requirement that

12   subpoenas be used only for a legitimate and authorized purpose prohibits the

13   government from "engag[ing] in arbitrary fishing expeditions" and "select[ing]

14   targets of investigation out of malice or an intent to harass." *United States v. R.*

15   *Enters., Inc.*, 498 U.S. 292, 299 (1991); *Peters*, 853 F.2d at 700.

16       Courts impose heightened standards on subpoenas that target constitutionally

17   protected information. *See, e.g., Gibson v. Fla. Legislative Investigation Comm.*, 372

18   U.S. 539, 558 (1963) (holding unconstitutional a state legislative subpoena

19   demanding identity information about members of a civil rights organization); *Brock*

20   *v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 350 (9th Cir.

21   1988) (considering whether administrative subpoena infringes the First Amendment);

22   *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 576 (3d Cir. 1980)

23   (balancing constitutional privacy interest against government interest).

24       Moving Parties' privacy interest in their medical records provides

25   constitutional and statutory standing to challenge the Subpoena. In a variety of

26   contexts, courts have held that patients have standing to challenge subpoenas seeking

27   their medical records due to their privacy interest. *See, e.g., In re Grand Jury*

28

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH
ADMINISTRATIVE SUBPOENA**

*Proceedings,* 867 F.2d 562, 563 (9th Cir. 1989) (considering challenge to a grand jury subpoena served on movant's psychotherapist), *overruled on other grounds by, Jaffee v. Redmond,* 518 U.S. 1, 7 (1996) (psychotherapist privilege); *Westinghouse,* 638 F.2d at 581 (providing employees opportunity to object even after employer objected to the subpoena served upon it); *Azami v. Ohio Nat'l Life Assurance Corp.,* 19-cv-2504-JGB, 2020 WL 7264838, at *3 (C.D. Cal. Aug. 25, 2020); *Myers v. Bates,* No. 2:19-CV-00786-CKD, 2020 WL 7769926, at *2 (E.D. Cal. Dec. 30, 2020); *see also United States v. Raineri,* 670 F.2d 702, 712 (7th Cir. 1982) (nonparty movant has standing to quash a subpoena that infringes upon the movant's "legitimate interests").

Under Federal Rule of Civil Procedure 45(d)(3)(A), courts must quash or modify a subpoena that requires disclosure of protected matter or subjects a person to undue burden. The procedures under Rule 45 are applicable here pursuant to Rule 81(a)(5), which applies the Federal Rules "to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings." *See, e.g.*, Ex. 12, Order, *J. Doe v. DHS*, 3:25-mc-80325 (N.D. Cal. Oct. 17, 2025) (applying Rule 45 to administrative subpoena), ECF 3; *see also N.L.R.B. v. Cable Car Advertisers, Inc.*, 319 F. Supp. 2d 991, 1000 (N.D. Cal. 2004) (collecting cases applying federal rules to administrative subpoena proceedings). Accordingly, Moving Parties have constitutional and statutory standing to challenge the Subpoena.

### B. The Court should quash the Subpoena because it violates Moving Parties' rights to informational privacy.

Courts recognize a qualified constitutional right to privacy in the confidentiality of one's medical records. *See Whalen v. Roe*, 429 U.S. 589, 599–600 (1977); *Doe v. Attorney General of U.S.*, 941 F.2d 780, 795–96 (9th Cir. 1991)

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH**
**ADMINISTRATIVE SUBPOENA**

(establishing that information regarding a person's HIV status would fall within the ambit of the privacy protection afforded medical information); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004) (holding requirement to submit fetal ultrasound prints and unredacted medical records to state agency violated patients' right to informational privacy), a*brogated on other grounds*, *Dobbs*, 142 S. Ct. 2228 (2022); *Coons v. Lew*, 762 F.3d 891, 900 (9th Cir. 2014) ("fundamental privacy right in non-disclosure of personal medical information"). "There can be no question that . . . medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection." *Westinghouse*, 638 F.2d at 577.

While the right to informational privacy is not absolute, any infringement must be grounded in a sufficient "showing of proper governmental interest." *See Doe v. Attorney General*, 941 F.2d at 796; *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999). "[T]o determine whether the governmental interest in obtaining information outweighs the individual's privacy interest," the Ninth Circuit weighs the following factors: "(1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of the need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." *Coons*, 762 F.3d at 900 (quoting *Tucson Woman's Clinic*, 379 F.3d at 551). Weighing these factors, Moving Parties' privacy interests heavily outweigh any supposed law enforcement interest in the Subpoena.

### 1.  The private information requested is extremely sensitive and holds enormous potential for harm, regardless of safeguards.

The first three factors weigh in favor of quashing the Subpoena. Information regarding gender identity and care is intimate personal information about sexual identity and subject to constitutional protection, particularly when disclosure

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH ADMINISTRATIVE SUBPOENA**

threatens the patient's personal safety. *See, e.g., Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999); *Daly v. Pa. Dep't of Corr.*, No. 1:20-CV-00023-SPB, 2024 WL 4480103, at *18 (W.D. Pa. Aug. 7, 2024). The right to informational privacy applies "both when an individual chooses not to disclose highly sensitive information to the government and when an individual seeks assurance that such information will not be made public." *Planned Parenthood of S. Arizona v. Lawall*, 307 F.3d 783, 789–90 (9th Cir. 2002).

Here, Subpoena Requests 11 to 13 seek information identified for "each patient" related to their gender identity, diagnosis, and care, as well as requests for their birthdates, addresses, and Social Security numbers. *See* Exs. 8, 9. The Subpoena encompasses privileged psychotherapy records, clinical notes, and other detailed information that patients shared with their physicians to facilitate care. *E.g.*, Ex. 1 ¶¶ 6, 7; Ex. 2 ¶¶ 7, 8; Ex. 3 ¶ 6. Subpoena Requests 2 to 6 and 15 necessarily include the same information. *See* Exs. 8, 9. DOJ thus seeks the identity of patients seeking gender-affirming care and unfettered access to any information in their medical files, including details about minors' mental health, gender identity, and sexual health, information that relates to a minor's relationship with their own body, and information regarding their familial and friend relationships. *See* Ex. 7 ¶¶ 19–27. Anonymization efforts would be ineffective because the volume and detail in these records—including "innumerable sensitive, identifiable facts" about medical care — would permit identification of a particular child and their family. *See, e.g.,* Ex. 1 ¶ 22; Ex. 4 ¶ 21; Ex. 7 ¶ 28; *see also Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 929 (7th Cir. 2004) (holding that redaction of medical records would not be sufficient to protect privacy). Moreover, the information sought is so deeply personal that "[e]ven if there were no possibility that a patient's identity might be learned from a redacted medical record, there would be an invasion of privacy." *Ashcroft*, 362 F.3d at 929.

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH
ADMINISTRATIVE SUBPOENA**

The privacy interest in information of this type is "particularly compelling" because it "is likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others." *Powell*, 175 F.3d at 111. California courts have similarly confirmed that "whether a transgender person's gender identity conforms with their assigned sex at birth is intimate personal information entitled to protection under the right to privacy." *In re M.T.*, 106 Cal. App. 5th 322, 341 (2024); *see also* Health & Safety Code § 103437. Because "[t]ransgender people experience harassment and violence at levels greater than other segments of the American public," it is "self-evident why transgender people have an interest in deciding with whom they disclose their transgender identity." *In re: M.T.*, 106 Cal. App. 5th at 341; *see also Doe v. Triangle Doughnuts, LLC*, No. 19-CV-5275, 2020 WL 3425150, at *4 (E.D. Pa. June 23, 2020) (describing dangerous risks of disclosure due to "the widespread discrimination, harassment, and violence faced by [transgender] individuals"). Moving Parties' declarations confirm the importance of protection from unwarranted intrusion into intimately private matters and avoidance of any potential for public or governmental disclosure. *See supra* pp. 10–11.

The potential for harm is severe. Transgender people are victims of violent crime at extremely high rates.[15] Moving Parties have already faced bullying, threats and violence—and anticipate more, given the Administration's escalating threats. Ex. 1 ¶¶ 12–26; Ex. 2 ¶¶ 10–23; Ex. 3 ¶¶ 10–21; Ex. 4 ¶¶ 10–20; Ex. 5 ¶¶ 11– 18; Ex. 6 ¶¶ 12–23. The Center's former Director faces threats to her life and safety and confirms that the children's fears are reasonable. Ex. 7 ¶¶ 34–37.

---

[15] *See* Andrew R. Flores et al., *Gender Identity Disparities in Criminal Victimization: National Crime Victimization Survey, 2017–2018*, 111 Am. J. Pub. Health 726, 727 (2021), perma.cc/UJX6-PAAY.

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH ADMINISTRATIVE SUBPOENA**

The Subpoena causes three kinds of harm. First, disclosure to the Government alone exposes Moving Parties' most intimate personal information. *See, e.g.*, *Lawall*, 307 F.3d at 789–90. Second, as set forth above, the Subpoena requires disclosure of that information to government agencies avowedly hostile to the patients' and parents' interests as they understand them. Given Administration officials' stated threats, including criminal prosecution, to those involved in gender-affirming care, Moving Parties reasonably anticipate that disclosure of their identities will lead to further harassment.

Third, disclosure pursuant to the Subpoena creates substantial risk of additional disclosure, including public disclosure. There are no meaningful safeguards that limit DOJ's use or dissemination of the information sought by the Subpoena. While 18 U.S.C. § 3486(e) provides that DOJ may not itself use or disclose patient information in "any administrative, civil, or criminal action or investigation directed against the individual who is the subject of the information," that limitation narrowly prohibits the Administration from using information against patients, and even that limit can be overcome. *See* 18 U.S.C. § 3486(e)(1). Nothing prevents DOJ from using patient information to send FBI agents to interview patients, family members, providers and friends, thus effectively disclosing patients' gender identity, forcing them to discuss it with outsiders, or otherwise placing the patients at risk of mental and physical harm. In fact, DOJ has announced its intention to "share intelligence" with state attorneys general and partner with them to "build cases against hospitals and practitioners."  April 2025 AG Memo at 5.

**2.  The fourth factor weights against disclosure because DOJ does not need this information.**

Turning to the fourth factor, the purported investigative purpose for the Subpoena is beyond DOJ's authority. The Subpoena is based on animus and bad

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH**
**ADMINISTRATIVE SUBPOENA**

faith, which is an independent and sufficient reason to quash the subpoena under *Powell*, 379 U.S. at 58.

The Subpoena is not justified by DOJ's authority to investigate possible drug mislabeling and fraudulent billing crimes. Section 3486 authorizes DOJ to issue a subpoena "[i]n any investigation of . . . a Federal health care offense" requiring "the production of any records or other things *relevant to the investigation*." *See Doe v. United States*, 253 F.3d 256, 262 (6th Cir. 2001). "[T]he use of the authorized investigative demands is limited to investigations relating to 'Federal health care offenses' . . . defined in 18 U.S.C. § 24(a)," which includes categories of crimes involving drug mislabeling and fraudulent billing. Justice Manual, § 9-44.202, Overview of Authorized Investigative Demands—Limitations, perma.cc/T3P9-MTPJ.

Responding to a similar motion to quash, DOJ recently submitted a declaration claiming that the purpose of the subpoenas to more than twenty hospitals is to investigate crimes involving the "misbranding" and "illegal labeling" of drugs as potential violations of the FDCA. *See* Ex. 11, Decl. of Lisa Hsiao ¶¶ 2, 3, 5 (describing the authority of the Consumer Protection Branch to investigate FDCA violations). DOJ suggested possible statutory violations for misbranding and illegal labeling, *id*. ¶¶ 13–16, including unlawful distribution of "an approved drug for an unapproved use with labeling for that unapproved use," *id*. ¶18. These offenses fall under 21 U.S.C. § 331 of the FDCA.

The declaration, however, acknowledges that FDA has approved the drugs at issue, and doctors may legally prescribe these drugs for off-label uses. *See* Ex. 11, ¶ 12. As explained by the FDA, "once the FDA approves a drug, providers generally may prescribe the drug for an unapproved use when they judge that it is medically appropriate for their patient." *See* FDA, Understanding Unapproved Use of Approved Drugs "Off Label", perma.cc/LER6-XAR3*; cf. Buckman Co. v. Pls.' Legal Comm.*,

---

26

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH**
**ADMINISTRATIVE SUBPOENA**

531 U.S. 341, 350 (2001) (FDA does not regulate off-label usage of medical devices).

Moreover, DOJ has affirmed that "FDA does not regulate the practice of medicine, which includes 'off-label' prescribing." Steven A. Engel, *Whether the FDA Has Jurisdiction over Articles Intended for Use in Lawful Executions*, 43 OP. O.L.C. 81, 85 (2019). The States, not DOJ, regulate the practice of medicine. *See Oregon v. Ashcroft*, 368 F.3d 1118, 1124 (9th Cir. 2004) ("state lawmakers, not the federal government, are 'the primary regulators of professional [medical] conduct.'"), *aff'd sub nom. Gonzales v. Oregon*, 546 U.S. 243 (2006); *see generally* States' Amicus Br. (criticizing DOJ's novel interpretation of the FDCA). Thus, even if DOJ's inaccurate claims were true—that off-label prescriptions related to gender-affirming care are harmful—those claims still would not be evidence of any crime under the FDCA. Nor would investigation of the labelling and marketing practices of drug manufacturers and distributors require patient-identifying records.

Further undermining the purported need for Subpoenaed records, the declaration only passingly mentions an interest in investigating "fraudulent billing practices" connected with gender-affirming care, does not cite any statutory offenses, and offers no indication that such a broad subpoena for patient records is warranted. *See* Ex. 11 ¶¶ 5, 31. It is important to remember that the Center openly provided gender-affirming care for three decades with approval from both state and federal governments; there is no evidence that its staff would have engaged in fraudulent billing to obfuscate provision of such care.

As two federal courts have already found, DOJ's alleged investigation of mislabeled drugs and fraudulent billing crimes is pretext for the government's actual, explicit, and improper purpose of issuing these subpoenas—to serve "the Administration's goal of ending GAC [gender-affirming care]." *See In re: BCH Subpoena*, 2025 WL 2607784, at *6 ("Context is important."); *QueerDoc, PLLC,*

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH**
**ADMINISTRATIVE SUBPOENA**

2025 WL 3013568, at *7; *see also* April 2025 AG Memo. Ending medically necessary care for a vulnerable population has no connection to drug mislabeling or fraudulent billing and is thus an improper purpose.[16]

The government's purpose for the Subpoena has not changed since the *BCH* court quashed an identical subpoena which was "issued for an improper purpose, motivated only by bad faith." *See In re: BCH Subpoena*, 2025 WL 2607784, at *7. There, the Court found "[i]t is abundantly clear that the true purpose of issuing the subpoena is to interfere with the Commonwealth of Massachusetts' right to protect [gender-affirming care] within its borders, to harass and intimidate BCH to stop providing such care, and to dissuade patients from seeking such care." *Id.* at 7. Similarly, in California, gender-affirming care is a legally protected right that has received ever-more stringent protections from government interference. *See supra* p. 10. Despite the state's robust legal protections, DOJ has already succeeded in using the unlawful Subpoena to end patients' access to this care at Children's Hospital— which the White House publicly celebrated as a victory. *See supra* p. 11. The investigation's vast overbreadth and the Administration's direct, frequent, and escalating attacks on transgender people and their care also support a finding of bad faith. *See supra* pp. 11–13. Because DOJ issued the Subpoena for an improper purpose, it exceeds the authority provided under HIPAA and therefore should be quashed.

### 3.  Public policy weighs in favor of quashing the Subpoena.

Under the fifth factor, there is no "express statutory mandate, articulated public policy, or other recognizable public interest militating toward access" to patient

---

[16] The *QueerDoc* opinion highlights that the targeted telehealth provider neither distributed drugs nor billed insurance. *See QueerDoc, PLLC*, 2025 WL 3013568, at *7. Whatever post hoc justification may materialize for the Subpoena here, it seems plain that DOJ sent 20 identical subpoenas to known providers of gender-affirming without any motivation beyond harassing providers of gender-affirming care.

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH
ADMINISTRATIVE SUBPOENA**

records here. While DOJ's mission includes the investigation of healthcare fraud, there is zero evidence of fraud at Children's Hospital, let alone *twenty* of the nation's top medical centers for children. Nor can DOJ articulate a need for the medical records of every patient who sought gender-affirming care at the Center.

The States' traditional regulation of medical practice establishes public policy against the Subpoena's intrusions. Here, California explicitly protects the right to gender-affirming care and the right to medical privacy, and California is responsible for regulating the practice of medicine in California. *See Conant v. Walters*, 309 F.3d 629, 639 (9th Cir. 2002) (explaining that state lawmakers, not the federal government, are "the primary regulators of professional [medical] conduct"); *see also* States' Amicus Brief (explaining that the subpoena unlawfully encroaches on States' authority). The Court should reject DOJ's attempts to police medical practice standards and expose patient privacy in contravention of California law by quashing the Subpoena.

### C. The Court should quash the Subpoena because it fails to comply with statutory standards.

Even if no heightened inquiry applied to unconstitutional privacy invasions, the Subpoena should be quashed under ordinary review standards of administrative subpoenas because it is outside DOJ's authority and seeks irrelevant information. *See EEOC*, 719 F.2d at 1428. The Subpoena fails to satisfy HIPAA's procedural requirements that the information is "relevant and material," that the request is "specific and limited in scope," and that "de-identified information cannot be used." 45 C.F.R. § 164.512(f)(1)(ii)(C).

First, the DOJ inquiry requests information that is not legitimately relevant or material to federal healthcare offenses, but is aimed at harassing and intimidating transgender patients. *See supra* Part II.

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH**
**ADMINISTRATIVE SUBPOENA**

Second, even were DOJ seeking information relevant to a legitimate inquiry, the Subpoena is overbroad. DOJ makes an unrestrained demand for billing records, insurance claims, and patient medical records, based solely on the Administration's general hostility to gender-affirming care, and without tying those records to any reasonable suspicion. In *Peters*, 853 F.2d at 699, the Ninth Circuit quashed a "general group subpoena against unidentified individuals in an unspecified criminal investigation," reasoning that the INS subpoena power, although broad, did not authorize a "general investigation of unnamed individuals on the suspicion that some of them may be undocumented aliens." Similarly, Section 3486 does not authorize a nationwide "fishing expedition" of all major providers of gender-affirming care on the suspicion that some may be engaged in fraudulent billing. *See also R. Enters., Inc.*, 498 U.S. at 299 (explaining that subpoena cannot be used to harass disfavored groups).

Third, the Subpoena does not even attempt to allow for de-identified information, despite patient information being irrelevant to determining whether drugs have been mislabeled and services improperly billed. *Cf. United States v. Wilson*, 98 F.4th 1204, 1220 (10th Cir. 2024) (affirming modified subpoena that de-identified as much information as practicable where some but not all identifiable information was relevant to doctor-specific inquiry). Although, as Moving Parties explain, complete deidentification would not be possible for these records, and DOJ's explicit demand for identifying information here contravenes the procedural requirements for disclosure of protected health information under HIPAA regulations, 45 C.F.R. § 164.512(f)(1)(ii)(C).

Finally, the Subpoena fails reasonableness review applied to administrative subpoenas, *see Golden Valley Elec. Ass'n*, 689 F.3d at 1113, because there is no valid investigation and because the subpoena is wildly overbroad. Moving Parties are mindful that courts in this Circuit have sometimes found privacy rights involving

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH**
**ADMINISTRATIVE SUBPOENA**

medical records outweighed by public interest in legitimate law enforcement investigations. *See, e.g., United States v. Saxton*, No. 120CV01278, 2021 WL 3510274, at *2 (E.D. Cal. Aug. 10, 2021) (collecting cases). This matter is distinguishable from those in light of the heightened privacy interest in the requested records, and the lack of comparable law enforcement interest at stake. Accordingly, even if no heightened constitutional standard applied, the Court should find that privacy interests outweigh law enforcement interests.

## VI.    CONCLUSION

Moving Parties respectfully request that the Court quash the portions of the Subpoena that seek private, identifying or health information of patients and their families.

Dated: November 21, 2025                    Respectfully submitted,

                                            WESTERN CENTER ON LAW & POVERTY
                                            LAWYERS FOR GOOD GOVERNMENT
                                            IMPACT FUND

                                            /s/ Amy Powell
                                            Amy Powell

                                            /s/ Joy Dockter
                                            Joy Dockter

                                            *Attorneys for Moving Parties*

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH
ADMINISTRATIVE SUBPOENA**

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Moving Parties, certifies that this brief contains 6,985 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 21, 2025                    Respectfully submitted,

WESTERN CENTER ON LAW & POVERTY
LAWYERS FOR GOOD GOVERNMENT
IMPACT FUND

/s/ Amy Powell
Amy Powell

/s/ Joy Dockter
Joy Dockter

*Attorneys for Moving Parties*

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH
ADMINISTRATIVE SUBPOENA**