**WESTERN CENTER ON LAW & POVERTY**
Helen Tran, SBN 290731
Email: htran@wclp.org
David Kane, SBN 292186
Email: dkane@wclp.org
Joy Dockter, SBN 275196
Email: jdockter@wclp.org
Robert Newman, SBN 86534
Email: rnewman@wclp.org
3701 Wilshire Blvd., Suite 208
Los Angeles, CA 90010
Telephone: (213) 487-7211
Fax: (213) 487-0242

(Additional counsel on following page)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re 2025 Children's Hospital of Los Angeles Subpoena | Case No.: _____ <br><br> CLASS ACTION <br><br> **DECLARATION OF HELEN TRAN IN SUPPORT OF MOTION TO QUASH ADMINISTRATIVE SUBPOENA** |

1

**DECLARATION OF HELEN TRAN**

**LAWYERS FOR GOOD GOVERNMENT**
Amy E. Powell, NC SBN 50300*
Email: amy@lawyersforgoodgovernment.org
Khadijah M. Silver, NY SBN 5473558*
Email: khadijah@lawyersforgoodgovernment.org
Alyssa F. Morrison, TX SBN 24110135*
Email: amorrison@lawyersforgoodgovernment.org
1319 F St. NW Ste 301
PMB 181
Washington, DC 20004

**IMPACT FUND**
Lori Rifkin, SBN 244081
Email: lrifkin@impactfund.org
Fawn Rajbhandari-Korr, SBN 315888
Email: fkorr@impactfund.org
Meredith Dixon, SBN 346864
Email: mdixon@impactfund.org
Megan Flynn, SBN 359394
Email: mflynn@impactfund.org
2080 Addison St., Suite 5
Berkeley, CA 94704
Telephone: (510) 845-3473
Fax: (510) 845-3654

*Attorneys for Moving Parties*

**Pro hac vice application forthcoming*

2

**DECLARATION OF HELEN TRAN**

**DECLARATION OF HELEN TRAN**

I, Helen Tran, declare as follows:

1.      I am an attorney licensed to practice law in the State of California and am one of the attorneys for moving parties in this case. This Declaration is submitted in support of moving parties' Motion to Quash Administrative Subpoena. I have personal knowledge of the facts contained in this declaration and, if called as a witness, am competent to testify to those facts.

**2.**      On July 24, 2025, my colleague and co-counsel, David Kane, sent a Freedom of Information Request ("FOIA") request to the United States Department of Justice ("DOJ") through its online FOIA STAR portal, requesting, among other items, copies of subpoenas referenced in DOJ's press release dated July 9, 2025, "Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children." The FOIA request asked for expedited processing. Attached to this declaration and marked as **Exhibits A and B** are true and correct copies of the FOIA request and confirmation of the submission of this request through the FOIA STAR portal.

**3.**      On July 31, 2025, DOJ denied our request for expedited processing to the FOIA request. On September 18, 2025, DOJ provided by email that the estimated processing time for our request would be 650 days. Also on September 18, 2025, we filed an expedited appeal challenging DOJ's delinquent handling our FOIA request and re-submitted the appeal on September 19 by email since the FOIA STAR portal did not allow us to include all required information. DOJ denied our request for an expedited appeal, and the appeal remains "In Progress" to the present date. Attached to this declaration and marked as **Exhibits C, D, and E** are true and correct copies of DOJ's denial of our request for expedited processing, DOJ's estimated processing time, and our expedited appeal, respectively.

**DECLARATION OF HELEN TRAN**

4.    On September 8, 2025, I emailed a letter to Grace Oh, General Counsel for Children's Hospital Los Angeles ("Children's Hospital") about their receipt of a subpoena from DOJ. The letter, sent on behalf of the moving parties, urged the hospital to take all appropriate measures to protect patients' confidential health information and personally identifiable information before responding to the subpoena. Specifically, the letter requested the hospital to provide the following: (1) an accounting of disclosure for each patient at the Center for Transyouth Health and Development for information disclosed in response to the subpoena; (2) an ongoing accounting of disclosures if the hospital continues to release patient health information; (3) assurances to former patients that the hospital will not disclose identifying patient information to future subpoenas and third parties; and (3) to notify former patients of any future actions taken by the hospital to release their identifying information to outside entities. Attached to this declaration and marked as **Exhibit F** is a true and correct copy of the letter to Ms. Oh.

5.    On October 2, 2025, members of our co-counsel team—Amy Powell, Allison Chapman, Robert Newman, and Joy Dockter—and I had a video conference with Children's Hospital's attorneys, Travis Jackson and Steve Wysocky, to discuss the issues raised in our letter. At that video conference, Mr. Jackson represented to us that Children's Hospital has a policy to not comment on government investigations involving the hospital. As such, Mr. Jackson informed us that Children's Hospital could neither confirm nor deny its receipt of a DOJ subpoena requesting records involving gender-affirming care.

6.    On October 7, 2025, following our video conference with Children's Hospital's attorneys and pursuant to the hospital's Notice of Privacy Practices— available at— https://www.chla.org/notice-privacy-practices—I sent a request by email to Health Information Management at Children's Hospital, at ROI@chla.usc.edu, for an accounting of disclosures for five of the six moving

**DECLARATION OF HELEN TRAN**

parties for the time period from June 1, 2025, to present. On October 9, 2025, I sent a request by email to the same email address for an accounting of disclosures for the sixth moving party for the same time period. Attached to this declaration and marked as **Exhibit G** is a true and correct copy of the Notice of Privacy Practices, as retrieved from Children's Hospital's website on November 14, 2025. I have not attached to this declaration true and correct copies of these requests and related correspondence, as described below, because they contain personally identifiable information that cannot be sufficiently redacted to preserve anonymity.

7.    On October 9, 2025, Children's Hospital responded by email to four of the requests with the following statement: "I am confirming that no requests for release of information were made during this time frame for [patient name redacted]." I could not open the file sent for the fifth moving party.

8.    On October 10, 2025, Children's Hospital emailed another set of responses to the October 7 requests for accounting of disclosures. Children's Hospital's statement in each of these responses was: "I am confirming that no such disclosures were made during this time frame for [patient name's] medical records.

9.    On October 22, 2025, I followed up by email with Children's Hospital on the sixth request for an accounting of disclosures.

10.    On October 23, 2025, Children's Hospital's attorney Mr. Jackson informed Robert Newman and me on a phone call that the two different responses from the hospital to the requests for accounting of disclosures meant the same thing—no disclosures of patient information had been made, excluding records accessed by the patients themselves. During this phone call, Mr. Newman and I informed Mr. Jackson that the moving parties intended to file a motion to quash the DOJ subpoena involving gender-affirming care along with motions to proceed under pseudonym and for class certification. As part of our conversation, Mr. Jackson reiterated Children's Hospital's position that it does not comment

**DECLARATION OF HELEN TRAN**

publicly on government investigations, which includes the receipt of government subpoenas.

11.    On October 25, 2025, I emailed DOJ attorneys Ross Goldstein and Patrick Runkle informing them of our plans to file a motion to quash the subpoena served to Children's Hospital. In that email, I explained our plans to file the motion in the next week, absent assurances that the motion was unnecessary. Specifically, I asked for (1) confirmation of the existence of the subpoena to Children's Hospital; (2) a copy of or information about the subpoena; (3) the status of the subpoena and Children's Hospital's response; (4) whether the government will oppose our motion for class certification and, if so, on what basis; (5) whether the government will oppose our motion to proceed under pseudonym; and (6) the government's position on the motion to quash. We asked for a response by October 28, 2025, at 10:00 am EST. Attached to this declaration and marked as **Exhibit H** is a true and correct copy of the October 25 email.

12.    On October 27, 2025, Mr. Newman and I had a video conference with Children's Hospital's attorney Mr. Jackson, at his request, to follow up on our previous conversation. Mr. Jackson stated the following on behalf of Children's Hospital: "No personally identifiable health information has been provided to state or federal investigators related to gender-affirming care, and there are no imminent plans to do so." Despite providing this statement, Mr. Jackson reiterated Children's Hospital's position that it does not comment publicly on government investigations. Mr. Newman and I informed Mr. Jackson during the same video conference that the moving parties intended to file their motions the next day.

13.    Also on October 27, 2025, DOJ attorney Ross Goldstein responded by email to our October 25 email. Mr Goldstein attempted to provide the "assurances it is unnecessary" to file our motion to quash. Mr. Goldstein confirmed that DOJ served Children's Hospital a subpoena, "the requests of which are virtually

identical to those contained in the Boston Children's and CHOP subpoenas," and that "CHLA did not move to quash the subpoena and is producing documents." In the same email, Mr. Goldstein shared CHLA represented "that the entity we subpoenaed does not generally possess or have access to patient charts or records from CHLA." As such, Mr. Goldstein explained: "Given CHLA's position about patient charts and records and the fact that there does not seem to be a real possibility of us obtaining patient records from CHLA under this subpoena, we do not see the need nor basis for you to file a Motion to Quash, as any such filing would be moot (and any related filings, like a motion for class certification, would also be moot)." Attached to this declaration and marked as **Exhibit H** is a true and correct copy of the October 27 email from DOJ.

14.    Given the ambiguities in Mr. Goldstein's email about DOJ's continued pursuit of patient records from the Transyouth Center, my co-counsel Amy Powell requested a meeting with Mr. Goldstein.

15.    On October 28, 2025, at the request of Children's Hospital attorney Mr. Jackson, Mr. Newman and I attended a video conference with Mr. Jackson and Ted Diskant, another attorney representing the hospital. During this video conference, Mr. Diskant informed us that Children's Hospital had no immediate plans to produce our clients' personal health information—but, again, did not affirm that Children's Hospital had received a DOJ subpoena for gender-affirming care records. Mr. Diskant attempted to dissuade us from filing our motions. We asked Mr. Jackson and Mr. Diskant whether Children's Hospital would provide advance notice to us if the hospital plans to release records containing patient-identifying information to DOJ or federal investigators. Mr. Diskant and Mr. Jackson said they would bring this request to Children's Hospital to consider.

16.    On October 29, 2025, I had a video conference with DOJ attorneys along with several of my co-counsel. Present at the video conference were

**DECLARATION OF HELEN TRAN**

members of my co-counsel team, Amy Powell, Lori Rifkin, and Allison Chapman, and from DOJ were attorneys Mr. Goldstein, Jordan Campbell, Patrick Runkle, and Scott Dahlquist. My co-counsel Amy Powell inquired whether DOJ was still seeking patient information from the Transyouth Center though any means, including the subpoena, and whether the information provided by Children's Hospital so far to DOJ contained patient-identifying information. DOJ attorneys shared that to their knowledge, Children's Hospital had not produced any documents that contain patient-identifying information, though the hospital had produced other documents requested in the subpoena. Although we inquired which entity Children's Hospital had informed DOJ has possession, custody, or control of patient charts and records, Mr. Runkle did not that share that information and directed us to Children's Hospital's counsel.

17.    During this video conference, DOJ attorneys informed us that, as part of any investigation into Children's Hospital, there are mechanisms in addition to an administrative subpoena for DOJ and federal investigators to obtain patient records. DOJ attorneys confirmed that, as of that date, they had not sought medical records of patients at the Transyouth Center through other means. DOJ attorneys also said while DOJ had not as of that date enforced the subpoena against Children's Hospital, they maintain their right to do so at any time, as well as to issue any other subpoenas or use another means to seek records of patients of the Transyouth Center. DOJ attorneys also advised us that they could be prohibited by law from disclosing the existence and enforcement of other subpoenas.

18.    At no point did DOJ attorneys represent that they had withdrawn the subpoena or any of its parts to Children's Hospital.  And they specifically disclaimed that they were giving any assurances about future action.

19.    My co-counsel and I asked DOJ attorneys whether DOJ would give us advance notice if they plan to enforce the subpoena against Children's Hospital for

**DECLARATION OF HELEN TRAN**

patient records or otherwise seek access to those records. DOJ attorneys said they would discuss this internally and get back to us.

20.    On October 30, 2025, following our conversation with DOJ and the continued lack of specific information from Children's Hospital about the subpoena, I emailed Children's Hospital's attorneys seeking responses to the following questions: (1) whether the hospital would provide us with reasonable advance notice in the future if it plans to release documents or records to federal investigations (including DOJ) containing patient-identifying information from the Transyouth Center; (2) whether Children's Hospital's October 27 statement applied to certain requests in the DOJ subpoena that involve patient-identifying information; and (3) which entity or entities at Children's Hospital are now currently responsible for the maintenance, access, and oversight of patient records previously associated with the Transyouth Center. Attached to this declaration and marked as **Exhibit I** is a true and correct copy of the October 30 email.

21.    On October 31, 2025, Mr. Newman and I met by video conference with Children's Hospital's attorneys Mr. Jackson and Mr. Diskant. Mr. Diskant informed us that Children's Hospital would provide us with advance notice verbally—and not in writing—if there is a likelihood the hospital would be producing the moving parties' personal health information.

22.    On November 18, 2025, I emailed Mr. Jackson and Mr. Diskant to inform them of the moving parties' intention to file the motion to quash, motion for class certification, and motion to proceed under pseudonym on November 20. I recounted their statements to us in previous video conferences, including their refusal to commit or deny whether Children's Hospital had been served with a subpoena and their refusal to put anything in writing. In that email, I also asked whether Children's Hospital supports, opposes, or takes no position on these three

9

**DECLARATION OF HELEN TRAN**

motions. Attached to this declaration and marked as **Exhibit J** is a true and correct copy of the November 18 email to Mr. Jackson and Mr. Diskant.

23.    To date, we have not received any written or oral assurances from Children's Hospital that it *will not* disclose records containing personal health information or personally identifiable information in response to the subpoena. In other words, Children's Hospital may disclose such patient records to DOJ at any time, now and in the near future, without guardrails for former patients to prevent these disclosures. As soon as Children's Hospital turns over to DOJ personal health information or personally identifiable information of former patients at the Transyouth Center, irreversible harm will be done to the moving parties and class members.

24.    Also on November 18, 2025, my co-counsel Amy Powell emailed DOJ attorney Mr. Goldstein informing them of our intention to file the motion to quash, motion for class certification, and motion to proceed under pseudonym on November 20, and sought DOJ's position on each motion. She recounted statements made by DOJ attorneys at our October 29 video conference. Attached to this declaration and marked as **Exhibit K** is a true and correct copy of the November 18 email to DOJ.

25.    Later that same day on November 18, DOJ attorney Mr. Goldstein responded. In the email, Mr. Goldstein shared DOJ's position that they believe "litigation is not warranted." DOJ did not provide their position on our motions. Attached to this declaration and marked as **Exhibit K** is a true and correct copy of DOJ's November 18 email.

26.    On November 19, 2025, Children's Hospital attorney Mr. Diskant responded to our inquiries. Attached to this declaration and marked as **Exhibit L** is a true and correct copy of the November 19 email from Children's Hospital.

**DECLARATION OF HELEN TRAN**

27.     On November 19, 2025, my co-counsel Amy Powell emailed Mr. Goldstein about why we are filing our motions. Attached to this declaration and marked as **Exhibit M** is a true and correct copy of the November 19 email to DOJ.

28.     It is my understanding, based on the October 29 video conference and DOJ's November 18 email, that the subpoena is still open, Children's Hospital is still in the process of responding, and DOJ may attempt to enforce the subpoena, including parts that involve records of former Transyouth Center patients.

29.     On November 20, 2025, Mr. Diskant emailed: "(i) CHLA takes no position on the motion to file under pseudonyms and, (ii) that while CHLA does not currently anticipate asking to be heard in connection with a motion to quash or a motion for class certification, we will need to review the filings before making a final decision."

30.     On November 20, 2025, Mr. Goldstein emailed: (1) "On the motion for class certification, we do not consent to class certification and will oppose any motion seeking to certify a class as you've described." (2) "On the motion to quash, we obviously would oppose it." (3) On the motion to proceed under pseudonym, we do not consent to your clients' proceeding entirely under pseudonym. Although in similar subpoena challenges we have not opposed proceeding by pseudonym, the calculus is different here because you are simultaneously seeking class certification. Put differently, but for your motion to certify a class of pseudonymous litigants, we likely would take a different position."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 20, 2025, in Los Angeles County, State of California.

_____

Helen Tran

11

**DECLARATION OF HELEN TRAN**

# EXHIBIT A

**WESTERN CENTER**
**ON LAW & POVERTY**

www.wclp.org

**LOS ANGELES HEADQUARTERS**
3701 Wilshire Blvd, Suite 208
Los Angeles CA 90010
P 213.487.7211
F 213.487.0242

**SACRAMENTO**
1107 Ninth Street, Suite 680
Sacramento CA 95814
P 916.442.0753

**OAKLAND**
449 Fifteenth Street, Suite 301
Oakland CA 94612
P 213.487.7211
F 213.487.0242

July 24, 2025

Office of the Attorney General
U.S. Department of Justice
441 G St NW, 6th Floor
Washington, DC 20530

Dear Freedom of Information Act Office,

Under the Freedom of Information Act, 5 U.S.C. § 552, we are requesting access to copies of the following documents related to the Department's press release dated July 9, 2025, "Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children." We ask that a copy of the records described below be provided to us. We do not wish to inspect the records beforehand.

1) All subpoenas that the Department of Justice sent to doctors and clinics involved in performing transgender medical procedures on children since January 2025.

2) All subpoenas that the Department of Justice sent to patients who received transgender medical procedures, or to their families, since January 2025.

3) All answers, objections, or other responses received from recipients of the Department of Justice's subpoenas described in items 1 and 2 above.

**Withholdings**

Should you seek to withhold any documents or portions of documents, we request that you provide a *Vaughn* index of those documents, stating with specificity the description of the document to be withheld and the legal and factual grounds for the withholding. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). This index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA" (*Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979)) and "for each withholding it must discuss the consequences of disclosing the sought-after information" (*King v. US. Dep't of Justice*, 830 F.2d 210, 223-24 (D.C. Cir. 1987)). Should any document include both disclosable and nondisclosable material that cannot reasonably be segregated (*see* 5 U.S.C. § 552(b) (requiring disclosure of any material that can reasonably be segregated)), we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document, in accordance with *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

**Request to Waive Fees**

We request a waiver of search, review, and duplication fees because disclosure of the requested records "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). A federal regulation (45 C.F.R. § 5.54) lists three factors that, if met, entitle the requester to a waiver of fees. We believe our request satisfies these factors. *First*, disclosure of the information requested here "would light on the operations or activities of the government" (*id.* § 5.54(b)(1)), specifically information about how the government is seeking private health information for transgender patients.

*Second,* Western Center will disseminate any information obtained through this request to the public via fact sheets and resources for families of transgender patients, so disclosure of the

July 1, 2025
Page 2

requested information will likely "contribute significantly to public understanding" of the federal government's operations and approach to the transfer of the data. *Id.* § 5.54(b)(2). Disclosure of this information will be "meaningfully informative" about [DOJ] operations or activities" because it is not already in the public domain. *Id.* The request also pertains to government policies and activities that are under public scrutiny, making them significant to the public's understanding of the government's operations and positions on important issues affecting access to health care for transgender patients. *Id* § 5.54(b)(2)(i). Because the subpoenas are occurring in multiple states and potentially affecting thousands of people, disclosure of these records will necessarily "contribute to the understanding of a reasonably broad audience of persons interested in the subject." *Id.* § 5.54(b)(2)(ii). Moreover, Western Center's "expertise in the subject area" and its substantial "ability and intention to effectively convey information to the public" demonstrates that disclosure here will contribute to the understanding of a broad audience of persons. As described on our website, www.wclp.org, Western Center is a non-profit legal organization whose mission is to fight in courts, cities, counties, and in the Capitol to secure housing, health care, and a strong safety net for Californians with low incomes. This includes preserving and expanding equitable health care for all Californians, including transgender patients.

*Third,* this request is not "in the commercial interest of the requester." *Id.* § 5.54(b)(3). Western Center does not have any commercial interest in the disclosure of the requested records and does not seek to benefit commercially from this information. We work to help people access health care, including transgender patients. Our clients cannot afford to pay for legal assistance. They also cannot afford the costs associated with this request. The dissemination of information to the public will be at no cost and for the purpose of educating the public and promoting Western Center's mission.

**Request for Expedited Processing**

We ask that you provide expedited processing of this FOIA request, which qualifies for such treatment pursuant to 45 C.F.R. § 5.27 and 5 U.S.C. § 552(a)(6)(E). There is an "urgency to inform the public concerning actual or alleged Federal Government activity" as it relates to the government's efforts to seek private health information about transgender patients. The individuals that we serve have an immediate interest in knowing whether and how widely their protected health will be shared among federal officials. Furthermore, as noted above, Western Center is "primarily engaged in disseminating information to the public." 45 C.F.R. § 5.27(b)(2). Dissemination of information about government activities, particularly with respect to health care access for transgender patients, is a critical and substantial component of our mission.

In addition to prioritizing this request and expediting it, we ask that you strictly comply with the 20-day time limit established by FOIA. 5 U.S.C. § 552(a)(6)(A). Please be advised that once this 20-day period has expired, you are deemed to have constructively denied this request, and we will consider the internal appeals process to be constructively exhausted. *See, e.g., Citizens for Responsibility and Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180 (D.C. Cir. 2013).

If there are any fees for searching or copying the records, please let us know before you fill our request.

We request that the information we seek be provided in electronic format, and we would like to receive it in the form of an email addressed to dkane@wclp.org, or, if necessary, in a secure file transfer. You may contact David Kane at (213) 235-2623 if you would like to discuss our request.

Sincerely,

David M. Kane

David Kane, Senior Attorney

14



**U.S. Department of Justice**

Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

July 31, 2025

David Kane
Western Center on Law & Poverty              Re:    FOIA-2025-06057
dkane@wclp.org                                              ADF:ERH:AKT

Dear David Kane:

This is to acknowledge receipt of your Freedom of Information Act (FOIA) request dated and received in this Office on July 24, 2025, in which you requested copies of subpoenas the Department of Justice sent to doctors, clinics, and patients concerning transgender medical procedures, and any response to those subpoenas since January 1, 2025.

You have requested expedited processing of your request pursuant to the Department's standard permitting expedition for requests involving "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." See 28 C.F.R. § 16.5(e)(1)(ii) (2018). Based on the information you have provided, I have determined that your request for expedited processing under this standard should be denied. This Office cannot identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally. Please be advised that, although your request for expedited processing has been denied, it has been assigned to an analyst in this Office and our processing of it has been initiated.

The records you seek require a search in and/or consultation with another Office, and so your request falls within "unusual circumstances." See 5 U.S.C. § 552 (a)(6)(B)(i)-(iii) (2018). Because of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute. For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request. At this time we have assigned your request to the complex track.

Please be advised that the records search options available are dynamic and can be adjusted according to the types of records you are seeking. In general, there are five categories of records search options available to you:

| 1 | Official Correspondence | This category includes final, signed communications, memoranda, policies, and guidelines. |
|---|---|---|

| 2 | Emails and Attachments | This category includes emails sent or received by Department officials and records attached thereto. |
| 3 | Calendars | This category includes the electronic calendar of Department officials. |
| 4 | Standalone Documents | This category includes both electronic computer records and non-electronic (i.e. paper) records of Department officials to the extent that such records were not attached to an email.[1] |
| 5 | Classified Records | This category includes both electronic and non-electronic (i.e. paper) classified records maintained by Department officials. |

The time required to complete our records search will vary significantly depending on the types of records that need to be searched in order to fulfill your request. Furthermore, there are distinct and significant differences between the search time required to complete certain categories of records searches. For example, a records search focused on category 1 records (Official Correspondence) requires the least amount of time to complete. A records search seeking records from categories 2 and/or 3 requires significantly more time than that of category 1. Whereas a search seeking records from categories 4 and/or 5 is the most time-consuming search option and requires substantially more time to complete than a search focused on records of categories 2 and/or 3.

Additional factors, including the timeframe of your request and the number of Department officials who need to be searched in order to fulfill your request, can make a substantial difference in the time it takes to complete our records search. Generally speaking, requests seeking records prior to January 20, 2017, will require additional search time, and the more Department officials that are subject to the records search, the longer it will take to complete.

At this time and in an effort to facilitate our response to your request, we are focusing our records search on official correspondence (i.e. category 1) and emails and attachments that may be responsive to your request (category 2). Based on our experience, the vast majority of records responsive to FOIA requests consist of category 2 records, and it is not common for there to be standalone documents (category 4) that are not also located as attachments to emails. If you are interested in either adding additional categories of records to your search or focusing your search on records other than categories 1 and 2, please notify this Office as soon as possible.[2] You may also agree to an alternative formulation of your request, including a different scope or date range. Please include the administrative tracking number associated with this request in all your correspondence.

Any decision with regard to the application of fees or any request for a fee waiver will be made only after we determine whether fees will be implicated for this request.

---

[1] This category does not include Official Correspondence (i.e. category 1 records).
[2] Notwithstanding your selection, not all of these categories would be appropriate for each request.

We regret the necessity of this delay, but we assure you that your request will be processed as soon as possible.  If you have any questions or wish to discuss the processing of your request, you may contact this Office by telephone at the above number, by e-mail at doj.oip.foia@usdoj.gov, or you may write to the Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001.  Lastly, you may contact our Acting FOIA Public Liaison, Eric Hotchkiss, at the telephone number listed above to discuss any aspect of your request.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, MD 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with this Office's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.  Your appeal must be postmarked or electronically submitted within ninety days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."  If possible, please provide a copy of your original request and this response letter with your appeal.

Sincerely,

for
Andrew D. Fiorillo
Acting Chief, Initial Request Staff
on behalf of
Sean O'Neill
Chief of Staff

# EXHIBIT B



┌ Sign Out    ● Help

| HOME | TRACKING INBOX |

Tracking Inbox » Request

## FOIA-2025-06057
Requester: Kane, David

Status: In Progress

**Request**

### Request Information

| | | | |
|---|---|---|---|
| Request Type | Request | Agency | OIP |
| Request Date | 07/24/2025 | Document Delivery Method | Email |

### Requester Information

| | | | |
|---|---|---|---|
| Salutation | Mr. | Address Type | Mailing |
| First Name | David | Country | United States |
| Middle Name | | Address Line 1 | 3701 Wilshire Blvd |
| Last Name | Kane | Address Line 2 | Suite 207 |
| Email Address | dkane@wclp.org | City | Los Angeles |
| Organization | Western Center on Law & Poverty | State | California |
| Register Number | | Zip/Postal Code | 90010 |
| Phone Number | 2132352623 | | |

Status: In Progress

Other Information

### Description of Request

| | |
|---|---|
| Description | See attached request letter. |
| File Type 1 | |
| File 1 | 🖉 DOJ FOIA Request.pdf |
| File Type 2 | |
| File 2 | |
| File Type 3 | |
| File 3 | |

### Expedited Processing Information

| | | | |
|---|---|---|---|
| Expedited Processing Requested? | Yes | Expedited Justification | See attached request letter. |
| Expedited Processing Request Date | 07/24/2025 | | |
| Standards for Expedition | • 2. An urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information. | | |

### Fee Information

Will Pay Up To

Fee Category

Fee Waiver Requested?                Yes

Fee Waiver Justification                See attached request letter.

# EXHIBIT C



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

July 31, 2025

David Kane
Western Center on Law & Poverty          Re:    FOIA-2025-06057
dkane@wclp.org                                         ADF:ERH:AKT

Dear David Kane:

This is to acknowledge receipt of your Freedom of Information Act (FOIA) request dated and received in this Office on July 24, 2025, in which you requested copies of subpoenas the Department of Justice sent to doctors, clinics, and patients concerning transgender medical procedures, and any response to those subpoenas since January 1, 2025.

You have requested expedited processing of your request pursuant to the Department's standard permitting expedition for requests involving "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." See 28 C.F.R. § 16.5(e)(1)(ii) (2018). Based on the information you have provided, I have determined that your request for expedited processing under this standard should be denied. This Office cannot identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally. Please be advised that, although your request for expedited processing has been denied, it has been assigned to an analyst in this Office and our processing of it has been initiated.

The records you seek require a search in and/or consultation with another Office, and so your request falls within "unusual circumstances." See 5 U.S.C. § 552 (a)(6)(B)(i)-(iii) (2018). Because of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute. For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request. At this time we have assigned your request to the complex track.

Please be advised that the records search options available are dynamic and can be adjusted according to the types of records you are seeking. In general, there are five categories of records search options available to you:

| 1 | Official Correspondence | This category includes final, signed communications, memoranda, policies, and guidelines. |
|---|---|---|

-2-

| 2 | Emails and Attachments | This category includes emails sent or received by Department officials and records attached thereto. |
| 3 | Calendars | This category includes the electronic calendar of Department officials. |
| 4 | Standalone Documents | This category includes both electronic computer records and non-electronic (i.e. paper) records of Department officials to the extent that such records were not attached to an email.[1] |
| 5 | Classified Records | This category includes both electronic and non-electronic (i.e. paper) classified records maintained by Department officials. |

The time required to complete our records search will vary significantly depending on the types of records that need to be searched in order to fulfill your request. Furthermore, there are distinct and significant differences between the search time required to complete certain categories of records searches. For example, a records search focused on category 1 records (Official Correspondence) requires the least amount of time to complete. A records search seeking records from categories 2 and/or 3 requires significantly more time than that of category 1. Whereas a search seeking records from categories 4 and/or 5 is the most time-consuming search option and requires substantially more time to complete than a search focused on records of categories 2 and/or 3.

Additional factors, including the timeframe of your request and the number of Department officials who need to be searched in order to fulfill your request, can make a substantial difference in the time it takes to complete our records search. Generally speaking, requests seeking records prior to January 20, 2017, will require additional search time, and the more Department officials that are subject to the records search, the longer it will take to complete.

At this time and in an effort to facilitate our response to your request, we are focusing our records search on official correspondence (i.e. category 1) and emails and attachments that may be responsive to your request (category 2). Based on our experience, the vast majority of records responsive to FOIA requests consist of category 2 records, and it is not common for there to be standalone documents (category 4) that are not also located as attachments to emails. If you are interested in either adding additional categories of records to your search or focusing your search on records other than categories 1 and 2, please notify this Office as soon as possible.[2] You may also agree to an alternative formulation of your request, including a different scope or date range. Please include the administrative tracking number associated with this request in all your correspondence.

Any decision with regard to the application of fees or any request for a fee waiver will be made only after we determine whether fees will be implicated for this request.

---

[1] This category does not include Official Correspondence (i.e. category 1 records).
[2] Notwithstanding your selection, not all of these categories would be appropriate for each request.

We regret the necessity of this delay, but we assure you that your request will be processed as soon as possible.  If you have any questions or wish to discuss the processing of your request, you may contact this Office by telephone at the above number, by e-mail at doj.oip.foia@usdoj.gov, or you may write to the Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001.  Lastly, you may contact our Acting FOIA Public Liaison, Eric Hotchkiss, at the telephone number listed above to discuss any aspect of your request.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, MD 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with this Office's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.  Your appeal must be postmarked or electronically submitted within ninety days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."  If possible, please provide a copy of your original request and this response letter with your appeal.

Sincerely,

for
Andrew D. Fiorillo
Acting Chief, Initial Request Staff
on behalf of
Sean O'Neill
Chief of Staff

# EXHIBIT D

 Outlook

---

## RE: Your FOIA Request FOIA-2025-06057

**From** Hotchkiss, Eric (OIP) <Eric.Hotchkiss@usdoj.gov>

**Date** Thu 9/18/2025 3:32 AM

**To** David Kane <dkane@wclp.org>

You don't often get email from eric.hotchkiss@usdoj.gov. Learn why this is important

**CAUTION:** This email originated from outside the organization. Please take care when clicking on links or opening attachments.

Good morning David,

As the search is still incomplete for your request (FOIA-2025-06057), the best estimate I can provide is the average processing time for complex requests which is 650 days as reported in the Department of Justice Annual FOIA Report for Fiscal Year 2024. 650 days after your request was received on July 24, 2025 would be May 5, 2027. Please remember that this is an estimate based on very limited information and subject to change.

Thank you,

Eric Hotchkiss
Senior Government Information Specialist &
Acting FOIA Public Liaison
Department of Justice
Office of Information Policy
Main Office Number: 202-514-3642

---

**From:** David Kane
**Sent:** Wednesday, September 17, 2025 7:52 PM
**To:** DOJ.OIP.FOIA (SMO)
**Subject:** [EXTERNAL] RE: Your FOIA Request FOIA-2025-06057

Good afternoon –

We did not receive a response to my message below from July 31. To date, we have received no correspondence or records regarding this FOIA request. When I check the online tracker, it simply says: "Status: In Progress."

Do you have an update on when a response will be provided, and when any records will be produced?

Thanks,

David



**David Kane**
Senior Attorney
Direct 213.235.2623
dkane@wclp.org | www.wclp.org


This message is from Western Center on Law & Poverty and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail, any attachments and any copies from your system. Thank you for your cooperation.

---

**From:** David Kane
**Sent:** Thursday, July 31, 2025 9:27 AM

**To:** DOJ.OIP.FOIA (SMO) <doj.oip.foia@usdoj.gov>
**Subject:** RE: Your FOIA Request FOIA-2025-06057
**RE: FOIA-2025-06057**
       **ADF:ERH:AKT**

Hello –

Thank you for the initial response letter dated July 31, 2025.

In response to your offer to clarify our request's focus on records within or outside of categories 1-5 of your letter, I write to provide further specificity.

Request items 1-3 in our letter refer to the DOJ's efforts described in its July 9, 2025 press release (https://www.justice.gov/opa/pr/department-justice-subpoenas-doctors-and-clinics-involved-performing-transgender-medical):

> Today, the Department of Justice announced that it has sent more than 20 subpoenas to doctors and clinics involved in performing transgender medical procedures on children. The Department's investigations include healthcare fraud, false statements, and more.

> "Medical professionals and organizations that mutilated children in the service of a warped ideology will be held accountable by this Department of Justice." — Attorney General Pamela Bondi

The DOJ should be able to swiftly and easily identify responsive records by focusing its search on the "more than 20 subpoenas" sent that day. In addition, we expect that a core group of staff are handling follow-up correspondence and responses to those subpoenas. This may fit into categories 1, 2, and 4 of your letter. But they may also be stored as official legal documents in another category, depending on internal DOJ operations of which we are not aware. In any event, our request seeks a narrow set of subpoenas and their follow-up correspondence, which does not require an extensive or time-consuming search.

Please let me know if we can share any further information. We look forward to your response within 10 days.

Sincerely,

David



**David Kane**
Senior Attorney
Direct 213.235.2623
dkane@wclp.org | www.wclp.org


This message is from Western Center on Law & Poverty and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail, any attachments and any copies from your system. Thank you for your cooperation.

**From:** OIP-NoReply <OIP-NoReply@usdoj.gov>
**Sent:** Thursday, July 31, 2025 4:59 AM
**To:** David Kane <dkane@wclp.org>
**Subject:** Your FOIA Request FOIA-2025-06057

You don't often get email from oip-noreply@usdoj.gov. Learn why this is important

**CAUTION:** This email originated from outside the organization. Please take care when clicking on links or opening attachments.

Attached is correspondence from the Department of Justice's Office of Information Policy, which is associated with the above-referenced Freedom of Information Act (FOIA) request.
**Please do not reply to this e-mail, as this account is not monitored.**
Thank you,

------------------------------------------

Initial Request Staff
Office of Information Policy
U.S. Department of Justice
202-514-3642 (Main Line)

# EXHIBIT E

**Appeal**

Appeal Information

| | |
|---|---|
| Appeal Number | A-2025-02669 |
| Received Date | 09/18/2025 |
| Due Date | 10/17/2025 |
| Receipt Method | Electronic |
| Postmark Date | |
| Appeal Is In Litigation | No |
| Unusual Circumstances | |
| Track | |
| Agency | OIP |
| Document Delivery Method | Email |
| Topic | |

Litigation Information

| | |
|---|---|
| Litigation Number | |
| First Name of Litigator | |
| Last Name of Litigator | |
| Case Name | |
| Federal District Court | |
| Date of Final Adjudication by Court | |

Request Information

| | |
|---|---|
| Request Number | FOIA-2025-06057 |
| Request ID | |
| Component | OIP |
| Subject of Request | This is an appeal under the Freedom of Information Act. Our request was assigned the following identification number: FOIA-2025-06057. |
| Basis for Appeal | |
| Description of Appeal | Dear USCIS FOIA/PA Appeals Office: |

Description of Appeal:

This is an appeal under the Freedom of Information Act. Our request was assigned the following identification number: FOIA-2025-06057. After sending our request on July 24, 2025, we promptly supplied requested information to assist with the search for records. After hearing nothing since July 31, 2025, we inquired as to the status of our request earlier this week.

Eric Hotchkiss wrote: "the best estimate I can provide is the average processing time for complex requests which is 650 days as reported in the Department of Justice Annual FOIA Report for Fiscal Year 2024. 650 days after your request was received on July 24, 2025 would be May 5, 2027. Please remember that this is an estimate based on very limited information and subject to change."

We appeal your office's delinquent handling of our request. Already 56 days have passed without any records produced. To wait another 600 days is clearly unreasonable, and in violation of the FOIA's promptness requirement. 5 U.S.C. § 552(a)(3)(A) ("each agency...shall make the records promptly available to any person"). Courts do not allow the government to take as long as "months or years" to produce records. See, e.g., Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n, 711 F.3d 180, 188 (D.C. Cir. 2013).

In addition, my request of records is not so complicated that it requires an extensive search. The three topics are narrowly tailored to a single subject: subpoenas that the DOJ sent regarding transgender patients and gender-affirming care. These records should be easily accessible by contacting the small number of DOJ staff who have handled these subpoenas, including Brett Shumate and collaborating colleagues. Please provide me "the opportunity to limit the scope of the request in order to qualify for faster processing." 5 U.S.C. § 552(a)(6)(D)(i).

If you need to discuss this request, you may contact me at dkane@wclp.org or (213) 235-2623.

| | |
|---|---|
| Based on Denial of Fee Waiver | No |
| Based on Denial of Expedited Processing | No |
| Requester Item Type 1 | |
| Requester Items 1 | *No Attachment* |
| Requester Item Type 2 | |
| Requester Items 2 | *No Attachment* |
| Requester Item Type 3 | |
| Requester Items 3 | *No Attachment* |
| Requester Contact Information | |
| Salutation | |
| First Name | David |
| Middle Name | |
| Last Name | Kane |
| Email Address | dkane@wclp.org |
| Organization | Western Center on Law & Poverty |
| Register Number | |
| Phone Number | 2132352623 |
| Fax Number | |
| Other Information | |
| Address Type | Work |
| Country | United States |
| Address Line 1 | 3701 Wilshire Blvd Suite 208 |
| Address Line 2 | |
| Military Branch | |
| City | Los Angeles |
| Province | |
| State | California |

| | |
|---|---|
| Zip/Postal Code | 90010 |

**Expedited Processing Information**

| | |
|---|---|
| Expedited Processing Requested? | Yes |
| Expedited Processing Request Date | |
| Expedited Processing Determination | |
| Standards for Expedition | • 1. Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual.<br>• 2. An urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information.<br>• 3. The loss of substantial due process rights.<br>• 4. A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence. |
| Expedited Justification | We ask that you provide expedited processing of this FOIA request, which qualifies for such treatment pursuant to 45 C.F.R. § 5.27 and 5 U.S.C. § 552(a)(6)(E). There is an "urgency to inform the public concerning actual or alleged Federal Government activity" as it relates to the government's efforts to seek private health information about transgender patients. The individuals that we serve have an immediate interest in knowing whether and how widely their protected health will be shared among federal officials. People have contacted our office and partner organizations to urgently ask: "Was my hospital provider served with one of these subpoenas?" Furthermore, as noted above, Western Center is "primarily engaged in disseminating information to the public." 45 C.F.R. § 5.27(b)(2). Dissemination of information about government activities, particularly with respect to health care access for transgender patients, is a critical and substantial component of our mission. |
| Workflow State | Submitted |

**Records Management**

| | |
|---|---|
| Workflow Status | Submitted |
| Disposition Date | |
| Marked for Disposition | |
| Disposition Confirmed | |
| Disposition Confirmed By | |

 Outlook

---

## RE: Appeal Expedited Determination for Appeal Number A-2025-02669

**From** Hotchkiss, Eric (OIP) <Eric.Hotchkiss@usdoj.gov>

**Date** Mon 9/22/2025 3:25 AM

**To** David Kane <dkane@wclp.org>

**CAUTION:** This email originated from outside the organization. Please take care when clicking on links or opening attachments.

Hi David,

I have forwarded to the Appeals Staff.

Thank you,

Eric Hotchkiss
Senior Government Information Specialist &
Acting FOIA Public Liaison
Department of Justice
Office of Information Policy
Main Office Number: 202-514-3642

---

**From:** David Kane <dkane@wclp.org>
**Sent:** Friday, September 19, 2025 6:43 PM
**To:** Hotchkiss, Eric (OIP) <Eric.Hotchkiss@usdoj.gov>
**Subject:** [EXTERNAL] RE: Appeal Expedited Determination for Appeal Number A-2025-02669

Hi Eric,

I submitted my FOIA appeal for A-2025-02669 regarding request no. FOIA-2025-06057 on the FOIA STAR website. It did not include a place to add the "statement certified to be true and correct."

As required by federal regulation, 28 C.F.R. § 16.5(e)(3), I hereby certify that the above information is true and correct to the best of my knowledge and belief. As already described in my appeal, Western Center is "primarily engaged in disseminating information to the public." In other words, we meet the requirement of "information dissemination." 28 C.F.R. § 16.5(e)(3).

Please ensure that my appeal is reopened and properly processed as expedited.

Sincerely,
David



**WESTERN CENTER**
ON LAW & POVERTY

**David Kane**
Senior Attorney

Direct 213.235.2623

dkane@wclp.org | www.wclp.org



This message is from Western Center on Law & Poverty and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail, any attachments and any copies from your system. Thank you for your cooperation.

**From:** Administrator Email <oip-noreply@usdoj.gov>
**Sent:** Friday, September 19, 2025 5:10 AM
**To:** David Kane <dkane@wclp.org>
**Cc:** No-Reply.OIP.FOIASTAR@usdoj.gov
**Subject:** Appeal Expedited Determination for Appeal Number A-2025-02669

**CAUTION:** This email originated from outside the organization. Please take care when clicking on links or opening attachments.

Expedited Determination decision has been made on Appeal Number A-2025-02669 with the decision of Improper.

Your request for expedited handling of your appeal is unperfected. You have not provided a statement certified to be true and correct, nor have you provided any facts to support your assertion that expedited processing is warranted under standards one, two, three, or four. See 28 C.F.R. 16.5(e)(3). Your appeal is currently being processed and this Office will respond to you once a final determination has been made on your appeal. If you are dissatisfied with my action on your request for expedited treatment of your appeal, you may file a lawsuit in accordance with 5 U.S.C. § 552(a)(6)(E)(iii).

# EXHIBIT F

 

www.wclp.org

September 8, 2025

Grace Oh, Senior Vice President and General Counsel
Children's Hospital Los Angeles
4650 Sunset Blvd.
Los Angeles, CA 90027
Email: goh@chla.usc.edu

**RE:**     **Subpoena for Transyouth Patient Records and Closure of Center for Transyouth Health and Development**

To Ms. Oh:

Western Center on Law and Poverty and Lawyers for Good Government write this letter on behalf of our clients who are former patients at the Center for Transyouth Health and Development of Children's Hospital Los Angeles (Transyouth Center). Between July 9, 2025, when the U.S. Department of Justice announced it "sent more than 20 subpoenas to doctors and clinics involved in performing transgender medical procedures on children"[1] and now, we have become aware that Children's Hospital received one of these subpoenas and is in the process of responding to it. Our clients have significant protectable interests in the documents and information sought in the subpoena, including their confidential patient records and protected personally identifiable information.[2] Release of these documents and information, even if ostensibly "de-identified," would put our clients at imminent risk of irreparable harm, and would violate state and federal law. **We request a meeting with persons most qualified to discuss the issues raised in this letter.**

Children's Hospital abruptly closed its Transyouth Center on July 22, after giving less than two-months notice to approximately 3,000 impacted patients and their families and suddenly leaving them without alternative sources of medically necessary, legally protected care. To our knowledge, Children's Hospital has not shuttered any of its other services in response to political or financial pressures. Furthermore, Children's Hospital did not arrange for continuity of care for our clients and other patients. The hospital merely provided a generic termination letter with a list of provider referrals, without verifying whether the providers listed were accepting new patients and without consideration of the acuity of each patient's

---

[1] U.S. Department of Justice, Press Release, *Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children*, July 9, 2025, https://www.justice.gov/opa/pr/department-justice-subpoenas-doctors-and-clinics-involved-performing-transgender-medical.
[2] Azeeen Ghorayshi & Glenn Thrush, *Justice Dept. Demands Patient Details from Trans Medicine Providers*, New York Times, July 17, 2025, https://www.nytimes.com/2025/07/10/health/transgender-medicine-minors-trump-subpoena.html; *see, e.g.,* Subpoena to The Children's Hospital of Philadelphia, Attachment A at 6, No. 25-1431-014, June 11, 2025, *available at* https://www.washingtonpost.com/documents/5c90f39c-15fa-46b0-ab57-299567a5d948.pdf?itid=lk_inline_manual_4 (demanding "[d]ocuments sufficient to identify each patient (by name, date of birth, social security number, address, and parent/guardian information) who was prescribed puberty blockers or hormone therapy," "[f]or each patient identified in Subpoena specification 11, *supra*, documents relating to the clinical indications, diagnoses, or assessments that formed the basis for prescribing puberty blockers or hormone therapy," and "documents relating to informed consent, patient intake, and parent or guardian authorization for minor patients").

**LOS ANGELES HEADQUARTERS**  3701 Wilshire Blvd, Suite 208, Los Angeles CA 90010  P 213.487.7211  F 213.487.0242
**SACRAMENTO**  1107 Ninth Street, Suite 680, Sacramento CA 95814  P 916.442.0753
**OAKLAND**  449 Fifteenth Street, Suite 301, Oakland CA 94612  P 213.487.7211  F 213.487.0242

36

needs. Through these actions, Children's Hospital has violated state laws along with its legal and ethical duties to our clients.[3]

Our clients do not currently have sufficient information to determine whether Children's Hospital is adequately protecting their interests in its response to the government-issued subpoena. They fear the disclosure of their personally identifiable and medical information to federal authorities who have "relentlessly, cruelly, and unlawfully targeted transgender individuals"[4] under federal executive power for the past nine months. We are aware of at least one other hospital, The Children's Hospital of Philadelphia, that is seeking to protect the privacy rights of its patients and limit the scope of their subpoena. In contrast, we are unaware of how Children's Hospital here plans to handle the subpoena and confidential patient records. To plan for the care and safety of their families, our clients must know more about how Children's Hospital has responded or intends to respond to the subpoena.

Our clients may have shared interests with Children's Hospital to the extent that it seeks to maintain protection of its patients' health information and personally identifiable data, the confidence of its patients, and its continued operation as a world-class medical institution. Below are some of the numerous federal and state authorities that require Children's Hospital to shield protected health information and other protected personally identifiable information from disclosure in any response to the subpoena. We also include relevant authorities the hospital should consider in rectifying how it has mishandled the closure of the Transyouth Center.

Subpoena

(1) The **Health Insurance and Portability and Accountability Act (HIPAA)** permits the disclosure of protected health information only if certain exceptions or procedures are met. "In response to a subpoena . . . that is not accompanied by an order of a court or administrative tribunal," a health care provider may disclose this information if it does one of two things: (1) provides prior written notice to patients about the litigation or proceeding in which the protected health information is requested; or (2) seeks a qualified protective order with a court. 45 C.F.R. § 164.512(e)(1)(vi). Additionally, a provider may disclose this information for a law enforcement purpose in response to an administrative subpoena or summons, a civil or an authorized investigative demand, or similar process authorized under law *only under the limited scope and circumstances* described in 45 C.F.R. § 164.512(f)(1)(ii)(C)(1)–(3).[5] If your hospital violates any of these HIPAA rules, it may be subject to financial penalties by the federal government or California attorney general. 42 U.S.C. § 1320d-5. It may also be vulnerable to lawsuits by patients, including negligence and intentional infliction of emotional distress.

(2) **Article I, Section 1 of the California Constitution** provides a constitutional right to medical privacy and protects medical records from unauthorized disclosure. Providers may assert this right on behalf of their patients. Providers may also have protected privacy interests in their personal information reflected in the records.

---

[3] Complaint at ¶¶ 5, 65, *Massachusetts et al. v. Trump et al.*, <u>No. 25-cv-12162</u> (D. Mass. 2025).
[4] Complaint at ¶ 1, *Massachusetts et al. v. Trump et al.*, <u>No. 25-cv-12162</u> (D. Mass. 2025).
[5] "(1) The information sought is relevant and material to a legitimate law enforcement inquiry; (2) The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and (3) De-identified information could not reasonably be used."

(3) California's **Confidentiality of Medical Information Act (CMIA), Civil Code § 56.10,** prohibits a health care provider from disclosing patient medical information without first obtaining an authorization unless the disclosure is compelled by a government agency for a lawful purpose.

(4) Gender-affirming health care services and gender-affirming mental health care services are "rights secured by the Constitution and laws of California. Interference with these rights, whether or not under the color of law, is against the public policy of California." A health care provider's provision of patient medical records to a federal agency for the purposes of civil and criminal prosecution to end gender-affirming care could be engagement in abusive litigation. Individuals may bring suit against providers who interfere with these rights. **Civil Code §§ 1798.301– 1798.308**.

(5) The **California Consumers Legal Remedies Act, Civil Code § 1770(a)(16)** ("[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not") provides the basis for an action for unfair or deceptive practices by a business providing a service. This would include any representations by a hospital with which it is not in compliance, as stated in its Notice of Privacy Practices. To the extent that the representations or business practices of a business are determined to be unfair or deceptive by being misleading or not followed, including as to privacy protections and limitation of disclosures, the State of California could bring an action against the business under the Act. Similarly, consumers could individually or as a class sue under the Act. Additionally, a consumer has access to state courts to bring suits under breach of contract or tort law. These present litigation burdens both for the business and the consumers that may be avoided.

Closure of Clinic[6]

(1) A hospital must provide notice according to **Health and Safety Code § 1255.25(a)** at least 90 days before eliminating supplemental services, "including a notice posted at the entrance to all affected facilities, a notice to all contracted Medi-Cal managed care plans, as defined in subdivision (j) of Section 14181.101 of the Welfare and Institutions Code, and a notice to the department and the board of supervisors of the county in which the health facility is located." The content of the notice must include the numerous requirements in § 1255.25(b), including a place where interested parties could offer comments.

(2) The **Unruh Civil Rights Act, Civil Code § 51 *et seq.*,** prohibits discrimination by California business establishments by requiring "full and equal accommodations, advantages, facilities, privileges, or services" regardless of sex,[7] race, color, disability, medical condition, or sexual orientation.

---

[6] *See also* Complaint at ¶¶ 5, 65, *Massachusetts et al. v. Trump et al.*, No. 25-cv-12162 (D. Mass. 2025) (potential violations of state law); California Department of Justice, Letter to Children's Hospital Los Angeles Re: Gender Affirming Care, Feb. 5, 2025, https://oag.ca.gov/system/files/attachments/press-docs/Letter%20to%20Children%27s%20Hospital%20dated%20February%205%202025_Redacted.pdf.

[7] "'Sex' . . . includes, but is not limited to, a person's gender. 'Gender' means sex, and includes a person's gender identity and gender expression. 'Gender expression' means a person's gender-related appearance and behavior whether or not stereotypically associated with the person's assigned sex at birth." Civil Code § 51(e)(6).

(3) **Government Code § 11135** *et seq.* prohibits discrimination by recipients of state funding on the basis of sex (including transgender, gender identity, gender expression, and more),[8] race, color, mental disability, physical disability, medical condition, or sexual orientation.

(4) Gender-affirming health care services and gender-affirming mental health care services are "rights secured by the Constitution and laws of California. Interference with these rights, whether or not under the color of law, is against the public policy of California." Individuals may bring suit against medical providers who interfere with this right. **Civil Code § 1798.301**.

(5) The **Unfair Competition Law, Business and Professions Code § 17200** *et seq.***,** prohibits unlawful business practices. Closing a clinical practice in a discriminatory manner and against California's public policy is an unlawful business practice. Further, discriminatory closure of a practice, as well as failure to protect confidential patient information, is inconsistent with express and implied representations made by the hospital to patients when establishing care and may violate state consumer protection law.

Based on the above, our clients urge your hospital to take all appropriate measures to protect all former patients' confidential health information and personally identifiable information before responding to the subpoena. This should include Children's Hospital's commitment to:

(1) Provide an accounting of all disclosures involving each patient's personal health information that it has made in response to the subpoena so far.
(2) Provide an ongoing accounting of disclosures if it continues to release their health information.
(3) Provide assurances to all former patients that the hospital will not disclose identifying patient information to future subpoenas and third parties.
(4) Notify former patients of any future actions taken by the hospital to release their identifying information to outside entities in any way.

Our clients further request Children's Hospital to fulfill its legal and ethical obligations to patients in providing medical care. First and foremost, **Children's Hospital should reopen the Transyouth Center with the addition of a robust advocacy arm**. Children's Hospital should also commit to the following to mitigate the harm it has caused to patients:

(1) Facilitate a smooth transition for former patients and prospective patients to new practitioners while the clinic reopens.
(2) Establish a patient hotline to provide relevant information to former and prospective patients.
(3) Create and disseminate educational materials regarding transgender health in consultation with experts in the field.
(4) Advocate for transgender health. Expose and oppose federal policies that led to the clinic's shutdown.
(5) Create a comprehensive record of the clinic's operations and its benefits to support future reopening efforts.

---

[8] "'Sex' includes . . . gender; transgender; intersex; transitioning; sex stereotype; gender identity; gender expression; and perception by a third party of any of the aforementioned. . . . 'Transgender' is a general term that refers to a person whose gender identity differs from the person's sex assigned at birth. A transgender person may or may not have a gender expression that is different from the social expectations of the sex assigned at birth. A transgender person may or may not identify as 'transsexual.'" 2 C.C.R. § 14020(rr).

Please let us know by September 19, 2025, when you are available to meet with counsel and our clients to discuss their concerns and your plans to address these issues. You may contact Helen Tran at htran@wclp.org and (626) 484-9702.

Sincerely,

Helen Tran
Senior Attorney
Western Center on Law and Poverty

Khadijah M. Silver
Supervising Attorney—Civil Rights
Lawyers for Good Government (L4GG)

Gary DiBianco
Project Lead—Pro Bono Litigation Corps
Lawyers for Good Government (L4GG)

# EXHIBIT G

   

Donate

## Legal

### Terms & Conditions

### Online Privacy

### Patient Rights

Privacy Practices

### Social Media Use

### Notice of Nondiscrimination

Home  >  **Notice of Privacy Practices**

# Notice of Privacy Practices

**THIS NOTICE DESCRIBES HOW MEDICAL INFORMATION ABOUT YOU MAY BE USED AND DISCLOSED, YOUR RIGHTS WITH RESPECT TO YOUR HEALTH INFORMATION, AND HOW YOU CAN FILE A COMPLAINT CONCERNING A VIOLATION OF THE PRIVACY OR SECURITY OF YOUR HEALTH INFORMATION, OR OF YOUR RIGHTS CONCERNING YOUR INFORMATION. PLEASE REVIEW IT CAREFULLY.**

**You have a right to a copy of this Notice (in paper or electronic form) and to discuss it with the Privacy Officer from the Office of Compliance and Privacy at compliance@chla.usc.edu or (323) 361-2302 if you have any questions.**

- **Download Notice of Privacy Practices (English)**

- **Download Notice of Privacy Practices (Arabic)**

- **Download Notice of Privacy Practices (Armenian)**

- **Download Notice of Privacy Practices (Cambodian)**

   

Donate

- **Download Notice of Privacy Practices (Korean)**

- **Download Notice of Privacy Practices (Spanish)**

---

When this Notice uses "you" or "your", CHLA means the patient and disclosures made to the patient, parent, personal representative, or patient's legal guardian who is authorized (has permission) to get the information.

## Our Pledge to Protect Your Privacy

We keep a record of the care and services you receive at Children's Hospital Los Angeles (CHLA). This record helps us provide you with quality care and meet legal requirements. We understand that your health information is personal and are committed to maintaining your privacy rights under Federal and State law.

## Complaints

If you believe your privacy rights have been violated, you may file a complaint with CHLA or with the U.S. Department of Health and Human Services. Your care will not be affected, in any way, for filing a complaint.

Privacy Officer
Office of Compliance & Privacy
Children's Hospital Los Angeles
4650 Sunset Blvd. MS #143, Los Angeles, CA 90027
**compliance@chla.usc.edu**
(323) 361-2302

U.S. Department of Health and Human Services,
Office for Civil Rights
200 Independence Avenue, S.W., Washington, D.C. 20201

## Who Will Follow This Notice?

   

Donate

information into your CHLA medical record.

- Departments and units of CHLA, including our outpatient clinics.

- CHLA employees, volunteers, trainees, students, contractors, medical staff, residents, fellows, board members, and business associates with whom we may share health information.

## CHLA's Responsibilities

- CHLA is required to keep your health information private and secure.

- CHLA will let you know of a breach of your health information per state and federal laws.

- CHLA must follow the duties and practices in this Notice.

## Your Privacy Rights

You have certain rights relating to your health information, and this section explains your rights. You may submit a request for any of the below under this section to Health Information Management (HIM) at **ROI@chla.usc.edu**.

**Disclosure at Your Request.** You have the right to request CHLA to disclose health information about you. If so, you may need to fill out an authorization. We may charge a reasonable, cost-based fee.

**Right to Inspect and Copy.** You have the right to ask to see or get a copy of an electronic or paper copy of your medical records. We may charge a reasonable, cost-based fee.

**Right to Amend.** You have the right to ask us to correct your health information if you think it is incorrect or not complete. CHLA may deny the request. If so, we will inform you in writing.

**Right to an Accounting of Disclosures.** You have the right to request a list of when CHLA shared your health information up to

44






within a 12-month period for free, and will charge a reasonable, cost-based fee if you ask for more.

**Right to Request Restrictions.** You have the right to ask CHLA not to use your health information for treatment, payment, or operations. We do not have to agree to your request. However, if you pay for a service out-of-pocket in full, you can ask CHLA not to share the information with your health insurance.

**Right to Request Confidential Communications.** You have the right to ask to be contacted in a specific way or at a certain location. We will try to accommodate reasonable requests.

**Right to a Copy of This Notice.** You have the right to ask for a paper copy of this notice at any time, even when you agree to an electronic copy. To ask for a copy, you can email the Office of Compliance & Privacy at **compliance@chla.usc.edu**.

## Our Uses and Disclosures of Your Health Information for Treatment, Payment, or Health Care Operations

**Treatment.** We may use and disclose health information about you to provide you with medical treatment and services. For example, a doctor treating you for a broken leg may need to know if you have diabetes because diabetes may slow the healing process. Additionally, we may disclose health information about you to people outside CHLA who may be involved in your medical care.

**Payment.** We may use and disclose health information about you so that the treatment and services you receive at CHLA may be billed to you, an insurance company, or a third party. For example, we may need to provide information about a surgery you had at CHLA to your health plan for reimbursement.

**Health Care Operations.** We may use and disclose health information about you for CHLA's health care operations. This is necessary to improve our operations and make sure our patients receive quality care. For example, we may use your health information to review our treatment and services.

   

disclose health information to contact you as a reminder that you have an appointment for care at CHLA.

**Health Care Registries.** CHLA participates in several health care registries where information about our patients is entered into databases shared by other health care providers. The registries are private and confidential and can only be used by authorized individuals.

**Health Information Exchanges (HIE).** A health information exchange (HIE) is a way to share your medical information electronically with your health care providers outside of CHLA, with insurers, and other entities for purposes of treatment, payment, health care operations and other purposes allowed by law. If you do not want to be included, please let the admission staff know.

**Hospital Directory.** We may include your name, location in the hospital, general condition, and religious affiliation in the hospital directory while you are getting inpatient care. Unless you specifically request that your information be excluded from the hospital directory, we may release the information to people who ask for you by name. Your religious affiliation may be given to a member of the clergy even if they do not ask for you by name, unless you specifically request we not do so.

**Individuals Involved in Your Care or Payment For Your Care.** We may release health information about you to a family member or friend involved in your medical care or who helps pay for your care.

*CHLA may use or disclose your health information without your prior authorization (permission), subject to certain requirements.*

**As Required by Law.** We will disclose health information about you when federal, state, or local laws require it.

**Business Associates.** CHLA contracts with outside persons or entities that do certain functions on our behalf that may involve the use or disclosure of your health information.

   

Donate

**Disaster Recovery.** We may disclose health information about you to an organization that helps in a disaster relief effort so that your family can be notified about your condition, status, and location.

**Fundraising Activities.** We may contact you or disclose information to a foundation related to CHLA for fundraising efforts. You have the right to opt out of receiving fundraising communications. If you receive a fundraising communication, it will let you know how to opt out.

**Health-Related Benefits and Services.** We may use or disclose your health information to tell you about health-related benefits or services that may be of interest to you.

**Health Oversight Activities.** We may disclose health information about you to a health oversight agency for activities required by law. These activities may include audits, investigations, and licensing.

**Inmates.** If you are an inmate of a correctional facility (prisoner) or in police custody, we may release health information about you to the correctional facility or law enforcement official.

**Law Enforcement.** We may release health information if asked to do so by a law enforcement official under certain circumstances or when required by law.

**Legal Proceedings.** We may disclose health information about you in response to a court or administrative order, or in response to a subpoena.

Substance Use Disorder (SUD) records will only be used or disclosed for the above purposes after you are provided notice and an opportunity to be heard. A court order authorizing use or disclosure must be accompanied by a subpoena or other similar legal mandate compelling disclosure before the record is used or disclosed.

**Marketing and Sales.** Most uses and disclosures of health information for marketing purposes and disclosures that

   

Donate

**Multidisciplinary Personnel Teams.** We may disclose health information to a multidisciplinary personnel team for the prevention, identification, management, or treatment of an abused child and the child's parents, or elder abuse and neglect.

**Organ And Tissue Donation.** We may release health information to organizations that handle organ procurement or organ, eye or tissue transplantation, or to an organ donation bank, as necessary to facilitate organ or tissue donation and transplantation.

**Organized Health Care Arrangement (OHCA).** In accordance with Title 45 of the Code of Federal Regulations §164.501, Children's Hospital Los Angeles, Children's Hospital Los Angeles Medical Group, and the University of Southern California—all three legally separate covered entities—designate themselves as an Organized Health Care Arrangement (OHCA) for the sole purpose of complying with the Privacy Regulations of the Health Insurance Portability and Accountability Act of 1996. These entities will share information necessary for the joint health care activities of the Organized Health Care Arrangement.

**Public Health and Safety Issues.** We may use or disclose health information under specific circumstances such as:

- Preventing or controlling disease, injury, or disability

- Assisting with product recalls

- Reporting adverse reactions to medications

- Reporting suspected abuse, neglect, or domestic violence

- Preventing or reducing a serious threat to health or safety.

**Research.** CHLA does research to learn more about health and disease. We may contact you by mail, phone or email, if you have provided that information to us, to tell you about research projects you can participate in. Your personally identified information will not be shared outside CHLA without your permission. We may use or share your health information when

   

Donate

your written permission, we will ask you for permission to use or share your information. Your permission is not needed if researchers use your health information without using your name or personal information. We may also use your information to plan a research study.

**Special Categories of Information.** In some cases, your health information may be subject to restrictions that may limit or exclude uses or disclosures described in this Notice. For example, there are special restrictions on HIV tests, treatment for mental health conditions, reproductive health care, or the Substance Use Prevention and Treatment Program. Government health benefit programs, such as Medi-Cal, may also limit disclosures.

For Substance Use Disorder (SUD) patient records under the Substance Use Prevention and Treatment Program, you can give one consent for all future uses or sharing of your records for treatment, payment, and health care operations. This means that once you give this consent, the SUD program can share your records without asking you again, as long as federal rules allow it.

**Special Government Functions.** We may disclose health information for special government functions, including military, national security and intelligence activities, and presidential protective services, as permitted by law.

**Treatment Alternatives.** We may use or disclose your health information to tell you about or recommend possible treatment options, activities, or alternatives that may help you.

**Workers' Compensation.** We may release your health information for workers' compensation or similar programs.

## Donor Confidentiality and Privacy Policy

Children's Hospital Los Angeles is committed to protecting the privacy and security of our donors' and guests' personal information when visiting our website, subscribing to our email updates, or donating. The following resource will help you

11/14/25, 1:56 PM
Case 2:25-cv-11183    Document 1-2    Filed 11/21/25    Page 50 of 76    Page ID #:85
Notice of Privacy Practices | Children's Hospital Los Angeles

   

Donate

To update how you prefer to communicate or to opt-out of communications, contact CHLA Foundation at (323) 361-2308 or by email at **foundation@chla.usc.edu** or mail to CHLA Foundation, 4650 Sunset Blvd, #29, Los Angeles, CA 90027.

## Changes to This Notice

We reserve the right to change this Notice. We reserve the right to make the revised or changed Notice effective for health information we already have about you. The revised Notice will be available upon request, posted at CHLA, or on our website.

## Other Uses of Health Information

CHLA will not use or disclose your health information without your authorization, except as set forth in this Notice or unless permitted by law. You may revoke (take back) your authorization in writing at any time, except if CHLA has already acted in reliance on your permission. Once your health information is released, it may not be protected under federal privacy law. State or other federal law may require the recipient to obtain your authorization before further disclosure.

This notice is effective as of July 15, 2025.



## Stay Up to Date

Sign up to receive our monthly newsletter, latest news, events and stories delivered right to your inbox.



Donate

   

## Children's Hospital Los Angeles

4650 Sunset Blvd.
Los Angeles, CA 90027
**323-660-2450**

**Contact Us**

**Visitor Guidelines**

**Help Paying Your Bill**

**Price Transparency**

**Languages**

**U.S. English**

**Español**

**병원 소개**

**About CHLA**

**Mission & History**

**Blog**

**Publications**

**Newsroom**

**Connect**

**How to Become a Patient**

**MyChildren's LA Patient Portal**

**Care Network**



Donate

 

 

## Support

**Ways to Help**

**Volunteer**

**Donate Blood**

## Health Professionals

**Careers**

**Refer a Patient**

**Provider Relations**

**Research**

**Education**

## Follow Us On

    

 

 

Terms & Conditions | Online Privacy | Patient Rights
Privacy Practices | Social Media Use | Notice of Nondiscrimination

11/14/25, 1:56 PM
Case 2:25-cv-11183    Document 1-2    Filed 11/21/25    Page 53 of 76    Page ID #:88
Notice of Privacy Practices | Children's Hospital Los Angeles







# EXHIBIT H

 Outlook

---

## RE: Hospital Subpoena - Response Requested Tues, 10/28

**From** Goldstein, Ross <Ross.Goldstein@usdoj.gov>

**Date** Mon 10/27/2025 1:25 PM

**To** Helen Tran <htran@wclp.org>; Runkle, Patrick <Patrick.R.Runkle@usdoj.gov>

**Cc** Lori Rifkin <lrifkin@impactfund.org>; Amy Powell <amy@lawyersforgoodgovernment.org>; Khadijah Silver <khadijah@lawyersforgoodgovernment.org>

---

CAUTION: This email originated from outside the organization. Please take care when clicking on links or opening attachments.

Hi Helen, et al:

Thank you for reaching out. Regarding your Motion to Quash portions of the Government's subpoena to Children's Hospital of Los Angeles (CHLA), hopefully the below will provide you the "assurances it is unnecessary." First, I can confirm that the Government issued a subpoena over four months ago to CHLA, the requests of which are virtually identical to those contained in the Boston Children's and CHOP subpoenas. CHLA did not move to quash the subpoena and is producing documents.

Critically with respect to your clients, however, CHLA—through counsel—informed us that the entity we subpoenaed does not generally possess or have access to patient charts or records. We have not received patient information, nor do we anticipate receiving any patient charts or records from CHLA given CHLA counsel's representations. Instead, CHLA has produced a small number of documents related to communications between CHLA personnel and pharmaceutical companies about certain drugs, and our understanding is that they are continuing their review for such documents.

Given CHLA's position about patient charts and records and the fact that there does not seem to be a real possibility of us obtaining patient records from CHLA under this subpoena, we do not see the need nor basis for you to file a Motion to Quash, as any such filing would be moot (and any related filings, like a motion for class certification, would also be moot).

Hopefully, this answers your questions. Happy to discuss if you still think it necessary.

Thanks,
Ross

---

**From:** Helen Tran <htran@wclp.org>
**Sent:** Friday, October 24, 2025 4:29 PM
**To:** Goldstein, Ross <Ross.Goldstein@usdoj.gov>; Runkle, Patrick <Patrick.R.Runkle@usdoj.gov>
**Cc:** Lori Rifkin <lrifkin@impactfund.org>; Amy Powell <amy@lawyersforgoodgovernment.org>; Khadijah Silver <khadijah@lawyersforgoodgovernment.org>
**Subject:** [EXTERNAL] Re: Hospital Subpoena - Response Requested Tues, 10/28

Apologies — copied here are our co-counsel.

Helen

---

**From:** Helen Tran <htran@wclp.org>
**Sent:** Friday, October 24, 2025 1:27 PM
**To:** ross.goldstein@usdoj.gov <ross.goldstein@usdoj.gov>; patrick.r.runkle@usdoj.gov <patrick.r.runkle@usdoj.gov>
**Subject:** Hospital Subpoena - Response Requested Tues, 10/28

Mr. Goldstein and Mr. Runkle:

I, and the lawyers copied on this email, represent a group of former patients/guardians at Children's Hospital of Los Angeles, and we have been corresponding with Children's on their behalf.  Absent some assurances that it is unnecessary, we are planning to file a Motion to Quash early next week (perhaps similar to the UPMC case you are handling) based on our understanding that Children's received an administrative subpoena like those served on those served on the Children's Hospital of Philadelphia and Boston Children's Hospital (which are the subject of litigation you are handling).  We have several questions for you and would be happy to jump on a call on Monday, if needed.  If you would like to chat or have questions, let us know some times that work for you on Monday.

We request information or positions from the Government on the following questions:

1. Is DOJ willing to confirm the existence of the subpoena to Children's Hospital, similar to those served on the Children's Hospital of Philadelphia and Boston Children's Hospital, related primarily to "gender-related care" for minors?

2. If so, is DOJ willing to share a copy?  Or share any other information about it?

3. Is DOJ willing to discuss the status of response to that subpoena, in particular whether Children's has produced any of the requested documents, Children's has filed a motion to quash, and DOJ has filed a motion to enforce? We would welcome any information you could provide, including the name of the presiding judge and case number, if there is a current action involving the subpoena to Children's.

4. We plan to file a motion for class certification - certifying a class of former patients whose information is subject to the subpoena. Will the Government oppose class certification? If so, on what basis? We can discuss more specifics if that would be helpful in formulating the Government's position.

5. We also plan to file a motion for the moving parties to proceed in this litigation entirely under pseudonyms in light of the danger posed to them and their children by revealing their personal information under these circumstances. Please let us know whether or not the Government opposes this motion.

6. Can the Government provide its position on the motion to quash?  We plan to ask that, as soon as possible, the Court quash the portions of the subpoena that seek private patient information.

We realize that not all of these questions may be immediately answerable.  We are hoping to file early next week, and would appreciate a response **to the extent possible by Tuesday at 10 am EST**.  We are also open to discussing

a proposed briefing schedule on the anticipated motions if that would be helpful now or at some future point after you have seen our filings.

Helen



**Helen Tran** (she/her/hers)

Senior Attorney

3701 Wilshire Boulevard, Suite 208, Los Angeles, CA 90010

**htran@wclp.org  www.wclp.org**

This message is from Western Center on Law & Poverty and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail, any attachments and any copies from your system. Thank you for your cooperation.

# EXHIBIT I

 Outlook

---

## Re: CHLA - WCLP Follow-up

---

**From**  Helen Tran <htran@wclp.org>

**Date**  Thu 10/30/2025 11:14 AM

**To**  Jackson, Travis <tfjackson@mwe.com>; Diskant, Ted <ediskant@mwe.com>

**Cc**  Robert Newman <Rnewman@wclp.org>

Travis and Ted,

We appreciate you following up with us this week. From our conversation on Tuesday, we anticipate a response from Children's Hospital about whether the hospital will provide us with reasonable advance notice in the future if it plans to release documents or records to federal investigators (including U.S. Department of Justice) containing patient-identifying information from the Transyouth Center.

Based upon our conversations with DOJ, we are sending you some of the Document Requests (below) in what is the likely subpoena to Children's Hospital. We would like to discuss these Requests during tomorrow's call with you. In accordance with your statements during our prior conversations, we will not ask you to confirm or deny whether Children's Hospital received a subpoena with these Requests. On the other hand, we will ask you to clarify your representation that "no personally identifiable health information has been provided to state or federal investigators related to gender affirming care" and that "there are no imminent plans to do so." We will ask whether these statements would logically apply to all the documents referenced in these Requests regardless of whether Children's Hospital has been served with a subpoena.

 (a) Documents sufficient to identify each patient (by name, date of birth, social security number, address, and parent/guardian information) who was prescribed puberty blockers or hormone therapy.
 (b) For each such patient described above, documents relating to the clinical indications, diagnoses, or assessments that formed the basis for prescribing puberty blockers or hormone therapy.
 (c) All documents relating to informed consent, patient intake, and parent or guardian authorization for minor patients identified above, including any disclosures about off-label use (i.e., uses not approved by the United States Food and Drug Administration) and potential risks.
 (d) All documents relating to any adverse event, side effect, or medically unfavorable consequence or outcome in a minor patient with regard to gender-related care.
 (e) Documents, including billing records, insurance claims, internal protocols, or guidance, concerning the use of . . . diagnosis codes in connection with the treatment of minor patients receiving gender-related care.
 (f) Documents that . . . relate to any use of diagnosis codes for minors other than those specifically identifying transsexualism, gender dysphoria, gender incongruence, or gender identity disorder.
 (g) Communications with public or private health care benefit programs or plans regarding the use of ICD codes for gender-related care.

Lastly, would you let us know whether you only represent Children's Hospital or any other entities associated with Children's Hospital? Will you also advise which entity or entities other than Children's Hospital are now currently responsible for the maintenance, access, and oversight of patient records previously associated with the Transyouth Center? We want to ensure that we are speaking with all the right people at this point.

Thanks,

Helen



**Helen Tran** (she/her/hers)
Senior Attorney

3701 Wilshire Boulevard, Suite 208, Los Angeles, CA 90010
htran@wclp.org **www.wclp.org**

This message is from Western Center on Law & Poverty and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail, any attachments and any copies from your system. Thank you for your cooperation.

---

**From:** Jackson, Travis <Tfjackson@mwe.com>
**Sent:** Wednesday, October 29, 2025 4:54 PM
**To:** Helen Tran <htran@wclp.org>
**Cc:** Robert Newman <Rnewman@wclp.org>; Diskant, Ted <Ediskant@mwe.com>
**Subject:** Re: CHLA - WCLP Follow-up

CAUTION: This email originated from outside the organization. Please take care when clicking on links or opening attachments.

Friday at 9a works for us.

**Travis F. Jackson**
Partner

**T:** +1 310 712 1310 | **F:** +1 310 277 4730
tfjackson@mwe.com | LinkedIn

McDermott Will & Schulte LLP | mwe.com
2049 Century Park East, Suite 3200, Los Angeles, CA 90067



On Oct 29, 2025, at 4:51 PM, Helen Tran <htran@wclp.org> wrote:

[ External Email ]
We also have availability tomorrow 9:30-10:30 am. Otherwise we can meet 9 am on Friday. I'll send a Zoom link as soon as we decide on a time.

Thanks,

Helen

# EXHIBIT J

 Outlook

---

**Follow-up**

---

| **From** | Helen Tran <htran@wclp.org> |
|---|---|
| **Date** | Tue 11/18/2025 11:43 AM |
| **To** | Jackson, Travis <tfjackson@mwe.com>; Diskant, Ted <ediskant@mwe.com> |
| **Cc** | Robert Newman <Rnewman@wclp.org> |

Travis and Ted,

By this email, we are advising you of our intention to file this Thursday (or possibly Friday) a motion to quash certain requests in the subpoena to Children's Hospital along with motions for our clients to proceed under pseudonyms and to certify a class of former patients at the Transyouth Center.

It is our understanding from prior conversations with you that no personally identifiable health information has been provided so far by Children's Hospital to federal investigators related to gender affirming care. Throughout our communications, you have, however, refused to commit or deny that Children's Hospital has been served with a subpoena from the Department of Justice for patient records for the Transyouth Center — even after the Department of Justice confirmed that such a subpoena had been served on Children's Hospital. You have also refused to make any commitments in writing whatsoever regarding the response of Children's Hospital to the subpoena or, in general, to the disclosure by Children's Hospital of patient records for the Transyouth Center to the federal government. During one video conference, you said that Children's Hospital would give us advance notice when the disclosure of personally identifiable hospital information for our clients was "imminent" but refused to make any commitments concerning the amount of advance notice (e.g. one day, two days).

We plan to include the above information in our motions. Please let me know if any of these statements are factually inaccurate.

Are we also able to make any representations to the Court as to whether Children's Hospital supports, opposes or taken no position on these three motions?

Thanks,

Helen



**Helen Tran** (she/her/hers)
Senior Attorney

3701 Wilshire Boulevard, Suite 208, Los Angeles, CA 90010
htran@wclp.org  www.wclp.org

This message is from Western Center on Law & Poverty and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message

has been inadvertently transmitted to you and delete this e-mail, any attachments and any copies from your system. Thank you for your cooperation.

# EXHIBIT K



# Outlook

---

## RE: [EXTERNAL] Re: Hospital Subpoena - Response Requested Tues, 10/28

**From** Goldstein, Ross <Ross.Goldstein@usdoj.gov>

**Date** Tue 11/18/2025 1:04 PM

**To** Amy Powell <amy@lawyersforgoodgovernment.org>

**Cc** Helen Tran <htran@wclp.org>; Runkle, Patrick <Patrick.R.Runkle@usdoj.gov>; Lori Rifkin
<lrifkin@impactfund.org>; Khadijah Silver <khadijah@lawyersforgoodgovernment.org>

---

> **CAUTION:** This email originated from outside the organization. Please take care when clicking on links or opening
> attachments.

Amy,

Thank you for following up with us and please accept our apologies for neglecting to get back to
you sooner. In the interest of avoiding unnecessary litigation, we are willing to commit to
providing you with advance notice, on the order of one week or so, before moving to enforce the
subpoena or pursing any action to obtain that patient information, to the extent that providing
such notice would be legally permissible. We hope that this would satisfy your immediate
concerns as we discussed on our last call. Assuming it does, and for the reasons we previously
discussed, we believe that under the circumstances, litigation is not warranted. Please advise if
this approach resolves your concerns. We remain available to discuss this further if helpful.

Regards,

Ross

---

**From:** Amy Powell <amy@lawyersforgoodgovernment.org>
**Sent:** Tuesday, November 18, 2025 1:56 PM
**To:** Goldstein, Ross <Ross.Goldstein@usdoj.gov>
**Cc:** Helen Tran <htran@wclp.org>; Runkle, Patrick <Patrick.R.Runkle@usdoj.gov>; Lori Rifkin
<lrifkin@impactfund.org>; Khadijah Silver <khadijah@lawyersforgoodgovernment.org>
**Subject:** Re: [EXTERNAL] Re: Hospital Subpoena - Response Requested Tues, 10/28

DOJ counsel:

Thank you for the video conference call on Oct. 29, 2025. We understand, based on prior
communications and the call, that DOJ served a substantially identical subpoena on Children's Hospital
to those previously made public in similar matters, and that Children's Hospital had not, as of Oct 29,
produced any patient information, claiming that it did not have custody or control of such records. DOJ
also stated that it was not currently seeking the same medical records of patients of the Transyouth
Center by other means. We also understand, however, that Children's Hospital is still processing other
responsive documents; that DOJ has not withdrawn the subpoena or any portion thereof; and that DOJ
has not ruled out future enforcement action or negotiations on the subpoena. And DOJ stated that it was
making no representations at all about what it would do in the future. We asked whether DOJ could

---

provide assurances that it would provide meaningful advance notice to us before seeking to enforce the subpoena, or otherwise seeking the same or similar patient information. To date, we have not received a response from DOJ.

Based on this information, we plan to move to quash the subpoena as to patient information on or about Thursday November 20, 2025 in the Central District of California (and will email you the documents after filing). Please let us know your positions on the following motions:

1. Motion for class certification - certifying a class of former patients and parents/guardians of minor patients whose information is subject to the subpoena.

2. Motion to Proceed Under Pseudonym - We also plan to file a motion for the moving parties to proceed in this litigation entirely under pseudonyms in light of the danger posed to them and their children by revealing their personal information under these circumstances.

3. Motion to Quash - We plan to ask that the Court quash the portions of the subpoena that seek private patient information.

If we need to discuss further, please let me know as soon as possible, as I have limited availability over the next few days.

Thanks.

Amy Powell

On Tue, Oct 28, 2025 at 5:09 PM Amy Powell <amy@lawyersforgoodgovernment.org> wrote:

Sure, no problem.

On Tue, Oct 28, 2025 at 5:08 PM Goldstein, Ross
<Ross.Goldstein@usdoj.gov> wrote:
>
> I don't think any of our platforms can do Google Meet. Can I send a WebEx?
>
>
> -----Original Message-----
> From: Amy Powell <amy@lawyersforgoodgovernment.org>
> Sent: Tuesday, October 28, 2025 5:08 PM
> To: Goldstein, Ross <Ross.Goldstein@usdoj.gov>
> Cc: Helen Tran <htran@wclp.org>; Runkle, Patrick <Patrick.R.Runkle@usdoj.gov>; Lori
> Rifkin <lrifkin@impactfund.org>; Khadijah Silver <khadijah@lawyersforgoodgovernment.org>
> Subject: Re: [EXTERNAL] Re: Hospital Subpoena - Response Requested Tues, 10/28
>
> Thanks, Ross. We can do tomorrow at noon. I can send a google meet invite.
>
> Amy

> 
> On Tue, Oct 28, 2025 at 4:28 PM Goldstein, Ross <Ross.Goldstein@usdoj.gov> wrote:
> > 
> > Amy,
> > 
> > Timing is kind of tight given the time differences but we can do a call tomorrow sometime between 11:30 and 1 ET if you can make that work.
> > 
> > -----Original Message-----
> > From: Amy Powell <amy@lawyersforgoodgovernment.org>
> > Sent: Monday, October 27, 2025 6:10 PM
> > To: Goldstein, Ross <Ross.Goldstein@usdoj.gov>
> > Cc: Helen Tran <htran@wclp.org>; Runkle, Patrick
> > <Patrick.R.Runkle@usdoj.gov>; Lori Rifkin <lrifkin@impactfund.org>;
> > Khadijah Silver <khadijah@lawyersforgoodgovernment.org>
> > Subject: [EXTERNAL] Re: Hospital Subpoena - Response Requested Tues,
> > 10/28
> > 
> > Thanks so much, Ross.  This is helpful information.  We have some follow up questions -- the clients will still have concerns.  Do you have time to jump on a zoom to discuss this information sometime in the next 2-3 days?
> > 
> > Thanks
> > 
> > Amy
> > 
> > Amy
> > 
> > On Mon, Oct 27, 2025 at 4:25 PM Goldstein, Ross <Ross.Goldstein@usdoj.gov> wrote:
> > > 
> > > Hi Helen, et al:
> > > 
> > > 
> > > 
> > > Thank you for reaching out. Regarding your Motion to Quash portions of the Government's subpoena to Children's Hospital of Los Angeles (CHLA), hopefully the below will provide you the "assurances it is unnecessary." First, I can confirm that the Government issued a subpoena over four months ago to CHLA, the requests of which are virtually identical to those contained in the Boston Children's and CHOP subpoenas. CHLA did not move to quash the subpoena and is producing documents.
> > > 
> > > 
> > > 
> > > Critically with respect to your clients, however, CHLA—through counsel—informed us that the entity we subpoenaed does not generally possess or have access to patient charts or records. We have not received patient information, nor do we anticipate receiving any patient charts or records from CHLA given CHLA counsel's representations. Instead, CHLA has produced a small number of documents related to communications between CHLA personnel and pharmaceutical companies about certain drugs, and our understanding is that they are continuing their review for such documents.
> > > 
> > > 
> > > 
> > > Given CHLA's position about patient charts and records and the fact that there does not

seem to be a real possibility of us obtaining patient records from CHLA under this subpoena,
we do not see the need nor basis for you to file a Motion to Quash, as any such filing would
be moot (and any related filings, like a motion for class certification, would also be moot).
> > >
> > >
> > >
> > > Hopefully, this answers your questions. Happy to discuss if you still think it necessary.
> > >
> > >
> > >
> > > Thanks,
> > >
> > > Ross
> > >
> > >
> > >
> > >
> > >
> > > From: Helen Tran <htran@wclp.org>
> > > Sent: Friday, October 24, 2025 4:29 PM
> > > To: Goldstein, Ross <Ross.Goldstein@usdoj.gov>; Runkle, Patrick
> > > <Patrick.R.Runkle@usdoj.gov>
> > > Cc: Lori Rifkin <lrifkin@impactfund.org>; Amy Powell
> > > <amy@lawyersforgoodgovernment.org>; Khadijah Silver
> > > <khadijah@lawyersforgoodgovernment.org>
> > > Subject: [EXTERNAL] Re: Hospital Subpoena - Response Requested Tues,
> > > 10/28
> > >
> > >
> > >
> > > Apologies — copied here are our co-counsel.
> > >
> > >
> > >
> > > Helen
> > >
> > >
> > >
> > > _____
> > >
> > > From: Helen Tran <htran@wclp.org>
> > > Sent: Friday, October 24, 2025 1:27 PM
> > > To: ross.goldstein@usdoj.gov <ross.goldstein@usdoj.gov>;
> > > patrick.r.runkle@usdoj.gov <patrick.r.runkle@usdoj.gov>
> > > Subject: Hospital Subpoena - Response Requested Tues, 10/28
> > >
> > >
> > >
> > > Mr. Goldstein and Mr. Runkle:
> > >
> > >
> > >
> > > I, and the lawyers copied on this email, represent a group of former patients/guardians
at Children's Hospital of Los Angeles, and we have been corresponding with Children's on

their behalf.  Absent some assurances that it is unnecessary, we are planning to file a Motion to Quash early next week (perhaps similar to the UPMC case you are handling) based on our understanding that Children's received an administrative subpoena like those served on those served on the Children's Hospital of Philadelphia and Boston Children's Hospital (which are the subject of litigation you are handling).  We have several questions for you and would be happy to jump on a call on Monday, if needed.  If you would like to chat or have questions, let us know some times that work for you on Monday.

> > >
> > >
> > >
> > > We request information or positions from the Government on the following questions:
> > >
> > >
> > >
> > > Is DOJ willing to confirm the existence of the subpoena to Children's Hospital, similar to those served on the Children's Hospital of Philadelphia and Boston Children's Hospital, related primarily to "gender-related care" for minors?
> > >
> > >
> > >
> > > If so, is DOJ willing to share a copy?  Or share any other information about it?
> > >
> > >
> > >
> > > Is DOJ willing to discuss the status of response to that subpoena, in particular whether Children's has produced any of the requested documents, Children's has filed a motion to quash, and DOJ has filed a motion to enforce? We would welcome any information you could provide, including the name of the presiding judge and case number, if there is a current action involving the subpoena to Children's.
> > >
> > >
> > >
> > > We plan to file a motion for class certification - certifying a class of former patients whose information is subject to the subpoena. Will the Government oppose class certification? If so, on what basis? We can discuss more specifics if that would be helpful in formulating the Government's position.
> > >
> > >
> > >
> > > We also plan to file a motion for the moving parties to proceed in this litigation entirely under pseudonyms in light of the danger posed to them and their children by revealing their personal information under these circumstances. Please let us know whether or not the Government opposes this motion.
> > >
> > >
> > >
> > > Can the Government provide its position on the motion to quash?  We plan to ask that, as soon as possible, the Court quash the portions of the subpoena that seek private patient information.
> > >
> > >
> > >
> > > We realize that not all of these questions may be immediately answerable.  We are hoping to file early next week, and would appreciate a response to the extent possible by

Tuesday at 10 am EST.  We are also open to discussing a proposed briefing schedule on the anticipated motions if that would be helpful now or at some future point after you have seen our filings.

> > >
> > >
> > >
> > > Helen
> > >
> > >
> > >
> > > Helen Tran (she/her/hers)
> > >
> > > Senior Attorney
> > >
> > >
> > >
> > > 3701 Wilshire Boulevard, Suite 208, Los Angeles, CA 90010
> > >
> > > htran@wclp.org
> > > https://protect2.fireeye.com/v1/url?k=bdc3e0ce-e258a23d-bdc4c42b-000
> > > ba
> > > bdfec90-f2540f725f42819b&q=1e=15cfd392-ba86-4b12-9c4e-07aa3bb17bcf&
> > > u=
> > > http%3A%2F%2Fwww.wclp.org%2F
> > >
> > >
> > >
> > >
> > > This message is from Western Center on Law & Poverty and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail, any attachments and any copies from your system. Thank you for your cooperation.

# EXHIBIT L

 Outlook

---

## RE: Follow-up

| | |
|---|---|
| **From** | Diskant, Ted <Ediskant@mwe.com> |
| **Date** | Wed 11/19/2025 3:56 AM |
| **To** | Helen Tran <htran@wclp.org>; Jackson, Travis <Tfjackson@mwe.com> |
| **Cc** | Robert Newman <Rnewman@wclp.org> |

> **CAUTION:** This email originated from outside the organization. Please take care when clicking on links or opening attachments.

Helen – We are surprised to learn that you plan to commence litigation given our repeated representations to you that CHLA has not produced any PHI regarding your clients to any government entity.

As for our conversations, we disagree with your editorialized characterizations of them and trust you will more neutrally present the court with the factual information counsel has provided to you. In particular, you can truthfully report to the court that CHLA through counsel has told you (i) it cannot and will not discuss any subpoena it may have received from DOJ or any other government entity; (ii) it cannot and will not discuss its efforts to comply with any such a subpoena, if issued; (iii) it can represent that no PHI regarding your clients has been produced to any government entity, and (iv) it will to the best of its abilities give you reasonable notice if at any point in the future it intends or is required to produce PHI regarding your clients to a government entity.

In terms of our position on your motion, we would need to meet and confer to better understand the bases of your motion and the relief you are seeking before taking a position. Please let us know your availability for a call this afternoon or tomorrow morning to discuss. I believe Travis and I have availability today at 12:30 or 2-4 PT if any of those work for you as well as 10am PT tomorrow if better.

Thanks,
Ted

**Edward B. Diskant**
Partner

**T:** +1 212 547 5754 | **M:** +1 917 273 7728 | **F:** +1 212 547 5444
ediskant@mwe.com | LinkedIn
McDermott Will & Schulte LLP | mwe.com
One Vanderbilt Avenue, New York, NY 10017



---

**From:** Helen Tran <htran@wclp.org>
**Sent:** Tuesday, November 18, 2025 2:43 PM
**To:** Jackson, Travis <Tfjackson@mwe.com>; Diskant, Ted <Ediskant@mwe.com>
**Cc:** Robert Newman <Rnewman@wclp.org>
**Subject:** Follow-up

**[ External Email ]**
Travis and Ted,

By this email, we are advising you of our intention to file this Thursday (or possibly Friday) a motion to quash certain requests in the subpoena to Children's Hospital along with motions for our clients to proceed under pseudonyms and to certify a class of former patients at the Transyouth Center.

It is our understanding from prior conversations with you that no personally identifiable health information has been provided so far by Children's Hospital to federal investigators related to gender affirming care. Throughout our communications, you have, however, refused to commit or deny that Children's Hospital has been served with a subpoena from the Department of Justice for patient records for the Transyouth Center — even after the Department of Justice confirmed that such a subpoena had been served on Children's Hospital. You have also refused to make any commitments in writing whatsoever regarding the response of Children's Hospital to the subpoena or, in general, to the disclosure by Children's Hospital of patient records for the Transyouth Center to the federal government. During one video conference, you said that Children's Hospital would give us advance notice when the disclosure of personally identifiable hospital information for our clients was "imminent" but refused to make any commitments concerning the amount of advance notice (e.g. one day, two days).

We plan to include the above information in our motions. Please let me know if any of these statements are factually inaccurate.

Are we also able to make any representations to the Court as to whether Children's Hospital supports, opposes or taken no position on these three motions?

Thanks,

Helen

**Helen Tran** (she/her/hers)
Senior Attorney

3701 Wilshire Boulevard, Suite 208, Los Angeles, CA 90010
**htran@wclp.org  www.wclp.org**

This message is from Western Center on Law & Poverty and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail, any attachments and any copies from your system. Thank you for your cooperation.

*********************************************************************************************************

This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Our Privacy Policy explains how we may use your personal information. Thank you.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please visit http://www.mwe.com/ for more information about our Firm.

74

# EXHIBIT M

 Outlook

---

## Re: [EXTERNAL] Re: Hospital Subpoena - Response Requested Tues, 10/28

---

From  Amy Powell <amy@lawyersforgoodgovernment.org>

Date  Wed 11/19/2025 2:20 PM

To  Goldstein, Ross <Ross.Goldstein@usdoj.gov>

Cc  Helen Tran <htran@wclp.org>; Runkle, Patrick <Patrick.R.Runkle@usdoj.gov>; Lori Rifkin
<lrifkin@impactfund.org>; Khadijah Silver <khadijah@lawyersforgoodgovernment.org>

---

> CAUTION: This email originated from outside the organization. Please take care when clicking on links or opening
> attachments.

Thanks so much Ross.  We very much appreciate your efforts on this issue and willingness to communicate with us.

After careful consideration, the clients have decided to move forward with described motions, with one change.  Ultimately, the clients decided that an open and unwithdrawn subpoena is simply too great a risk not to seek judicial relief.  (As previously noted, we understand that Children's Hospital is still processing other responsive documents; that DOJ has not withdrawn the subpoena or any portion thereof; and that DOJ has not ruled out future enforcement action or negotiations on the subpoena.) Accordingly, we plan to file later this week. Please let us know how to represent the Government's position on the proposed motions.

Under the circumstances, we currently do not intend to seek emergency relief.  We would be happy to work together on a proposed briefing schedule if we can work something out (that hopefully should not interfere with any holiday plans).

Regards
Amy

On Tue, Nov 18, 2025 at 4:04 PM Goldstein, Ross <Ross.Goldstein@usdoj.gov> wrote:

> Amy,
>
> Thank you for following up with us and please accept our apologies for neglecting to get back to you sooner. In the interest of avoiding unnecessary litigation, we are willing to commit to providing you with advance notice, on the order of one week or so, before moving to enforce the subpoena or