**WESTERN CENTER ON LAW & POVERTY**
Helen Tran, SBN 290731
Email: htran@wclp.org
David Kane, SBN 292186
Email: dkane@wclp.org
Joy Dockter, SBN 275196
Email: jdockter@wclp.org
Robert Newman, SBN 86534
Email: rnewman@wclp.org
3701 Wilshire Blvd., Suite 208
Los Angeles, CA 90010
Telephone: (213) 487-7211
Fax: (213) 487-0242

(Additional counsel on following page)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re 2025 Children's Hospital of Los Angeles Subpoena | Case No.: _____ |
| | CLASS ACTION |
| | **EXHIBITS 1-3 IN SUPPORT OF MOTION TO QUASH; MOTION TO PROCEED UNDER PSEUDONYM; AND MOTION FOR CLASS CERTIFICATION** |

1

**LAWYERS FOR GOOD GOVERNMENT**
Amy E. Powell, NC SBN 50300*
Email: amy@lawyersforgoodgovernment.org
Khadijah M. Silver, NY SBN 5473558*
Email: khadijah@lawyersforgoodgovernment.org
Alyssa F. Morrison, TX SBN 24110135*
Email: amorrison@lawyersforgoodgovernment.org
1319 F St. NW Ste 301
PMB 181
Washington, DC 20004

**IMPACT FUND**
Lori Rifkin, SBN 244081
Email: lrifkin@impactfund.org
Fawn Rajbhandari-Korr, SBN 315888
Email: fkorr@impactfund.org
Meredith Dixon, SBN 346864
Email: mdixon@impactfund.org
Megan Flynn, SBN 359394
Email: mflynn@impactfund.org
2080 Addison St., Suite 5
Berkeley, CA 94704
Telephone: (510) 845-3473
Fax: (510) 845-3654

*Attorneys for Moving Parties*

*Pro hac vice application forthcoming*

**EXHIBITS 1-3 ISO MOTION TO QUASH; MOTION TO PROCEED UNDER PSEUDONYM; AND MOTION FOR CLASS CERTIFICATION**

# EXHIBIT 1

**WESTERN CENTER ON LAW & POVERTY**
Helen Tran, SBN 290731
Email: htran@wclp.org
David Kane, SBN 292186
Email: dkane@wclp.org
Joy Dockter, SBN 275196
Email: jdockter@wclp.org
Robert Newman, SBN 86534
Email: rnewman@wclp.org
3701 Wilshire Blvd., Suite 208
Los Angeles, CA 90010
Telephone: (213) 487-7211
Fax: (213) 487-0242

(Additional counsel on following page)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re 2025 Children's Hospital of Los Angeles Subpoena | Case No.: _____ |
| | CLASS ACTION |
| | **DECLARATION OF PARENT AA IN SUPPORT OF MOTION TO QUASH; MOTION TO PROCEED UNDER PSEUDONYM; AND MOTION FOR CLASS CERTIFICATION** |

1

**DECLARATION OF PARENT AA**

**LAWYERS FOR GOOD GOVERNMENT**
Amy E. Powell, NC SBN 50300*
Email: amy@lawyersforgoodgovernment.org
Khadijah M. Silver, NY SBN 5473558*
Email: khadijah@lawyersforgoodgovernment.org
Alyssa F. Morrison, TX SBN 24110135*
Email: amorrison@lawyersforgoodgovernment.org
1319 F St. NW Ste 301
PMB 181
Washington, DC 20004

**IMPACT FUND**
Lori Rifkin, SBN 244081
Email: lrifkin@impactfund.org
Fawn Rajbhandari-Korr, SBN 315888
Email: fkorr@impactfund.org
Meredith Dixon, SBN 346864
Email: mdixon@impactfund.org
Megan Flynn, SBN 359394
Email: mflynn@impactfund.org
2080 Addison St., Suite 5
Berkeley, CA 94704
Telephone: (510) 845-3473
Fax: (510) 845-3654

*Attorneys for Moving Parties*

**Pro hac vice application forthcoming*

2

**DECLARATION OF PARENT AA**

**DECLARATION OF PARENT AA**

I, Parent AA, declare as follows:

1. I am the parent of Child AA, a minor currently under the age of 18 who received gender-affirming care at Children's Hospital Los Angeles ("Children's Hospital") between January 1, 2020, until July 22, 2025, when Children's Hospital ceased providing such care to patients.

2. I submit this Declaration in support of moving parties' motion to proceed under pseudonyms; motion to quash certain provisions in the recent subpoena reportedly served by the United States Department of Justice ("DOJ") on Children's Hospital regarding the provision of gender-affirming care; and motion for class certification. I make this declaration based on my own personal knowledge, and, if called as witnesses, I could and would competently testify to the following:

3. Both Child AA and I are residents of Los Angeles County.

4. I have not shared information about my child's gender identity or medical treatment with DOJ, nor do I want to share this private information with DOJ.

5. During the course of my child's care at Children's Hospital, my child, other family members, and I visited with Children's Hospital providers at least 12 times and met with at least 10 medical professionals and hospital staff, including physicians, nurses, licensed mental health professionals, social workers, billing, and front office staff. We additionally communicated with staff at Children's Hospital by telephone, email, video conference, and other forms of communication, including the Children's Hospital online portal.

6. Throughout these visits and communications with Children's Hospital, my child and I disclosed sensitive, private information about my child's mental health, gender identity, sexual health, other physical health issues, and

3
DECLARATION OF PARENT AA

various personal struggles and triumphs. Meanwhile, I disclosed personal information about my occupation and financial situation as well as personal information about other members of the family, our relatives, and our friends that were relevant to my child's care. These disclosures were made within the private, trusted sphere of the patient-provider relationship.

7.    I shared this information with the understanding that it would be used solely for medical treatment and would not be shared with anybody else. I believed that such disclosures were necessary to aid in my child's receipt of medically necessary care, including diagnosis, treatment, treatment plan development, and other recommendations for their health and well-being.

8.    During the course of my child's care at Children's Hospital, both my child and I participated in assessments conducted by a licensed mental health provider, discussed treatment options in great detail with physicians, discussed our questions and concerns about treatment privately with Children's Hospital medical providers, and disclosed extensive, distinct personal medical history.

9.    During the course of my child's care at Children's Hospital, my child received gender-affirming care, including puberty blockers, hormone therapy, and other gender-related care, as recommended by their healthcare providers.

10.    My child was covered by private health insurance during the course of their care at Children's Hospital. To the best of my knowledge, Children's Hospital billed the costs of these visits and other treatment to the private health insurance. Despite this insurance coverage, it was necessary for my family to pay thousands of dollars out of pocket.

11.    My family has spent thousands of dollars to affirm my child's transgender identity and provide the best healthcare available. My child has lived an authentic life with this identity for several years.

4
DECLARATION OF PARENT AA

12.    My child still lives in constant fear of their transgender identity being exposed to their classmates and other acquaintances. This fear is rooted in previous experiences of bullying and harassment that my child has suffered in connection with their transgender identity. Since April 2025, my child has experienced physically painful symptoms associated with the profound stress from this bullying from classmates. I fear for my child's physical and mental well-being if their identity becomes known more broadly through this lawsuit or records handed over to DOJ.

13.    My child has overcome a lot of mental health struggles, including suicidal ideation. It took about two years for my child to get to a point of stability. Disclosing my child's identity in connection to this lawsuit or in records to DOJ—and further to the public—could cause serious set back in their progress.

14.    My family fears for our lives and well-being due to the extreme, animus-fueled threats from the current federal Administration. These fears and threats first became tangible during President Trump's Inaugural Address when he articulated an anti-trans policy for this presidency. Then came the January 28 Executive Order directing federal agencies to limit access to gender-affirming care for minors.

15.    On April 3, 2025, President Trump signed a proclamation entitled "National Child Abuse Prevention Month, 2025," in which the President stated, "One of the most prevalent forms of child abuse facing our country today is the sinister threat of gender ideology." The proclamation also previewed potential punishment "to the fullest extent of the law" against parents who allow their children to receive gender-affirming care. Based on proclamation—and other actions by the Administration—I worry the government will in fact put me in jail, take my child away, and send my child through the dangerous practice of conversion therapy.

5
DECLARATION OF PARENT AA

16.    I read the news every day. Because of my fears, I feel that I have to constantly monitor the news. Almost daily, there is some news that indicates our lives are in danger if my child continues to access gender-affirming care.

17.    These fears and threats were exacerbated when DOJ issued subpoenas to hospitals and clinics providing gender-affirming care. We do not want DOJ to have our most intimate information or any family in a similar situation. Further, we do not trust that DOJ would safeguard that information or use it with regard for my child and family's best interests.

18.    These threats to my family's safety have forced us down the heartbreaking and financially burdensome pathway to consider fleeing this country. This decision comes at great financial, social, emotional, cost to our family but is one we believe is necessary to ensure our safety. In addition to our present plan to leave, we have emergency plans to leave more quickly if we learn that our child's transgender identity is made known to DOJ. We are also in the process of obtaining residency in another country as a back-up plan.

19.    I learned about the existence of subpoenas seeking information on hospital-delivered gender-affirming care when DOJ put out a press release about this on July 9, 2025. I made no less than three attempts to inquire about the existence and status of a subpoena to Children's Hospital by phone and email. At no time during this correspondence did Children's Hospital attempt to reassure us of the security of our personal information. In fact, prior to the engagement of our legal representation, we received no acknowledgement from Children's Hospital that they had received our numerous inquiries.

20.    My child has previously been harassed and bullied at school in connection with their transgender identity. My child wanted to be at a new school where their transgender identity was not known by anyone. Within months of attending the new school, another student put their hands inside my child's pants,

6
DECLARATION OF PARENT AA

violating their personal space and outing their gender identity. Every second of every school day, my child lives in fear that their gender identity will be revealed to fellow students, faculty, and staff—and that they will be seen in a different light. I fear that the disclosure of my child's medical records to the federal government and to the public would cause my child additional harms such as severe emotional distress, bullying, harassment, discrimination, physical assault and violence, or even death.

21.    If the public were to find out about my participation or my child's participation in this lawsuit, I fear getting doxxed, people showing up to my home, and my child being targeted outside of school and social settings. If my child's name is disclosed, they would be automatically outed as transgender to their classmates. They have already been outed as transgender to some peers before. Disclosure of my name or my child's name in the context of this legal action would expose my child's transgender identity, which is not currently known by many people within our life.

22.    Our privacy would not be protected by redacting our names. During the course of my child's care, we disclosed innumerable sensitive, identifiable facts to Children's Hospital medical providers. As discussed above, this includes information about my child's achievements, parents' occupation, family and friends, and more.

23.    I am aware of steps taken by previous staff of the gender clinic to protect themselves from threats of violence, including wearing body armor on a regular basis due to repeated credible threats on their lives. I believe my family could be under similar threat if our information is released to DOJ or the public.

24.    In my personal life, I have deleted social media posts involving my child because of evidence that our family was being stalked in connection with my

7
DECLARATION OF PARENT AA

child's gender identity. I have also reported to the police hate incidents that my family has experienced.

25.     I understand that DOJ has reserved the right to enforce the subpoena at any time and that they might do so without giving me any advance notice. I also understand that even if Children's Hospital has not already turned over my child's personal health information to DOJ, the hospital could turn over this information at any time.

26.     Given the federal government's ever-increasing attacks on transgender youth and adults and how much I already feel like my child and family are being targeted, I do not feel like my family is safe as long as the subpoena is out there. I want to make sure my child's privacy rights are protected and do not feel comfortable knowing DOJ could go after our information at any time.

27.     I decided to participate in this action because we believe that people who seek gender-affirming care should be able to trust that their medical records will not be turned over to the government for improper purposes, and I do not want people to fear seeking gender-affirming care in the future.

28.     Despite these strong convictions, if we are not permitted to proceed under pseudonym, I will likely feel compelled to withdraw as a representative of this class and from this motion and abandon litigation in order to preserve the safety of my child and my family.

29.     I understand that as a class representative, my job would be to advocate for what is best for all people who have sought or received gender-affirming care at Children's Hospital of Los Angeles, and not just myself. I am prepared to assume this responsibility.

30.     I also understand that I must stay informed about the lawsuit and consult with my attorneys. I have no conflicts or restrictions that would prevent me from taking on this important job.

8
DECLARATION OF PARENT AA

1

2      I declare under penalty of perjury under the laws of the United States of

3  America that the foregoing is true and correct. Executed on November 16, 2025,

4  in Los Angeles County, State of California.

5

6                                    Parent of AA

7                                    Parent of AA

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
_____
                        9
              DECLARATION OF PARENT AA

# EXHIBIT 2

**WESTERN CENTER ON LAW & POVERTY**
Helen Tran, SBN 290731
Email: htran@wclp.org
David Kane, SBN 292186
Email: dkane@wclp.org
Joy Dockter, SBN 275196
Email: jdockter@wclp.org
Robert Newman, SBN 86534
Email: rnewman@wclp.org
3701 Wilshire Blvd., Suite 208
Los Angeles, CA 90010
Telephone: (213) 487-7211
Fax: (213) 487-0242

(Additional counsel on following page)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re 2025 Children's Hospital of Los Angeles Subpoena | Case No.: _____<br><br>CLASS ACTION<br><br>**DECLARATION OF PARENTS BB1 AND BB2 IN SUPPORT OF MOTION TO QUASH; MOTION TO PROCEED UNDER PSEUDONYM; AND MOTION FOR CLASS CERTIFICATION** |

1

**DECLARATION OF PARENTS OF BB1 AND BB2**

**LAWYERS FOR GOOD GOVERNMENT**
Amy E. Powell, NC SBN 50300*
Email: amy@lawyersforgoodgovernment.org
Khadijah M. Silver, NY SBN 5473558*
Email: khadijah@lawyersforgoodgovernment.org
Alyssa F. Morrison, TX SBN 24110135*
Email: amorrison@lawyersforgoodgovernment.org
1319 F St. NW Ste 301
PMB 181
Washington, DC 20004

**IMPACT FUND**
Lori Rifkin, SBN 244081
Email: lrifkin@impactfund.org
Fawn Rajbhandari-Korr, SBN 315888
Email: fkorr@impactfund.org
Meredith Dixon, SBN 346864
Email: mdixon@impactfund.org
Megan Flynn, SBN 359394
Email: mflynn@impactfund.org
2080 Addison St., Suite 5
Berkeley, CA 94704
Telephone: (510) 845-3473
Fax: (510) 845-3654

*Attorneys for Moving Parties*

*Pro hac vice application forthcoming*

2

**DECLARATION OF PARENTS OF BB1 AND BB2**

**DECLARATION OF PARENT BB1 AND PARENT BB2**

We, Parent BB1 and Parent BB2, declare as follows:

1.       We are the parents of Child BB, a minor currently under the age of 18 and who received gender-affirming care at Children's Hospital Los Angeles ("Children's Hospital") between January 1, 2020, and July 22, 2025, when Children's Hospital stopped providing this care.

2.       We submit this Declaration in support of moving parties' motion to proceed under pseudonyms; motion to quash certain provisions in the recent subpoena reportedly served by the United States Department of Justice ("DOJ") on Children's Hospital regarding the provision of gender-affirming care; and motion for class certification. We make this declaration based on our own personal knowledge, and, if called as witnesses, we could and would competently testify to the following:

3.       We and Child BB live in Los Angeles County.

4.       We have not shared information about our child's gender identity or medical treatment with DOJ, nor do we want to share this private information with DOJ.

5.       Our child received gender-affirming care at Children's Hospital as recommended by our child's healthcare providers.

6.       During the course of our child's gender-affirming care at Children's Hospital, we and our child visited Children's Hospital and affiliated providers at least five times for medical appointments and met with physicians, nurses, and front desk staff during these visits. While our child was receiving care at Children's Hospital, we exchanged about 20 emails with Children's Hospital's social workers in addition to communicating by telephone.

7.       Throughout these visits and communications with Children's Hospital, we and our child disclosed sensitive private information about our child's mental, physical, and sexual health including fertility, gender identity, school relationships,

3
DECLARATION OF PARENT BB1 AND PARENT BB2

16

1    and other deeply personal thoughts and feelings. We, as parents, disclosed personal

2    information about our occupations, financial situation, and medical histories, as well

3    as personal details about other members of the family, relatives, and friends.

4         8.    When we disclosed this information, we believed our disclosures were

5    private and would be kept confidential between us, our child, and our healthcare

6    providers. We shared this sensitive information with our doctor and other healthcare

7    professionals because we thought it was necessary for our child's medical care,

8    including diagnosis, treatment, treatment plan development, and other

9    recommendations for our child's health and well-being.

10        9.    Our child was covered by private health insurance during the course of

11    their care at Children's Hospital. To the best of our knowledge, Children's Hospital

12    billed the costs of these visits and other treatment to the private health insurance.

13    Despite insurance coverage, it was necessary for our family to pay out-of-pocket for

14    some care.

15        10.    We worry about our family's safety and well-being due to the extreme

16    and hateful threats and statements from the current Administration that we see in the

17    news, including executive orders and statements from the president about

18    transgender people and gender-affirming healthcare. Similar hateful threats and

19    statements are also being propounded by members of the public who are followers

20    and supporters of the Administration.

21        11.    Our fear for our family's privacy and safety became particularly intense

22    when we learned DOJ subpoenaed Children's Hospital for documents that include

23    our family's deeply personal information. We do not want DOJ to have that

24    information, and we further do not trust DOJ would safeguard that information from

25    improper disclosure. Additionally, statements and executive orders from the

26    Administration about transgender people and transgender healthcare make us worry

27    DOJ will use our information for improper purposes.

28

4

DECLARATION OF PARENT BB1 AND PARENT BB2

12.    One of our biggest fears in having our family's personal information handed over to DOJ is allowing the government to identify that we have a child who is receiving gender affirming care and eventually to take away our child because of that. In places outside California, such as Texas, state governments have tried to investigate families for providing gender-affirming care for their children. We fear the federal government may investigate our family in the same ways. After all, the President has proclaimed gender-affirming care to be medical abuse and mutilation of children.

13.    We cannot stop this medical treatment for our child because without proper care that affirms our child's gender, our child's gender dysphoria can become life threatening. We are acutely aware of the statistic, which has been confirmed with us by our child's medical providers, that children who do not receive gender affirming care have a 50% increase in suicide attempts when they are in high school. We are also aware that trans people are brutalized and murdered because of their gender identity, and for trans women of color, they are far more likely to be assaulted than other groups.

14.    The Administration is also separating families in other but similar contexts of persecution. ICE is kidnapping and putting immigrants into facilities to advance a political agenda. We believe something similar could happen to families like ours that have children receiving gender affirming care. Following the murder of Charlie Kirk, Republican lawmakers made statements in the likes of "round up transgender people up and put them into hospitals." We have also learned from the news that the FBI plans to designate transgender individuals as terrorists, which can include children. We are acutely aware of what happens to individuals when they are designated or viewed as dangerous by law enforcement. Due to these widely reported policies, we believe this current Administration, including DOJ, has a deep-rooted

animus towards transgender people and a willingness to violate our constitutional rights because we support our child.

15.    There is a level of fear that we have right now that we thought we would never have to experience in this country and state.

16.    Our child has experienced social isolation and bullying in school and other social settings in connection to their transgender identity in the past, and we fear the disclosure of our family's private information to the public could lead to additional difficult times in school. Additionally, this disclosure to the public could cause our child to experience severe emotional distress, further worsening our child's existing mental health struggles. Our deepest worry is that our child could die if they are subject to any of these harms.

17.    Our family has in the past used pseudonyms while appearing in public media to advocate for transgender rights. At the time when we did this, we were advised by the producers to not use our real names because of the real threat of retaliation by members of the public who oppose transgender rights.

18.    Additionally, because our family belongs to minority communities, we, as a family, are even more vulnerable than other families with transgender children to physical, emotional, and financial harm from harassment, discrimination, or violence directed against us.

19.    The statements and actions of President Trump and his Administration give us grave concern that the federal government will cause our child severe emotional distress and expose our child to bullying, harassment, discrimination, physical assault and violence, or even death, should DOJ and the government obtain our child's medical records.

20.    Our privacy would not be protected by redacting our names. During the course of our child's care, we disclosed innumerable sensitive, identifiable facts to Children's Hospital medical providers.

6
DECLARATION OF PARENT BB1 AND PARENT BB2

21.    We made no less than three attempts by email and one attempt by phone to inquire about the existence and status of a subpoena from Children's Hospital from about the last week of June 2025 to the second week of September 2025. In September 2025, a staff member at the hospital told us during a phone call that staff was not allowed to notify patients that the hospital is fighting the subpoena, but we have never received written confirmation of the actual receipt of a subpoena by Children's Hospital.

22.    I understand that DOJ has reserved the right to enforce the subpoena at any time and that they might do so without giving me any advance notice. I also understand that even if Children's Hospital has not already turned over my child's personal health information to DOJ, the hospital could turn over this information at any time.

23.    Given the federal government's ever-increasing attacks on transgender youth and adults and how much I already feel like my child and family are being targeted, I do not feel like my family is safe as long as the subpoena is out there. I want to make sure my child's privacy rights are protected and do not feel comfortable knowing DOJ could go after our information at any time.

24.    We decided to participate in this action because we believe that people who seek gender-affirming care should be able to trust that their medical records will not be turned over to the government for improper purposes, and we do not want people to fear seeking gender affirming care in the future.

25.    Despite these strong convictions, if we are not permitted to proceed under pseudonym, we will likely feel compelled to withdraw as a representative of this class and from this motion and abandon litigation in order to preserve the safety of our child and our family.

26.    We understand that as a class representative, our jobs would be to advocate for what is best for all people who have sought or received gender

7

DECLARATION OF PARENT BB1 AND PARENT BB2

1  affirming care at Children's Hospital of Los Angeles, and not just ourselves. We are

2  prepared to assume this responsibility.

3        27.     We also understand that we must stay informed about the lawsuit and

4  consult with our attorneys. We have no conflicts or restrictions that would prevent us

5  from taking on this important job. We will fairly and adequately represent the

6  proposed class.

7

8        I declare under penalty of perjury under the laws of the United States of

9  America that the foregoing is true and correct. Executed on November ___, 2025, in

10  Los Angeles County, State of California.

11

12

13                                          _____

14                                          Parent BB1

15

16                                          _____

17                                          Parent BB2

18

19

20

21

22

23

24

25

26

27

28
                                        8
            DECLARATION OF PARENT BB1 AND PARENT BB2

# EXHIBIT 3

**WESTERN CENTER ON LAW & POVERTY**
Helen Tran, SBN 290731
Email: htran@wclp.org
David Kane, SBN 292186
Email: dkane@wclp.org
Joy Dockter, SBN 275196
Email: jdockter@wclp.org
Robert Newman, SBN 86534
Email: rnewman@wclp.org
3701 Wilshire Blvd., Suite 208
Los Angeles, CA 90010
Telephone: (213) 487-7211
Fax: (213) 487-0242

(Additional counsel on following page)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re 2025 Children's Hospital of Los Angeles Subpoena | Case No.: _____<br><br>CLASS ACTION<br><br>**DECLARATION OF PARENT CC IN SUPPORT OF MOTION TO QUASH; MOTION TO PROCEED UNDER PSEUDONYM; AND MOTION FOR CLASS CERTIFICATION** |

1

**DECLARATION OF PARENT CC**

**LAWYERS FOR GOOD GOVERNMENT**
Amy E. Powell, NC SBN 50300*
Email: amy@lawyersforgoodgovernment.org
Khadijah M. Silver, NY SBN 5473558*
Email: khadijah@lawyersforgoodgovernment.org
Alyssa F. Morrison, TX SBN 24110135*
Email: amorrison@lawyersforgoodgovernment.org
1319 F St. NW Ste 301
PMB 181
Washington, DC 20004

**IMPACT FUND**
Lori Rifkin, SBN 244081
Email: lrifkin@impactfund.org
Fawn Rajbhandari-Korr, SBN 315888
Email: fkorr@impactfund.org
Meredith Dixon, SBN 346864
Email: mdixon@impactfund.org
Megan Flynn, SBN 359394
Email: mflynn@impactfund.org
2080 Addison St., Suite 5
Berkeley, CA 94704
Telephone: (510) 845-3473
Fax: (510) 845-3654

*Attorneys for Moving Parties*

**Pro hac vice application forthcoming*

2

**DECLARATION OF PARENT CC**

**DECLARATION OF PARENT CC**

I, Parent CC, declare as follows:

1.    I am the parent of Child CC, a minor currently under the age of 18 who received gender-affirming care at Children's Hospital Los Angeles ("Children's Hospital") between January 1, 2020, until July 22, 2025, when Children's Hospital ceased providing such care to patients.

2.    I submit this Declaration in support of moving parties' motion to proceed under pseudonyms; motion to quash certain provisions in the recent subpoena reportedly served by the United States Department of Justice ("DOJ") on Children's Hospital regarding the provision of gender-affirming care; and motion for class certification. I make this declaration based on my own personal knowledge, and, if called as a witness, I could and would competently testify to the following:

3.    Both Child CC and I are residents of Los Angeles County.

4.    I have not shared information about my child's gender identity or medical treatment with DOJ, nor do I want to share this private information with DOJ.

5.    During the course of my child's care at Children's Hospital, my child, other family members, and I met with Children's Hospital providers at least five times and met with at least five medical professionals and hospital staff, including physicians, physician assistants, nurses, social workers, and front office staff. We additionally communicated with staff at Children's Hospital by telephone and email.

6.    Throughout these visits and communications with Children's Hospital, my child and I disclosed sensitive, private information about my child's mental health (including their deepest and darkest feelings), gender identity, sexual health, other physical health issues, genetic information, and various other personal

information. Meanwhile, my child and I disclosed personal information about my occupation and financial situation as well as personal information about other members of the family and other relatives that were relevant to my child's care.

7.      When my child and I disclosed this information, we believed my disclosures were private and would be kept confidential between me, my child, and their healthcare providers. We shared this sensitive information with their doctor and other healthcare professionals because we thought it was necessary for my child's medical care, including diagnosis, treatment, treatment plan development, and other recommendations for my child's health and well-being.

8.      My child received gender-affirming care at Children's Hospital as recommended by our child's healthcare providers.

9.      My child was covered by private health insurance during the course of their care at Children's Hospital. To the best of my knowledge, Children's Hospital billed the costs of these visits and other treatment to my child's private health insurance.

10.     My child has experienced incidents of disrespect, more than microaggressions, in school in connection with their transgender identity. For example, one peer told my child they would call them by their former name, a harmful act known as deadnaming, because it was simply easier for them. I fear that my child will experience additional incidents or more severe consequences if my child's transgender status is further exposed. My family and I have experienced physical symptoms, including lost sleep and trouble concentrating, associated with the profound stress caused by the extreme animus towards transgender people shown by the statements and actions of the current federal Administration, and the threats that poses to our own safety and wellbeing.

11.     Even though I am not a shy person and my career has involved many press conferences, I have avoided speaking publicly on the subject of gender-

affirming care. Now my family fears that we will be targeted, and our well-being harmed, due to the extreme, animus-fueled threats from the current federal administration. These fears and threats became tangible when the Department of Justice subpoenaed my family's deeply personal information. I do not want DOJ to have our most intimate information nor that of families in a similar situation. Further, I do not trust that DOJ would safeguard that information or use it wisely. In fact, I fear DOJ will use it for the exact opposite. Additionally, statements and executive orders from the Administration about transgender people and transgender healthcare make us worry DOJ will use our information for improper purposes.

12.     One of my biggest fears in having my family's personal information handed over to DOJ is allowing the government to identify that I have a child who is receiving gender affirming care and eventually to take away my child because of that. I fear the federal government may investigate our family simply for providing the best healthcare possible for my child. If my child were taken away, I fear that my child may be forcibly sent through the dangerous practice of conversion therapy. After all, the President has proclaimed gender affirming care to be medical abuse and mutilation of children.

13.     I am living in fear every day of DOJ having our records. My child could be harmed in many ways. The federal government could put my child on a list and target them, take away their passport, "doxx" them, or otherwise make my family's identities publicly known. I have seen what happens to transgender athletes and how they are forced to defend themselves when they are just kids. I do not want the same for my child. I simply want to honor my kid's right not to disclose who they are to the entire world. They have a right to be a kid. My child did not ask for any of this to be happening.

5
DECLARATION OF PARENT CC

14.    I also fear that the DOJ would target me under their so-called investigations into genital mutilation. This is due to my involvement with the administration of my child's gender affirming medication, so I believe I would likely be in the crosshairs of the federal administration and subject to arrest and prosecution if they learned my identity.

15.    These fears, exacerbated by the subpoena, have forced us to consider the heartbreaking and financially burdensome pathway of fleeing this country. This decision would come at a great cost to our family but is one we believe could become necessary to ensure our safety if we learn that our child's transgender identity is made known to DOJ. We are only considering this because the DOJ's receipt of my family's personal information is so frightening to me.

16.    I fear that the disclosure of my child's medical records to the federal government would cause my child additional harms such as severe emotional distress, bullying, harassment, discrimination, physical assault and violence, or even death. Even though it seems unreal, I am worried that somebody would show up at my door, or at my child's school, and physically hurt us.

17.    Disclosure of my name, which would necessarily identify my child, or the disclosure of the name of my child, in the context of a legal action to prevent disclosure of medical records pertaining to gender-affirming care, would likely cause the same harms to my child and my family: tremendous emotional distress and exposing my child to the possibility of bullying, harassment, discrimination, violence, or even death. I have gone to great lengths to make sure my child's transgender status is not currently known by many people within our life, including among my child's teachers and peers at school, and even some relatives.

18.    I want to proceed only under a pseudonym. My family's privacy would not be protected by simply redacting our names, nor would the privacy of those within the class be protected by only redacting the names of everyone within

6
DECLARATION OF PARENT CC

this class. During the course of my child's care, we disclosed innumerable sensitive, identifiable facts to Children's Hospital. This includes information about my child's struggles, my spouse's and I's occupations, our family and friends, and more intimate information that should never be released beyond Children's Hospital.

19.    I learned about the existence of subpoenas seeking information on hospital-delivered gender affirming care from the news.  In emails to Children's Hospital's legal department and a call with Children's Hospital's patient satisfaction staff, I made no less than three attempts to inquire about the existence and status of a subpoena to Children's Hospital. At no time did Children's Hospital attempt to reassure me of the security of my family's personal information.

20.    I understand that DOJ has reserved the right to enforce the subpoena at any time and that they might do so without giving me any advance notice. I also understand that even if Children's Hospital has not already turned over my child's personal health information to DOJ, the hospital could turn over this information at any time.

21.    Given the federal government's ever-increasing attacks on transgender youth and adults and how much I already feel like my child and family are being targeted, I do not feel like my family is safe as long as the subpoena is out there. I want to make sure my child's privacy rights are protected and do not feel comfortable knowing DOJ could go after our information at any time.

22.    I decided to participate in this action because I believe that people who seek gender affirming care should be able to trust that their medical records will not be turned over to the government for improper purposes, and I do not want people to fear seeking gender affirming care in the future.

23.    Despite these strong convictions, if I am not permitted to proceed under pseudonym, I will likely feel compelled to withdraw as a representative of

1  this class and from this motion and abandon this litigation in order to preserve the
2  safety of my child and my family.

3      24.    I understand that as a class representative, my job would be to
4  advocate for what is best for all people who have sought or received gender
5  affirming care at Children's Hospital, and not just myself. I am prepared to assume
6  this responsibility.

7      25.    I also understand that I must stay informed about the lawsuit and
8  consult with our attorneys. I have no conflicts or restrictions that would prevent me
9  from taking on this important job.

10      26.    The information that the subpoena seeks is none of the government's
11  business. I want them to stop harassing the community and trying to deter kids
12  from getting treatment so that they suffer without gender-affirming care.

13

14      I declare under penalty of perjury under the laws of the United States of
15  America that the foregoing is true and correct. Executed on November 19, 2025,
16  in Los Angeles County, State of California.

17
18                           *Parent CC*
19                             Parent CC

20
21
22
23
24
25
26
27
28