**WESTERN CENTER ON LAW & POVERTY**
Helen Tran, SBN 290731
Email: htran@wclp.org
David Kane, SBN 292186
Email: dkane@wclp.org
Joy Dockter, SBN 275196
Email: jdockter@wclp.org
Robert Newman, SBN 86534
Email: rnewman@wclp.org
3701 Wilshire Blvd., Suite 208
Los Angeles, CA 90010
Telephone: (213) 487-7211
Fax: (213) 487-0242

(Additional counsel on following page)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re 2025 Children's Hospital of Los Angeles Subpoena | Case No.: 25-11183 |
| | CLASS ACTION |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM** |

**LAWYERS FOR GOOD GOVERNMENT**
Amy E. Powell, NC SBN 50300*
Email: amy@lawyersforgoodgovernment.org
Khadijah M. Silver, NY SBN 5473558*
Email: khadijah@lawyersforgoodgovernment.org
Alyssa F. Morrison, TX SBN 24110135*
Email: amorrison@lawyersforgoodgovernment.org
1319 F St. NW Ste 301
PMB 181
Washington, DC 20004

**IMPACT FUND**
Lori Rifkin, SBN 244081
Email: lrifkin@impactfund.org
Fawn Rajbhandari-Korr, SBN 315888
Email: fkorr@impactfund.org
Meredith Dixon, SBN 346864
Email: mdixon@impactfund.org
Megan Flynn, SBN 359394
Email: mflynn@impactfund.org
2080 Addison St., Suite 5
Berkeley, CA 94704
Telephone: (510) 845-3473
Fax: (510) 845-3654

*Attorneys for Moving Parties*

**Pro hac vice application forthcoming*

2

**MEMORANDUM IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................7

II. BACKGROUND ...............................................................................................7

III. ARGUMENT ....................................................................................................7

    A. Moving Parties' need for anonymity is great and meets the standard for granting the motion to proceed under pseudonym................................................8

        1. Patients and their families risk further and increased physical and mental harm from disclosure of their identities to a hostile government and public. ................................................................8

            i. The threatened harm to Moving Parties is severe and their fear is reasonable............................................................................9

            ii. The minor patients targeted by the subpoenas are particularly vulnerable to retaliation and harm..........................14

        2. Patients' right to informational privacy in "sensitive and highly personal" medical records would be violated should they be required to reveal their identities in this matter. ...............................15

        3. Moving parties must proceed under pseudonyms or risk criminal prosecution. ...........................................................................17

    B. The public's interest in open courts is neither served nor enhanced by requiring Moving Parties to reveal their identities, and allowing them to proceed under pseudonyms may serve the public interest by allowing the case to be decided on the merits........................................................................18

        1. Though public interest may be high, it can be served without revealing the identities of Moving Parties. ...........................................19

        2. Moving Parties are unlikely to proceed if they are required to reveal their identities to the government, which would harm the public interest. ...........................................................................20

    C. The future harm to Moving Parties that will result from revealing their identities outweighs any minor prejudice to the government that may exist and justifies proceeding under pseudonym. ............................................21

3

IV. CONCLUSION ..................................................................................................22

**MEMORANDUM IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*,
  596 F.3d 1036 (9th Cir. 2010).............................................................10, 14

*Doe v. Noem*,
  781 F. Supp. 3d 1055 (E.D. Cal. 2025)..............................................11, 12

*Doe v. Roblox Corp.*,
  602 F. Supp. 3d 1243 (N.D. Cal. 2022) ..................................................20

*Doe v. Stegall*,
  653 F.2d 180 (5th Cir. 1981) ...................................................................14

*Does I thru XXIII v. Advanced Textile Corp.*,
  214 F.3d 1058 (9th Cir. 2000)...............................................................7, 8

*F.V. v. Barron*,
  286 F. Supp. 3d 1131 (D. Idaho 2018).....................................................11

*John Doe 140 v. Archdiocese of Portland in Oregon*,
  249 F.R.D. 358 (D. Or. 2008) .................................................................19

*Norman-Bloodsaw v. Lawrence Berkeley Laboratory*,
  135 F.3d 1260 (9th Cir. 1998)..................................................................15

*San Francisco A.I.D.S. Found. v. Trump*,
  786 F. Supp. 3d 1184 (N.D. Cal. 2025) ............................................10, 11

*United States v. Doe*,
  655 F.2d 920 (9th Cir.1981).......................................................................8

**Statutes**

18 U.S.C. §§ 116, 3509, 2251.......................................................................18
California Health & Safety Code § 1439.50......................................................9

**Rules**

Rule 10(a) of the Federal Rules of Civil Procedure .......................................7

5

**MEMORANDUM IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM**

## Other Authorities

Exec. Order No. 14190 ................................................................12
Exec. Order No. 14168 ................................................................12
Exec. Order No. 14183 ................................................................12
Exec. Order No. 14187 ...........................................................12, 17
Exec. Order No. 14201 ................................................................12
Proclamation No. 10911 .........................................................12, 17

Los Angeles Cnty. Comm'n on Hum. Rel., *2023 LA County Hate Crime Report,* at 8,
    available at https://hrc.lacounty.gov/stop-violence-2/ ..............................11

Erin Reed, *Republican lawmakers Nancy Mace and Ronny Jackson call for
    transgender people to be institutionalized*, The Advocate, https://perma.cc/2T4G-
    J8DS. ................................................................14

U.S. Dept. of Justice, *Department of Justice Subpoenas Doctors and Clinics Involved
    in Performing Transgender Medical Procedures on Children,* July 9, 2025,
    https://perma.cc/5WA2-XGPF ................................................................16

Memorandum from the Attorney General for Select Component Heads, Preventing the
    Mutilation of American Children, April. 22, 2025, https://perma.cc/KVF5-CER3 .18

**MEMORANDUM IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM**

## I.    INTRODUCTION

Moving Parties are parents and guardians of patients who sought treatment at the Center for Transyouth Health and Development at Children's Hospital Los Angeles ("Children's Hospital"). They seek to quash a subpoena served on Children's Hospital by the United States Department of Justice (DOJ) that improperly seeks disclosure of patients' medical records containing sensitive and highly personal information. In order to participate in this effort to safeguard their families' privacy rights, Moving Parties also seek to preserve these same privacy interests and protect their families against future harm by shielding their identities and personal information from both the public and the government.

Though the general rule is that parties must identify themselves in pleadings and papers, the facts herein make this one of the unusual cases in which parties may be permitted to proceed under pseudonym. Moving Parties' risk of retaliatory physical and mental harm, the necessity of privacy in a case involving sensitive and highly personal matters, and the risk to Moving Parties of prosecution by the federal government all far outweigh the public interest in knowing their identities and any minimal prejudice that might be faced by the government. This motion to proceed under pseudonym should therefore be granted.

## II.    BACKGROUND

For the purposes of brevity, Moving Parties incorporate the background section from their Memorandum in Support of Motion to Quash Administrative Subpoena and its supporting exhibits and declarations.

## III.    ARGUMENT

Rule 10(a) of the Federal Rules of Civil Procedure requires parties to be named in the title of any complaint. However, the Ninth Circuit has held that "… [in] this circuit, we allow parties to use pseudonyms in the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment'." *Does I thru XXIII v. Advanced Textile Corp.*,

7

214 F.3d 1058 (9th Cir. 2000) quoting *United States v. Doe,* 655 F.2d 920, 922 n.1 (9th Cir.1981).) When determining whether a party may proceed under pseudonym, courts must balance Moving Parties' need for anonymity, the presumption of open court proceedings, and the risk of unfairness to the opposing party. *Advanced Textile, Id.* at 1068. The balance of those factors comes out heavily in favor of allowing the Moving Parties to proceed under pseudonyms.

### A. Moving Parties' need for anonymity is great and meets the standard for granting the motion to proceed under pseudonym.

The controlling standard in the Ninth Circuit for determining whether party anonymity is appropriate was established in *Advanced Textile.* In that case, the plaintiffs were foreign garment workers on the island of Saipan, bringing an action under the Fair Labor Standards Act. They used fictitious names in their complaint because they feared that, if their identities were disclosed to defendants and other nonparties to the action, they would be fired from their jobs, deported from Saipan, and arrested and imprisoned by the People's Republic of China. *Advanced Textile*, 214 F.3d at 1062. The Ninth Circuit overturned the lower court's refusal to allow plaintiffs to proceed under pseudonym, and found that anonymity may be granted when: (1) identification creates a risk of retaliatory physical or mental harm; (2) anonymity is necessary to preserve privacy in a sensitive and highly personal matter; and (3) the anonymous party is compelled to admit an intention to engage in illegal conduct, thereby risking criminal prosecution. 214 F.3d. at 1068. All three of those circumstances exist in this matter.

### 1. Patients and their families risk further and increased physical and mental harm from disclosure of their identities to a hostile government and public.

In cases concerning potential harm from retaliation, the district court should determine the need for anonymity by evaluating: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, and (3) the anonymous

**MEMORANDUM IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM**

party's vulnerability to such retaliation." *Advanced Textile,* 214 F.3d at 1068 (citations omitted).

The Ninth Circuit has held that "plaintiffs are not required to prove that the defendants intend to carry out the threatened retaliation. What is relevant is that plaintiffs were threatened, and that a reasonable person would believe that the threat might actually be carried out." *Id.* at 1071.

## i. The threatened harm to Moving Parties is severe and their fear is reasonable.

Here, Moving Parties have already experienced harm at the hands of the public on the basis of the identifying information they are seeking to shield. Their children have experienced bullying, harassment, and other harms due to their gender identity. *See, e.g.,* Ex. 1 in support of Motion to Quash, Declaration of Parent AA (hereinafter, "Ex. 1, Decl. of Parent AA") ¶¶ 12, 20 (child living in constant fear of exposure as transgender[1] due to previous bullying and harassment leading in part to painful physical symptoms); Ex. 2 in support of Motion to Quash, Declaration of Parents BB1 & BB2 (hereinafter, "Ex. 2, Decl. of Parents BB1 & BB2") ¶ 16 (child experienced bullying and social isolation); Ex. 3 in support of Motion to Quash, Declaration of Parent CC (hereinafter, "Ex. 3, Decl. of Parent CC") ¶ 10 (child experienced incidents of disrespect—above and beyond microaggressions); Ex. 4 in support of Motion to Quash, Declaration of Parent DD (hereinafter, "Ex. 4, Decl. of Parent DD") ¶¶ 16, 17 (other children at school blocked bathroom door, demanded child admit they were a certain gender, and wrote hurtful letters and drawings about child). Further, the government has not only threatened to take detrimental action against transgender children and their parents, but has also already done so through a series of Executive

---

[1] Moving Parties use the term "transgender" as defined in California Health & Safety Code § 1439.50, meaning "a person whose gender identity differs from the person's assigned or presumed sex at birth."

**MEMORANDUM IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM**

1   Orders, memoranda, and proclamations aimed at harming this population. See *infra*
2   note 4 below.

3       This history of actual harm along with the explicit threats from the government
4   distinguish this case from *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est*., 596
5   F.3d 1036 (9th Cir. 2010), which denied the motion of plaintiffs challenging school
6   admission practices to proceed with pseudonyms despite threats of violence on the
7   internet against the plaintiffs. Among the factors the district court considered was a
8   conclusion that internet rhetoric rarely translates to actions, and that the plaintiffs did
9   not have a reasonable fear of harm and had said as much. *Id.* at 1045. Here, the
10  government's labeling of transgender people as immoral and their parents as child
11  abusers, and its explicit threats to prosecute people in Moving Parties' positions, are
12  similar to factors cited in *Advanced Textile*, including that plaintiffs might be deported
13  if they lose their jobs, and if plaintiffs were fired, blacklisted, or deported, they would
14  be burdened with debts arising from their contracts with the recruiting agencies. 214
15  F.3d at 1071.

16      Despite affirming the denial of the motion to proceed anonymously, the
17  *Kamehameha Schools* court stated its decision could have gone the other way, had the
18  panel not been limited by the standard of appellate review: "Had the district court
19  found that anonymity was appropriate, we likely would have concluded that the
20  district court did not abuse its discretion. Or, were we permitted to make findings and
21  weigh the factors anew, we might have held that anonymity here was appropriate."
22  596 F.3d at 1046. In the instant case, as will be discussed below, the Court should
23  exercise its discretion in applying the *Advanced Textile* factors to permit anonymity.

24      Foremost among the threats supporting Moving Parties' need for anonymity is
25  the threat of physical harm. As one court recognized recently, "transgender
26  individuals in particular face obvious barriers to filing suit to assert their own rights,
27  since disclosure of their transgender status exposes them to a substantial risk of
28  stigma, discrimination, intimidation, violence, and danger." *San Francisco A.I.D.S.*

*Found. v. Trump*, 786 F. Supp. 3d 1184, 1213–14 (N.D. Cal. 2025) (agencies that served transgender individuals and were faced with losing federal funding had standing to assert the rights of those individuals, who were justifiably afraid of disclosure).

Reports and studies support the court's observation that transgender individuals are particularly vulnerable to harm, even before the current Administration issued a series of harmful executive orders and memoranda targeting transgender people. Citing to *The Report of the 2015 U.S. Transgender Survey,* one district court recognized the heightened harms faced by transgender individuals:

> Statistics regarding the ongoing discrimination transgender individuals face highlight why involuntary disclosure of transgender status creates these risks. For instance, nearly twenty-five percent of surveyed college students, when perceived as a transgender person, were verbally, physically, or sexually assaulted in 2015.

*F.V. v. Barron*, 286 F. Supp. 3d 1131, 1138 (D. Idaho 2018) (citations omitted).

In Los Angeles County, where Children's Hospital and many of its patients are located, anti-transgender crimes are increasing. The number of hate crimes against transgender people in 2023 was "the largest number ever documented," and represented a 125 percent increase from 2022.[2] Of these crimes, "a staggering 97 percent were violent."[3]

Recently, in *Doe v. Noem*, 781 F. Supp. 3d 1055, 1063 (E.D. Cal. 2025), a case involving a suit against the government related to immigration enforcement, the court found that "public shame" and "potential vigilante justice by community members" justified granting anonymity to a plaintiff. In that matter, a student alleged

---

[2] Los Angeles Cnty. Comm'n on Hum. Rel., *2023 LA County Hate Crime Report,* at 8, available at https://hrc.lacounty.gov/stop-violence-2/.
[3] *Id.*

**MEMORANDUM IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM**

unauthorized termination of her student visa and pointed to "evidence regarding surging hate crimes, [and] anti-immigrant messaging from the White House and [the Department of Homeland Security]" as basis for her fear of revealing her identity in litigation. *Id.* at 1063.

Moving Parties face similar risks. To date, the Administration has issued five Executive Orders and one Presidential Proclamation that harm transgender individuals.[4] Every family participating in this litigation has been impacted by this cascade of federal actions accompanied by public hostility towards transgender individuals. Moving Party AA reports that they have deleted social media posts involving their child because of evidence that their family was being stalked in connection with their child's gender identity. They have also experienced incidents of hate and reported them to the police. Ex. 1, Decl. of Parent AA ¶ 24. Other Moving Parties have used pseudonyms when speaking out in public out of fear (Ex. 2, Decl. of Parents BB1 & BB2 ¶ 17), or avoided speaking publicly at all on the subject of transgender children (Ex. 3, Decl. of Parent CC ¶ 10). Moving Party DD fears for their family's safety due to "the extreme and hateful threats from the current Administration [they] see in the news, including executive orders and statements from the President about transgender people and gender-affirming healthcare. I also fear being harmed by hate groups that are advocating against transgender people." Ex. 4, Decl. of Parent DD ¶ 10. Similarly, Moving Party EE states that due to the executive orders and policies declaring gender-affirming care to be "mutilation" and "child abuse," they fear that disclosing their child's medical records would cause the child

---

[4] Exec. Order No. 14168, 90 Fed. Reg. 8615 (Jan. 30, 2025); Exec. Order No. 14183, 90 Fed. Reg. 8757 (Feb. 3, 2025); Exec. Order No. 14187, 90 Fed. Reg. 8771 (Feb. 3, 2025); Exec. Order 14190, 90 Fed. Reg. 8853 (Feb. 3, 2025); Exec. Order No. 14201, 90 Fed. Reg. 9279 (Feb. 11, 2025); Proclamation No. 10911, 90 Fed. Reg. 15203 (Apr. 9, 2025).

**MEMORANDUM IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM**

"severe emotional distress" and expose the child to further bullying and harassment. *See* Ex. 5 in support of Motion to Quash, Declaration of Parent EE (hereinafter, "Ex. 5, Decl. of Parent EE") ¶¶ 11–l2. Moving Parties face additional harm from the fear of the unknown. Moving Party FF has said that because of how the country's political climate is changing, they fear that releasing their child's records or exposing their identity could "have consequences that I don't know about yet." Ex. 6 in support of Motion to Quash, Declaration of Legal Guardian FF (hereinafter, "Ex. 6, Decl. of Legal Guardian FF") ¶ 18.

Moving Parties have already experienced a particularly painful harm: the loss of medical care for their children after the closure of the Center for Transyouth Health at Children's Hospital in the same month the subpoenas were announced. Upon learning DOJ was seeking information not just about transgender children in general but about *their* children, many of the parents experienced great emotional distress: "These fears and threats became tangible when the Department of Justice subpoenaed my family's deeply personal information." Ex. 3, Decl. of Parent CC, ¶ 11. *See also* Ex. 1, Decl. of Parent AA ¶ 17; Ex. 2, Decl. of Parents BB1 & BB2 ¶¶ 11–12; Ex. 3, Decl. of Parent CC ¶¶ 13, 16; Ex. 4, Decl. of Parent DD ¶ 11; Ex. 6, Decl. of Legal Guardian FF ¶ 18. The level of fear has reached an unprecedented heights for many families: "There is a level of fear that we have right now that we thought we would never have to experience in this country and state." Ex. 2, Decl. of Parents BB1 & BB2 ¶ 15. So fearful are parents that some have begun to make plans to leave the country to find safety elsewhere, while others want to have that option but recognize that they do not have the financial means to leave. Ex. 1, Decl. of Parent AA ¶ 18; Ex. 3, Decl. of Parent CC ¶ 15; Ex. 4, Decl. of Parent DD ¶ 18; Ex. 6, Decl. of Legal Guardian FF ¶ 10. Some fear disclosure of their identities to DOJ and the public will prompt federal investigations into their personal lives, removal of their children by child welfare, and doxxing by members of the public. Ex. 2, Decl. of Parents BB1 & BB2 ¶ 14; Ex. 3, Decl. of Parent CC ¶¶ 11–13; Ex. 4, Decl. of Parent DD ¶¶ 12, 14; Ex. 5, Decl. of

1    Parent EE ¶ 13; Ex. 6, Decl. of Legal Guardian FF ¶ 14. Some further fear the

2    government could "round up transgender people … and put them into hospitals," as

3    some lawmakers have suggested should happen.[5] Ex. 2, Decl. of Parents BB1 & BB2

4    ¶ 14.

5           Transgender children, their parents, medical providers, and supporters have

6    become the targets of this Administration and a not-insignificant portion of the public.

7    Moving Parties' fear of harm from the Administration is not speculative. As

8    individuals facing a reasonable fear of severe retaliatory physical or mental harm,

9    Moving Parties are entitled to proceed anonymously in this matter.

10                    **ii. The minor patients targeted by the subpoenas are**

11                        **particularly vulnerable to retaliation and harm.**

12          The Ninth Circuit has recognized that child litigants are especially vulnerable.

13   *Advanced Textile,* 214 F.3d at 1068, citing *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir.

14   1981) (viewing "the youth of these plaintiffs as a significant factor in the matrix of

15   considerations arguing for anonymity"), *accord, Kamehameha Schools*, 596 F.3d at

16   1045. The fact that Moving Parties are the parents of not just children, but transgender

17   children, increases their vulnerability exponentially. Dr. Johanna Olson-Kennedy,

18   former Medical Director at the Center for Transyouth Health at Children's Hospital,

19   explains: "Young people with gender dysphoria have significantly more mental health

20   vulnerabilities than other people their age. These youth have documented higher rates

21   of depression, anxiety, and self-harm, as well as higher rates of suicidality and

22   attempts. They also face more social isolation, school problems, and problems with

23   self-esteem." Ex. 7 in support of Motion to Quash, Declaration of Johanna Olson-

24   Kennedy, M.D., M.S. ¶ 28 (citations omitted).

25

26   _____

27   [5] Erin Reed, *Republican lawmakers Nancy Mace and Ronny Jackson call for

28   transgender people to be institutionalized*, THE ADVOCATE, https://perma.cc/2T4G-
     J8DS.

**MEMORANDUM IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM**

Most of the minors whose parents and guardians are represented in this motion have not widely shared their identity as transgender individuals. Their parents fear what would happen if their identities were exposed, either through the disclosure of their medical records or through this litigation. Ex. 1, Decl. of Parent AA ¶¶ 12, 21; Ex. 3, Decl. of Parent CC ¶ 16.

Moving Parties are concerned about their children's well-being based on past and current experiences with bullying, harassment, and discrimination at school, in their community, and among extended family members, solely because of their gender identity. They have reasonable fears that further disclosure of their families' identities connected to this litigation would expose them to increased risk of physical and mental harm. Their goal is to protect the confidentiality and young lives of their children. As Parent CC stated, "I simply want to honor my kid's right not to disclose who they are to the entire world. They have a right to be a kid. My child did not ask for any of this to be happening." Ex. 3, Decl. of Parent CC ¶ 12.

## 2. Patients' right to informational privacy in "sensitive and highly personal" medical records would be violated should they be required to reveal their identities in this matter.

The Ninth Circuit has repeatedly affirmed a constitutional right to informational privacy, which encompasses medical information. In *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260 (9th Cir. 1998), the court emphasized that medical information is among the most sensitive personal data, implicating privacy interests at the highest level: "The constitutionally protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality." *Id.* at 1269.

Furthermore, the court in *Advanced Textile* found that anonymity may be appropriate when it "is necessary to preserve privacy in a sensitive and highly personal matter." 214 F.3d at 1068 (citation omitted). The Department of Justice stated in a press release that it had sent "more than 20 subpoenas to doctors and clinics

involved in performing transgender medical procedures on children."[6] Several of those subpoenas have been made public in court proceedings elsewhere in the country, and show that the DOJ is seeking the medical records of children who have received gender-affirming care. See Ex. 8 in Support of Motion to Quash, Subpoena to Boston Children's Hospital, *In Re: BCH Subpoena*, No. 1:25-MC-91324-MJJ, Dkt. No. 5-1; and Ex. 9 in Support of Motion to Quash, Subpoena to Children's Hospital of Philadelphia, *In Re: CHOP Subpoena*, 2:25-mc-00039, Dkt. No. 1, pp. 34–59. These records, which include intimate details about the gender identity and mental health of children, are sensitive and highly personal.

All Moving Parties have confirmed that during the time period their children were receiving care from Children's Hospital, they shared with their children's providers sensitive, private information about the children, about themselves as parents, and about their family members. This information included private details about the children's mental health, gender identity, and physical health, as well as sensitive information about family medical histories. Moving Parties shared this information for the purposes of effective treatment of their children, and intended it to be kept private under the standards of medical provider and patient confidentiality. Moving Parties believe all of this information was transcribed into the children's medical records, and would be subject to disclosure under the DOJ subpoena.

DOJ has admitted in other recent litigation that the subpoenas issued "request sensitive health information about children, gender, and sexuality," that the records at stake "do in fact likely contain sensitive information," and "because the information is sensitive—disclosures could cause embarrassment or harm." Government's Memorandum in Opposition to Children's Hospital of Philadelphia's Motion to

---

[6] U.S. Dept. of Justice, *Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children,* July 9, 2025, https://perma.cc/5WA2-XGPF.

**MEMORANDUM IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM**

Modify at 9–10, *In Re: Subpoena No. 25-1431-014*, No. 2:25-mc-00039 (E.D. Pa. July 8, 2025). Unless DOJ substantiates otherwise, the information requested in the subpoena here requests the same sensitive information.

The same opinions that find that medical records are sensitive and implicate privacy protections at the highest level also support allowing Moving Parties to proceed under pseudonyms. By requiring Moving Parties to identify themselves to the public or to the government, the court would necessarily be requiring them to reveal the sensitive and highly personal fact that their child is transgender, and that their child has undergone medical treatment for gender-related conditions.

Further, revealing Moving Parties' identities to either the public or the government would cause the very harm they are trying to prevent: having the highly sensitive and personal fact of their child's transgender status revealed. Moving Parties should not be forced to reveal their identities and violate their own privacy in order to invoke and protect their right to privacy.

For the reasons above, Moving Parties should be permitted to proceed under pseudonyms to protect their children's personal medical information.

### 3. Moving parties must proceed under pseudonyms or risk criminal prosecution.

The Ninth Circuit has acknowledged that anonymity may be warranted when litigants are compelled to admit their intention to engage in illegal conduct. *Advanced Textile*, 214 F.3d at 1068.

The current Administration has defined the procedures recommended by physicians to treat gender-related conditions as "chemical and surgical mutilation," and "child abuse."[7] Both of these acts can lead to criminal penalties under state and federal law. Federal law prohibits performing or conspiring to perform female genital

---

[7] Exec. Order No. 14187, 90 Fed. Reg. 8771 (Feb. 3, 2025); Proclamation No. 10911, 90 Fed. Reg. 15203 (Apr. 9, 2025).

**MEMORANDUM IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM**

mutilation on children, defines child abuse as "the physical or mental injury, sexual abuse or exploitation, or negligent treatment of a child", and provides criminal penalties for such conduct. 18 U.S.C. §§ 116, 3509, 2251. Further, Attorney General Pamela Bondi issued a memorandum to the DOJ on April 22, 2025, directing U.S. Attorneys to investigate certain types of gender-affirming care as felony female genital mutilation, and prosecute under the False Claims Act medical providers who prescribe gender-affirming medications.[8]

By revealing their identity through this litigation, Moving Parties will be necessarily identifying themselves as parents of children who have received—at the direction of or with the permission of their parents—medical care that the Administration now classifies as a crime, thereby subjecting themselves to possible prosecution. And because the administration has targeted gender-affirming care and specifically defined it as "mutilation," and "abuse," Moving Parties reasonably fear they could face prosecution for these acts. Ex. 1, Decl. of Parent AA ¶ 15; Ex. 2, Decl. of Parents BB1 & BB2 ¶ 14; Ex. 3, Decl. of Parent CC ¶ 14; Ex. 4, Decl. of Parent DD ¶ 12; Ex. 5, Decl. of Parent EE ¶ 13.

In order to protect Moving Parties from potential criminal prosecution, the Court should allow them to shield their identities from the Administration and proceed anonymously in this action.

**B. The public's interest in open courts is neither served nor enhanced by requiring Moving Parties to reveal their identities, and allowing them to proceed under pseudonyms may serve the public interest by allowing the case to be decided on the merits.**

The balancing test established by the Ninth Circuit in *Advanced Textile* weighs

---

[8] Memorandum from the Attorney General for Select Component Heads, Preventing the Mutilation of American Children, April. 22, 2025, https://perma.cc/KVF5-CER3.

**MEMORANDUM IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM**

the presumption of public access to judicial proceedings, a need for accountability, and the public's legitimate interest in court proceedings against a party's need for anonymity, and the risk of unfairness to the opposing party. 214 F.3d at 1068. The *Advanced Textile* panel failed to see "how disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case." *Id.* at 1072. The same is true here.

### 1.  Though public interest may be high, it can be served without revealing the identities of Moving Parties.

There has been significant public interest in matters involving transgender rights, and specifically the medical care provided to transgender children. The Administration has issued numerous official documents condemning transgender individuals and the medical care they receive, and representatives from all parts of government have spoken out against transgender rights. In response, at least 27 lawsuits have been filed since Inauguration Day by individuals, organizations, and state governments to try and stop these changes. While the issue generally may be a matter of interest to the public, there is little public interest in knowing the identities of those seeking to protect their privacy rights and the privacy rights of their transgender children in government investigations. The issue can be litigated on its merits without these parents or children exposing themselves to the public, or risking attention from the Administration.

Furthermore, the fact that this matter involves sensitive and highly personal information about children must be considered when evaluating the public interest in knowing the identities of Moving Parties. In cases involving children, courts have acknowledged that anonymity can serve the public interest by enabling the resolution of important legal issues without exposing minors to harm. For example, in a case involving sexual abuse of children by priests, the court noted that protecting the plaintiff's identity would not impair the public's interest in the case but would further the resolution of abuse actions on their merits. *John Doe 140 v. Archdiocese of Portland in Oregon*, 249 F.R.D. 358, 361 (D. Or. 2008). In a more recent California

**MEMORANDUM IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM**

case, the court granted anonymity to a 12-year-old who was lead plaintiff in an action against an online gaming platform for children "to avoid the potential embarrassment associated with being the lead plaintiff in a suit like this." *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1251, n. 1 (N.D. Cal. 2022).

This case is similar: Moving Parties are children and parents attempting to protect the rights of their children. The public has an interest in determining whether or not the government can reach into the medical records of children at will, but has no need to know the identities of those who are attempting to hold the government accountable for this action.

### 2. Moving Parties are unlikely to proceed if they are required to reveal their identities to the government, which would harm the public interest.

The parents and legal guardians bringing this motion are gravely concerned about their and their children's privacy in these matters. The government's service of a subpoena to obtain their children's medical records has already threatened their ability to protect the privacy of their children. These parents and guardians should not be required to further *risk* the privacy of their children in order to *protect* the privacy of their children, and they are understandably hesitant to do so. Therefore, Moving Parties will likely withdraw their participation in this matter if they cannot proceed under pseudonyms. Ex. 1, Decl. of Parent AA ¶ 28; Ex. 2, Decl. of Parents BB1 & BB2 ¶ 25; Ex. 3, Decl. of Parent CC ¶ 23; Ex. 4, Decl. of Parent DD ¶ 23; Ex. 5, Decl. of Parent EE ¶ 20; Ex. 6, Decl. of Legal Guardian FF ¶ 25.

Determining whether or not the government can reach into the private medical records of children at will is a significant issue deserving of public attention, and the public's interest will be best served by allowing Moving Parties to proceed anonymously so the case can be decided on its merits.

///

///

**MEMORANDUM IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM**

**C. The future harm to Moving Parties that will result from revealing their identities outweighs any minor prejudice to the government that may exist and justifies proceeding under pseudonym.**

The action underlying this motion seeks to quash a subpoena impacting thousands of patients who sought gender-affirming care at Children's Hospital. The central question is whether the government has the right to access the private medical information of children for reasons having nothing to do with the care of that child, not whether the information of any *specific* children should be protected. Neither this Court nor the government need to know those identities in considering whether, as a matter of law, the subpoena violates the right to privacy of minor patients and their parents or guardians.

The court in *Advanced Textile* recognized that the balance between a party's need for anonymity and the interests weighing in favor of open judicial proceedings may change as the litigation progresses. "The court must also determine the precise prejudice at each stage of the proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice." 214 F.3d at 1068. The court further provided that in cases where the plaintiffs have demonstrated a need for anonymity, the district court should use its powers to manage pretrial proceedings, and to issue protective orders limiting disclosure of the party's name, to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case.

By filing this litigation, Moving Parties have acknowledged that their children's records are subject to disclosure under the relevant subpoenas. Put another way, they have acknowledged under penalty of perjury that their children received gender-affirming care at Children's Hospital. This is sufficient to establish Moving Parties' credibility. Moving Parties are not, through seeking permission to proceed under pseudonyms, depriving the defense of the opportunity to judge their credibility and standing to bring this action as might be the case in other matters where such

21

1  acknowledgements do not exist.

2      If at some point during the case the Court determines that preserving Moving

3  Parties' anonymity causes prejudice to the government, the Court can then determine

4  whether the proceedings can be structured going forward to mitigate that prejudice.

5  214 F.3d at 1068. But until then, Moving Parties should be permitted to proceed under

6  pseudonyms.

7  **IV.    CONCLUSION**

8      Parents and their children—Moving Parties—risk experiencing severe

9  retaliatory physical or mental harm if their identities are disclosed to the Department

10  of Justice and to the public. These parents and their children require complete

11  anonymity to protect their medical privacy and to prevent incriminating themselves

12  for seeking medical care that the government wants to criminalize. Moving Parties'

13  interest in maintaining their privacy greatly outweighs any public interest in knowing

14  their identities. There is no workaround to this given the Administration's explicit

15  animus against transgender individuals. If Moving Parties are required to reveal their

16  identities in this matter, they will likely not proceed, depriving the public of the ability

17  to see the matter resolved on its merits. For these reasons, the motion to proceed using

18  pseudonym should be granted.

19

20  Dated: November 21, 2025              WESTERN CENTER ON LAW & POVERTY

21                                        LAWYERS FOR GOOD GOVERNMENT
                                          IMPACT FUND
22

23                                        /s/ Joy Dockter

24                                        _____

25                                        Joy Dockter
                                          *Attorneys for Moving Parties*
26

27

28

**MEMORANDUM IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM**

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Moving Parties, certifies that this brief contains 4,844 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 21, 2025

WESTERN CENTER ON LAW & POVERTY
LAWYERS FOR GOOD GOVERNMENT
IMPACT FUND

/s/ Joy Dockter

_____

Joy Dockter
*Attorneys for Moving Parties*

**MEMORANDUM IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM**