**WESTERN CENTER ON LAW & POVERTY**
Helen Tran, SBN 290731
Email: htran@wclp.org
David Kane, SBN 292186
Email: dkane@wclp.org
Joy Dockter, SBN 275196
Email: jdockter@wclp.org
Robert Newman, SBN 86534
Email: rnewman@wclp.org
3701 Wilshire Blvd., Suite 208
Los Angeles, CA 90010
Telephone: (213) 487-7211
Fax: (213) 487-0242

(Additional counsel on following page)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re 2025 Children's Hospital of Los Angeles Subpoena | Case No.: 25-11183<br><br>CLASS ACTION<br><br>**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL** |

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

**LAWYERS FOR GOOD GOVERNMENT**
Amy E. Powell, NC SBN 50300*
Email: amy@lawyersforgoodgovernment.org
Khadijah M. Silver, NY SBN 5473558*
Email: khadijah@lawyersforgoodgovernment.org
Alyssa F. Morrison, TX SBN 24110135*
Email: amorrison@lawyersforgoodgovernment.org
1319 F St. NW Ste 301
PMB 181
Washington, DC 20004

**IMPACT FUND**
Lori Rifkin, SBN 244081
Email: lrifkin@impactfund.org
Fawn Rajbhandari-Korr, SBN 315888
Email: fkorr@impactfund.org
Meredith Dixon, SBN 346864
Email: mdixon@impactfund.org
Megan Flynn, SBN 359394
Email: mflynn@impactfund.org
2080 Addison St., Suite 5
Berkeley, CA 94704
Telephone: (510) 845-3473
Fax: (510) 845-3654

*Attorneys for Moving Parties*

*Pro hac vice application forthcoming*

2

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND
APPOINTMENT OF CLASS COUNSEL**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................ 9

II. FACTS SUPPORTING CLASS CERTIFICATION ............................................ 10

    A. Children's Hospital Los Angeles long provided medically necessary gender-affirming care. ................................................................... 10

    B. The Administration has launched attacks on transgender people. .................. 12

    C. The subpoena demands children's confidential medical records and other private information. ................................................................ 13

    D. Proposed class representatives are parents and guardians of minor patients whose private medical information is sought by the Subpoena. ...................... 16

III. CLASS CERTIFICATION IS NOT A NECESSARY PREREQUISITE TO QUASHING THE SUBPOENA ............................................................. 17

IV. LEGAL STANDARD AND PROPOSED CLASS DEFINITION ...................... 18

    A. Class Certification Standard ................................................................ 18

    B. Proposed Class Definition ................................................................. 19

V. ARGUMENT ................................................................................... 20

    A. Class certification is appropriate because movants satisfy rule 23(a)............. 20

    B. The proposed class is sufficiently numerous. ...................................... 20

    C. There are questions of law or fact common to the proposed class................. 21

    D. Proposed class representatives are typical of the proposed class................... 22

    E. Proposed class representatives and proposed class counsel are adequate representatives. ............................................................................. 24

    F. The proposed class meets the standard for Rule 23(b)(2) certification. .......... 25

VI. THE COURT SHOULD APPOINT ATTORNEYS FROM WESTERN CENTER ON LAW AND POVERTY, LAWYERS FOR GOOD GOVERNMENT, AND IMPACT FUND AS CLASS COUNSEL UNDER RULE 23(G). ........................... 26

3

VII. CONCLUSION ................................................................................. 28

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND
APPOINTMENT OF CLASS COUNSEL**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) ........................................................................ 21, 23

*Carrillo v. Schneider Logistics, Inc.*,
  No. CV-11-8557 CAS DTBX, 2012 WL 556309 (C.D. Cal. Jan. 31, 2012).......... 18

*CASA, Inc. v. Trump*,
  No. DLB-25-201, 2025 WL 2263001 (D. Md. Aug. 7, 2025) ............................... 25

*Coley v. Clinton*,
  635 F.2d 1364 (8th Cir. 1980) ...................................................................... 25, 26

*Davids v. Adams*,
  No. 1:25-CV-00334-AKB, 2025 WL 2083832 (D. Idaho July 24, 2025) ............. 25

*Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*,
  239 F.R.D. 9 (D.D.C. 2006) ............................................................................. 21

*Doe v. U.S. Immigr. & Customs Enf't*,
  No. 1:23-CV-00971-MLG-JMR, 2024 WL 4389461 (D.N.M. Oct. 3, 2024) ........ 25

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ................................................................ 18, 19, 21

*In re Admin. Subpoena No. 25-1431-019*,,
  No. 1:25-MC-91324-MJJ, 2025 WL 2607784 (D. Mass. Sept. 9, 2025)............... 14

*In re Banc of California Sec. Litig.*,
  326 F.R.D. 640 (C.D. Cal. 2018)....................................................................... 20

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
  No. CV 11-2768 PSG SSX, 2013 WL 5789237 (C.D. Cal. Oct. 25, 2013) ........... 20

*In re Subpoena of Internet Subscribers of Cox Commc'ns, LLC*,
  148 F.4th 1056 (9th Cir. 2025)......................................................................... 18

*Leyva v. Medline Indus., Inc.*,
  716 F.3d 510 (9th Cir. 2013)............................................................................ 18

*Meyer v. Portfolio Recovery Assocs., LLC*,
  707 F.3d 1036 (9th Cir. 2012)........................................................................... 18

*Nghiem v. Dick's Sporting Goods, Inc.*,
  318 F.R.D. 375 (C.D. Cal. 2016)....................................................................... 20

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................................ 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND
APPOINTMENT OF CLASS COUNSEL**

*Parsons v. Ryan,*
    754 F.3d 657 (9th Cir. 2014) .................................................................. 23, 26

*Peters v. United States,*
    853 F.2d 692 (9th Cir. 1988) .................................................................. 17, 18

*Petersen v. Costco Wholesale Co.,*
    312 F.R.D. 565 (C.D. Cal. 2016) ................................................................... 23

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
    559 U.S. 393 (2010) ......................................................................................... 19

*Staton v. Boeing Corp.,*
    327 F.3d 938 (9th Cir. 2003) ......................................................................... 24

*Wal-Mart Stores, Inc., v. Dukes,*
    564 U.S. 338 (2011) .......................................................................... 19, 21, 26

**Statutes**

Cal. Bus. & Prof. Code §§ 850.1, 852 ........................................................... 11
Cal. Civ. Code § 56.101 ....................................................................................... 11
Cal. Civ. Code § 1798.301-302 ......................................................................... 11
Cal. Civ. Code §§ 56–56.37, 56.108, 56.109 ................................................ 11
Cal. Civ. Proc. Code §§ 2029.300(e), 2029.350(b) ..................................... 11
Cal. Gov't Code § 12926 ..................................................................................... 11
Cal. Health & Safety Code § 1367.21 .............................................................. 11
Cal. Ins. Code § 10144.5 ..................................................................................... 11
Cal. Penal Code §§ 819(b), 847.5, 13778.3 .................................................. 11

**Rules**

Federal Rule of Civil Procedure 23(a)(1) ..................................................... 20
Federal Rule of Civil Procedure 23(a)(3) ..................................................... 23
Federal Rule of Civil Procedure 23(a)(4) ..................................................... 24
Federal Rule of Civil Procedure 23(c)(1)(B) ............................................... 19
Federal Rule of Civil Procedure 23(a) ............................................. 18, 19, 20
Federal Rule of Civil Procedure 23(b) ................................................... 10, 18
Federal Rule of Civil Procedure 23 ................................................................ 19
Federal Rule of Civil Procedure 23(a)(2) ..................................................... 21
Federal Rule of Civil Procedure 23(b)(2) .............................................. passim
Federal Rule of Civil Procedure 23(G) ......................................................... 26

**Regulations**

Cal. Code Regs. tit. 10, § 2561.2 ...................................................................... 11

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND
APPOINTMENT OF CLASS COUNSEL**

## Other Authorities

Sam Levin, *Trans Youth Fight for Care as California Clinics Cave to Trump: "How Can This Happen Here?"*, The Guardian (July 11, 2025), perma.cc/Q7GG-4WCD .................................................................................................. 11

Every major medical association and leading global health authority supports gender-affirming healthcare for transgender youth. *See* GLAAD, Medical Association Statements in Support of Health Care for Transgender People and Youth, perma.cc/824G-K22J ................................................................................ 11

Attorney General Bonta Reminds Hospitals and Clinics of Anti-Discrimination Laws, Cal. Dep't of Justice (Feb. 5, 2025) perma.cc/PFY6-LGC3 ................................... 11

White House, President Trump Promised to End Child Sexual Mutilation — and He Delivered (July 25, 2025), perma.cc/GQ7F-9FNV ................................................. 12

Exec. Ord. 14183, 90 Fed. Reg. 8757 (Jan. 27, 2025), available at perma.cc/Q67Y-ZRZD ................................................................................................................ 12

Exec. Ord. 14168, 90 Fed. Reg. 8615, (Jan. 20, 2025), available at perma.cc/73J7-Q8WS ................................................................................................................ 12

Victoria Ivie, *As Children's Hospital LA Closes Its Gender-Affirming Care Center, Advocates Worry Kids' Lives Are 'on the Line,'* Los Angeles Daily News (July 15, 2025) perma.cc/E6LV-ZUZ8 ................................................................. 12

Abby Monteil, *Children's Hospital Los Angeles Will Stop Providing Gender-Affirming Care to Trans Youth*, Them (June 13, 2025), perma.cc/2WC4-H6M7 ... 12

Lindsey Dawson & Jennifer Kates, *Overview of President Trump's Executive Actions Impacting LGBTQ+ Health*, KFF (Sept. 25, 2025), https://perma.cc/27YN-7WPW .................................................................................................................. 12

Exec. Ord. 14187, 90 Fed. Reg. 8771 (Jan. 28, 2025), available at perma.cc/FVQ9-T5JW ................................................................................................................ 12

Mem. for Select Component Heads (Apr. 22, 2025), https://perma.cc/4UVP-P3WF ("April 2025 AG Memo") ................................................................................ 13

Ass't Att'y Gen., Mem re: Civil Div. Enforcement Priorities, at 2-3 (June 11, 2025), available at perma.cc/V9V9-U34B ("June 2025 AAG Memo") ............................ 13

DOJ Press Release (July 9, 2025), available at perma.cc/5WA2-XGPF ................... 14

S. Baum, *Reported FBI Probe Targets Trans-Affirming Care Providers — For Procedure They Don't Do*, Erin In The Morning (June 30, 2025), perma.cc/2UW5-V3VT ................................................................................................................ 14

Alec Schemmel, *FBI Launches Probes Into 3 Children's Hospitals for Alleged Genital Mutilation of Minors*, Fox News (June 24, 2025), perma.cc/6CAH-6CH6 ............................................................................................................ 14-15

Sonja Sharp, *Children's Hospital Los Angeles halts transgender care under pressure from Trump*, Los Angeles Times (June 12, 2025), https://perma.cc/L7DY-PRE9 .. 20

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

Lauren Pozen, *Dozens protest Children's Hospital LA decision to end gender-affirming care*, CBS News (June 26, 2025), https://perma.cc/U398-WUCV ......... 21

Nico Lang, *Children's Hospital LA shuts down trans youth clinic, leaving families scrambling*, LA Public Press (June 13, 2025), https://perma.cc/B65L-33U7 .... 20-21

Megan Jamerson, *CHLA Transyouth Center closes — 3,000 families seek care elsewhere*, KCRW (July 23, 2025), https://perma.cc/5AVG-UDTJ ....................... 21

*AMA Adopts New Policies on First Day of Voting at 2019 Annual Meeting*, AM. MED. ASS'N (June 10, 2019), https://perma.cc/T97S-S9LS ................................ 23

*Transgender people over four times more likely than cisgender people to be victims of violent crime*, UCLA School of Law Williams Institute (March 2023, 2021), https://perma.cc/9V73-RY6C3) ................................................................... 23

*Disparities in School Connectedness, Unstable Housing, Experiences of Violence, Mental Health, and Suicidal Thoughts and Behaviors Among Transgender and Cisgender High School Students — Youth Risk Behavior Survey, United States, 2023*, Center for Disease Control and Prevention (October 10, 2024), https://perma.cc/36NN-NEFT ............................................................... 23

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

## I.    INTRODUCTION

As described in the accompanying Motion to Quash, the U.S. Department of Justice ("DOJ") has launched an unprecedented and illegal attempt to subpoena confidential medical records of youth who sought or received gender-affirming care at more than twenty medical institutions nationwide, including Children's Hospital Los Angeles ("Children's Hospital"). Children's Hospital is one of the nation's leading pediatric hospitals and, for more than three decades, provided essential, evidence-based medical care to adolescents needing gender-affirming care through the Children's Hospital's Transyouth Center ("the Center"). In the course of receiving that medically necessary care, thousands of young people and their families entrusted Children's Hospital with their most intimate and private information.

DOJ has publicly announced that its subpoenas are part of the Trump Administration's campaign to dismantle protections for transgender people, intimidate the transgender community and the medical providers treating them, and eliminate access to gender-affirming care. On information and belief, the subpoena served on Children's Hospital demands sweeping disclosures of protected medical records for thousands of patients who sought or received "gender-related care"[1] over the past five years. The disclosure of such records poses grave and even life-threatening risks of stigma, harassment, discrimination, and violence to the young people and their parents and guardians whose records are being subpoenaed.

Six parents and guardians of minor patients of the Center now move to quash those portions of the DOJ Subpoena (the "Subpoena") to Children's Hospital that request production of their health records and other personally identifying information. In addition to moving to quash, pursuant to Federal Rule of Civil

---

[1] "Gender-related care" is the term used in the Subpoena, and therefore the term Moving Parties use in their proposed definition for the class, *infra* Section IV.B. However, generally in describing this category of medical treatment, Moving Parties will be using the preferred term "gender-affirming care."

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

Procedure 23(b), Moving Parties seek to certify a class of patients who sought or received gender-related care at Children's Hospital and their parents and guardians. The members of the proposed Rule 23(b)(2) class have the same or substantially similar informational privacy interests; disclosure of their records in response to the Subpoena threatens the same or substantially similar type of injury; and the legal questions raised by the Subpoena—whether the Subpoena violates their privacy rights, exceeds DOJ's statutory authority, and was issued for an improper purpose—are the same for all proposed class members, making resolution of this issue on a class-wide basis appropriate.

Although the Court has the authority to quash the Subpoena requests as to all patients at Children's Hospital without certifying a class, Moving Parties concurrently file this motion for class certification in an abundance of caution. Because Moving Parties' motion to quash challenges an action by DOJ that applies generally to the proposed class and Moving Parties seek final injunctive relief or corresponding declaratory relief applicable to the class as a whole, this case presents an appropriate use of the class action mechanism. The Court should therefore grant this motion for class certification and appoint Moving Parties as class representatives and Moving Parties' attorneys as class counsel.

## II.    FACTS SUPPORTING CLASS CERTIFICATION

### A. Children's Hospital Los Angeles long provided medically necessary gender-affirming care.

Children's Hospital is a nonprofit medical center recognized as one of the country's best children's hospitals.[2] Children's Hospital provided gender-affirming

---

[2] *Children's Hospital Los Angeles Recognized Among Nation's Top 10 Children's Hospitals 17 Years in a Row*, Children's Hospital (Oct. 7, 2025), perma.cc/PXV9-SVBT.

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

care services to youth for three decades until closing the Center in July 2025.[3] These included medical services consistent with the internationally-accepted standard of care, including counseling, puberty blockers, hormone replacement therapy, and gender-affirming surgeries.[4] *See* Ex. 7 in Support of Motion to Quash, Declaration of Johanna Olson-Kennedy, M.D., M.S. (hereinafter "Ex. 7, Decl. of Olson-Kennedy") ¶¶ 5, 19. Providing this care required comprehensive medical assessments addressing areas such as mental health, gender identity, sexuality, and reproductive health. *See id.* ¶ 24–25.

California law expressly protects provision of and access to gender-affirming care as "rights secured by the Constitution and laws of California" and provides that any "interference with these rights, whether or not under the color of law, is against the public policy of California." Cal. Civ. Code § 1798.301-302. To uphold these protections, California has enacted multiple statutes safeguarding both patients and providers involved in these "sensitive services." *See, e.g.*, Cal. Civ. Code §§ 56–56.37, 56.108, 56.109.[5] State anti-discrimination laws also prohibit health insurance discrimination based on gender identity *see* Cal. Gov't Code § 12926; Cal. Ins. Code § 10144.5; Cal. Health & Safety Code § 1367.21; Cal. Code Regs. tit. 10, § 2561.2, and obligates hospitals and clinics to provide gender-affirming care.[6]

Despite these state protections, in June, just one day after DOJ announced its

---

[3] Sam Levin, *Trans Youth Fight for Care as California Clinics Cave to Trump: "How Can This Happen Here?"*, The Guardian (July 11, 2025), perma.cc/Q7GG-4WCD.
[4] Every major medical association and leading global health authority supports gender-affirming healthcare for transgender youth. *See* GLAAD, Medical Association Statements in Support of Health Care for Transgender People and Youth, perma.cc/824G-K22J.
[5] *See also* Cal. Civ. Code § 56.101; Cal. Civ. Proc. Code §§ 2029.300(e), 2029.350(b); Cal. Penal Code §§ 819(b), 847.5, 13778.3; Cal. Bus. & Prof. Code §§ 850.1, 852.
[6] Attorney General Bonta Reminds Hospitals and Clinics of Anti-Discrimination Laws, Cal. Dep't of Justice (Feb. 5, 2025) perma.cc/PFY6-LGC3.

11

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

current investigation, Children's Hospital announced plans to close the Center, citing recent Executive Branch actions.[7] The White House publicly celebrated the Center's closure. *See* White House, President Trump Promised to End Child Sexual Mutilation — and He Delivered (July 25, 2025), perma.cc/GQ7F-9FNV.

**B. The Administration has launched attacks on transgender people.**

The Trump Administration is implementing a comprehensive strategy to drive transgender people out of public society, attacking their dignity, legitimacy and character, including through statements that transgender people are not capable of living an "honorable, truthful, and disciplined lifestyle." *See, e.g.,* Exec. Ord. 14183, 90 Fed. Reg. 8757 (Jan. 27, 2025), available at perma.cc/Q67Y-ZRZD. The Administration's actions display raw animus and a focused intent to eliminate young people's access to gender-affirming medical care.[8]

Executive Order 14168 declared: "[i]t is the policy of the United States to recognize two sexes, male and female. These sexes are not changeable and are grounded in fundamental and incontrovertible reality." *See* "Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," Exec. Ord. 14168, 90 Fed. Reg. 8615, (Jan. 20, 2025), available at perma.cc/73J7-Q8WS. Executive Order 14187 characterized "gender affirming care" as "chemical and surgical mutilation," instructed the Attorney General to investigate such care, and made explicit its aim to "end" gender-affirming care. *See* "Protecting Children From Chemical and Surgical Mutilation," Exec. Ord. 14187, 90 Fed. Reg.

---

[7] Victoria Ivie, *As Children's Hospital LA Closes Its Gender-Affirming Care Center, Advocates Worry Kids' Lives Are 'on the Line,'* Los Angeles Daily News (July 15, 2025) perma.cc/E6LV-ZUZ8; Abby Monteil, *Children's Hospital Los Angeles Will Stop Providing Gender-Affirming Care to Trans Youth*, Them (June 13, 2025), perma.cc/2WC4-H6M7.

[8] Lindsey Dawson & Jennifer Kates, *Overview of President Trump's Executive Actions Impacting LGBTQ+ Health*, KFF (Sept. 25, 2025), https://perma.cc/27YN-7WPW.

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

8771 (Jan. 28, 2025), available at perma.cc/FVQ9-T5JW.

The Attorney General similarly issued a Memorandum titled "Preventing the Mutilation of American Children." Mem. for Select Component Heads (Apr. 22, 2025), https://perma.cc/4UVP-P3WF ("April 2025 AG Memo"), instructing "all U.S. Attorneys to investigate all suspected cases of [female genital mutilation ("FGM")]— under the banner of so-called 'gender-affirming care' or otherwise—and to prosecute all FGM offenses to the fullest extent possible." *Id*. at 3-4.

The April 2025 AG Memo also ordered DOJ components to investigate "any violations of the Food, Drug, and Cosmetic Act ['FDCA'] by manufacturers and distributors engaged in misbranding by making false claims about the on- or off-label use of puberty blockers, sex hormones, or any other drug used to facilitate a child's so-called 'gender transition'" as well as "investigations under the False Claims Act of false claims submitted to federal health care programs for any noncovered services related to radical gender experimentation." *Id*. at 4. The April 2025 AG Memo candidly stated the purpose of those investigations—to bring "an end" to the practice of gender-affirming care. *Id*. at 6. The April 2025 AG Memo further stated that DOJ would "partner with state attorneys general to identify leads, share intelligence, and build cases against hospitals and practitioners violating federal or state laws banning female genital mutilation and other, related practices." *Id*. at 5.

**C. The Subpoena demands children's confidential medical records and other private information.**

On June 11, 2025, DOJ announced that the agency would use "all available resources to prioritize investigations of doctors, hospitals, pharmaceutical companies, and other appropriate entities." *See* Ass't Att'y Gen., Mem re: Civil Div. Enforcement Priorities, at 2-3 (June 11, 2025), available at perma.cc/V9V9-U34B ("June 2025 AAG Memo"). In accordance with those priorities, DOJ announced issuance of "more than 20 subpoenas to doctors and clinics involved in performing transgender medical procedures on children," and the Attorney General warned that

13

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

1
2
3

"[m]edical professionals and organizations that mutilated children in the service of a warped ideology will be held accountable[.]" DOJ Press Release (July 9, 2025), available at perma.cc/5WA2-XGPF.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

Although DOJ did not make its subpoenas public or identify their recipients, at least two substantively identical subpoenas have been made public in court records via legal challenges by healthcare institutions and patient groups. On September 9, 2025, the district court in Massachusetts quashed the subpoena that was issued to Boston Children's Hospital, finding it was "motivated only by bad faith." *See In re Admin. Subpoena No. 25-1431-019*, No. 1:25-MC-91324-MJJ, 2025 WL 2607784, at *7 (D. Mass. Sept. 9, 2025) ("*In Re: BCH Subpoena*"). The District Court for the Eastern District of Pennsylvania is hearing motions from both Children's Hospital of Philadelphia ("CHOP") and a group of its patients. *See In Re: Admin. Subpoena No. 25-1431-014*, No. 2:25-mc-00039 (E.D. Pa.) ("*In Re CHOP Subpoena*") (hospital's case); *In Re: Admin. Subpoena No. 25-1431-014*, No. 2:25-mc-00054 (E.D. Pa.) (patients' case). The district court has stayed any obligation to comply with the subpoena, pending briefing. *See* Ex. 13 in Support of Motion to Quash, Order, *In Re CHOP Subpoena*, Dkt. No. 4. Additionally, although no subpoena has been made public in the case, patients of University of Pittsburgh Medical Center ("UPMC") have moved to quash a subpoena to UPMC, and their motion is pending. *See In Re 2025 UPMC Subpoena*, 2:25-mc-01069 (W.D. Pa.).[9]

21
22

Media reporting and information shared with Moving Parties confirms that Children's Hospital was among the subpoenaed institutions.[10] Although the Subpoena

23
24
25
26
27
28

---

[9] DOJ has filed declarations in these cases explaining the nature of the investigation in general. *See, e.g.,* Ex. 11 in Support of Motion to Quash, Decl. of Lisa Hsiao, *In Re 2025 UPMC Subpoena*, 2:25-mc-01069, Dkt. No. 27-1.

[10] *See* S. Baum, *Reported FBI Probe Targets Trans-Affirming Care Providers — For Procedure They Don't Do*, Erin In The Morning (June 30, 2025), perma.cc/2UW5-V3VT; Alec Schemmel, *FBI Launches Probes Into 3 Children's Hospitals for*

14

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

itself has not been made public, the Department of Justice has confirmed that it is identical to those sent to Boston Children's Hospital and Children's Hospital of Philadelphia. *See* Ex. 14 in Support of Motion to Quash (Declaration of Helen Tran) (hereinafter "Ex. 14, Decl. of Helen Tran") ¶ 13, 16.[11] The Subpoena seeks an extensive range of sensitive patient records and related information, including:

> Request 11: "Documents sufficient to identify each patient (by name, date of birth, social security number, address, and parent/guardian information) who was prescribed puberty blockers or hormone therapy."

> Request 12: "For each such patient identified in Subpoena [Request 11], documents relating to the clinical indications, diagnoses, or assessments that formed the basis for prescribing puberty blockers or hormone therapy."

> Request 13: "All documents relating to informed consent, patient intake, and parent or guardian authorization for minor patients identified in [Request 11], including any disclosures about off-label use (i.e., uses not approved by the United States Food and Drug Administration) and potential risks."

*See* Exs. 8 & 9 in Support of Motion to Quash. Other requests in the Subpoena likely include patient-identifying information for a group of patients far broader than those who received puberty blockers or hormone therapy. *See, e.g., id*. at Request 2 (seeking "documents, including billing records, insurance claims, internal protocols, or guidance, concerning the use of . . . diagnosis codes in connection with the treatment of minor patients receiving gender-related care"); Request 3 (seeking "documents that . . . relate to any use of diagnosis codes for minors other than those specifically identifying transsexualism, gender dysphoria, gender incongruence, or gender identity disorder"); Request 4 (seeking "communications with public or

---

*Alleged Genital Mutilation of Minors*, Fox News (June 24, 2025), perma.cc/6CAH-6CH6. As set forth further below, Moving Parties have diligently inquired about the subpoena and received no official confirmation

[11] Ex. 8 in Support of Motion to Quash, Subpoena to Boston Children's Hospital, *In Re: BCH Subpoena,* No. 1:25-MC-91324-MJJ, Dkt. No. 5-1; Ex. 9 in Support of Motion to Quash, Subpoena to Children's Hospital of Philadelphia, *In Re: CHOP Subpoena,* 2:25-mc-00039, Dkt. No. 2-5.

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

private health care benefit programs or plans regarding the use of ICD codes for gender-related care"); Request 15 (seeking "documents relating to any adverse event, side effect, or medically unfavorably consequence or outcome in a minor patient with regard to gender-related care"). The "Relevant Time Period" for documents to be produced pursuant to the Subpoena is January 1, 2020, through the present. *Id*. at 36.

Neither DOJ nor Children's Hospital informed any of the affected Moving Parties or putative class members about the Subpoena or sought consent for the release of their private information. *See, e.g.,* Ex. 6 in Support of Motion to Quash (Declaration of Legal Guardian FF) (hereinafter "Ex. 6, Decl. of FF") ¶ 21. DOJ recently confirmed the existence of the Subpoena, stating Children's Hospital has not provided patient records because the hospital claims that it lacks control over such records, although Children's Hospital is processing other responsive documents. DOJ confirmed that the Subpoena is still outstanding and, although they have not moved to enforce it yet, could do so at any time. *See* Ex. 14, Decl. of Helen Tran ¶¶ 13, 17, 18, 25, 28.

**D. Proposed class representatives are parents and guardians of minor patients whose private medical information is sought by the Subpoena.**

The proposed class representatives are:

- Parent AA, on behalf of themselves and their minor child
- Parents BB1 and BB2, on behalf of themselves and their minor child
- Parent CC, on behalf of themselves and their minor child
- Parent DD, on behalf of themselves and their minor child
- Parent EE, on behalf of themselves and their minor child
- Legal Guardian FF, on behalf of themselves and their minor child

AA, BB, CC, DD, EE, and FF children are under age 18. Ex. 1 in Support of Motion to Quash (Declaration of Parent AA) (hereinafter "Ex. 1, Decl. of AA") ¶ 1, Ex. 2 in Support of Motion to Quash (Declaration of Parents BB1 and BB2) (hereinafter "Ex. 2, Decl. of BB1 and BB2") ¶ 1, Ex. 3 in Support of Motion to

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

Quash (Declaration of Parent CC) (hereinafter "Ex. 3, Decl. of CC") ¶ 1, Ex. 4 in Support of Motion to Quash (Declaration of Parent DD) (hereinafter "Ex. 4, Decl. of DD") ¶1, Ex. 5 in Support of Motion to Quash (Declaration of Parent EE) (hereinafter "Ex. 5, Decl. of EE") ¶1, Decl. of FF ¶ 1. AA, BB, CC, and DD, and their families reside in Los Angeles County, Decl. of AA ¶ 3; Decl. of BB ¶ 3; Decl. of CC ¶ 3; Decl. of DD ¶ 3; EE and their family reside in Santa Barbara County, Decl. of EE ¶ 3; FF and their family reside in Ventura County, Decl. of FF ¶ 3.

AA, BB, CC, DD, EE, and FF all sought and received gender-affirming care at Children's Hospital's Transyouth Center between January 1, 2020, and July 22, 2025. Ex. 1, Decl. of AA ¶¶ 1, 9; Ex. 2, Decl. of BB1 and BB2 ¶¶ 1, 5; Ex. 3, Decl. of CC ¶¶ 1, 8; Ex. 4, Decl. of DD ¶¶ 1, 8; Ex. 5, Decl. of EE ¶¶ 1, 9; Ex. 6, Decl. of FF ¶¶ 1, 5. Throughout the course of this care, the minor patients and their parents and guardians disclosed private and sensitive information to Children's Hospital about the patients' mental, physical, and sexual health, gender identity, and school relationships; about parents' and guardians' occupations, financial situations, and medical histories; and about other family members and friends. Ex. 1, Decl. of AA ¶ 6; Ex. 2, Decl. of BB1 and BB2 ¶ 7; Ex. 3, Decl. of CC ¶¶ 6, 18; Ex. 4, Decl. of DD ¶ 6; Ex. 5, Decl. of EE ¶ 6; Ex. 6, Decl. of FF ¶¶ 7, 19. These records are all subject to the Subpoena, and Moving Parties and their children do not want their private medical information disclosed to DOJ. Ex. 1, Decl. of AA ¶ 17; Ex. 2, Decl. of BB1 and BB2 ¶¶ 4, 11; Ex. 3, Decl. of CC ¶¶ 4, 11; Ex. 4, Decl. of DD ¶¶ 4, 11; Ex. 5, Decl. of EE ¶ 4; Ex. 6, Decl. of FF ¶ 4.

## III.    CLASS CERTIFICATION IS NOT A NECESSARY PREREQUISITE TO QUASHING THE SUBPOENA

As an initial matter, the Court need not certify a class to grant the equivalent of class-wide relief in connection with Moving Parties' request to quash the Subpoena. Because Moving Parties' motion to quash is based on a legal determination that applies to all patients and parents and guardians of minor patients who are subjects of

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

the information requested in the Subpoena, the Court could quash those subpoena requests generally. *See, e.g., Peters v. United States*, 853 F.2d 692, 695 (9th Cir. 1988) (quashing a "general group subpoena [by the Immigration and Naturalization Service] against unidentified individuals in an unspecified criminal investigation," protecting all individuals whose records were sought); *In re Subpoena of Internet Subscribers of Cox Commc'ns, LLC*, 148 F.4th 1056, 1058-59 (9th Cir. 2025) (quashing subpoena issued by an internet service provider as to records of all subscribers targeted, not just the subscriber who objected).

If, however, the Court determines that class certification is necessary to grant class-wide relief, then Moving Parties request that it rule on this class certification motion in conjunction with the motion to quash, as courts in this Circuit have often done with motions for time-sensitive relief. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (holding district court did not abuse its discretion by provisionally certifying class for purpose of entering preliminary injunction); *see also, e.g., Carrillo v. Schneider Logistics, Inc.*, No. CV-11-8557 CAS DTBX, 2012 WL 556309, at *9 (C.D. Cal. Jan. 31, 2012), aff'd, 501 F. App'x 713 (9th Cir. 2012) ("courts routinely grant provisional class certification for purposes of entering injunctive relief.").

## IV. LEGAL STANDARD AND PROPOSED CLASS DEFINITION

### A. Class Certification Standard

Federal Rule of Civil Procedure 23(a) requires parties seeking class certification to establish: (1) numerosity; (2) commonality of law or fact; (3) typicality between the class claims and those of the named parties; and (4) adequacy of representation by the named parties and class counsel. Fed. R. Civ. P. 23(a); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). The proposed class must also satisfy one of the subsections of Rule 23(b), "which defines three different types of classes." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Because Moving Parties seek class certification pursuant to Rule

18

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND
APPOINTMENT OF CLASS COUNSEL**

23(b)(2), they must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs who satisfy these prerequisites have a "categorical" right to "pursue [their] claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).

Courts should conduct a "rigorous analysis" to determine whether Rule 23 has been satisfied, which may "entail some overlap with the merits" of the underlying claim. *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 350-51 (2011). However, as the Ninth Circuit stated in *Ellis*, the district court needs to "examine the merits . . . only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims. . . . To hold otherwise would turn class certification into a mini-trial." 657 F.3d at 983 n.8.

If a district court determines that a proposed class action satisfies the requirements of Rule 23, it must issue an order that defines "the class and the class claims, issues, or defenses" and appoints class counsel. Fed. R. Civ. P. 23(c)(1)(B).

**B. Proposed Class Definition**

Moving Parties propose to certify a class under Rule 23(b)(2) as follows:

*All people, and parents/guardians of minors, who sought and/or received "gender-related care" at Children's Hospital Los Angeles from January 1, 2020, to the present.*

As defined by DOJ in the subpoenas issued to Boston Children's Hospital and the Children's Hospital of Philadelphia, "gender-related care" means "any medical, surgical, psychological, or social treatment provided to individuals to alter their physical appearance or social presentation to resemble characteristics typically associated with the opposite biological sex."

///

///

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

## V.    ARGUMENT

### A. Class certification is appropriate because Moving Parties satisfy Rule 23(a).

As set forth in detail below, the proposed class and proposed class representatives easily satisfy all of Rule 23(a)'s requirements: (1) members of the proposed class are so numerous that joinder of all class members is impracticable; (2) members of the proposed class share common questions of law or fact; (3) claims of proposed class representatives are typical of the proposed class; and (4B.) proposed class representatives and their counsel will vigorously protect the interests of the proposed class and do not have any interest antagonistic to, or in conflict with, the interests of the class members they seek to represent.

### B. The proposed class is sufficiently numerous.

Numerosity is met when the proposed class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Class certification does not require "establish[ing] the precise number of class members, as long as common sense and reasonable inferences from the available facts show that the numerosity requirement is met." *Nghiem v. Dick's Sporting Goods, Inc.*, 318 F.R.D. 375, 380 (C.D. Cal. 2016) (citing *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, No. CV 11-2768 PSG SSX, 2013 WL 5789237, at *3 (C.D. Cal. Oct. 25, 2013)). A class of at least forty members will presumptively meet this requirement. *In re Banc of California Sec. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018) (citing 1 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 3:12 (5th ed.)).

The Center provided gender-affirming care, including "puberty blockers, hormones, and surgical procedures" to youth until it closed shortly after receiving the Subpoena.[12] According to numerous media outlets, the Center served approximately

---

[12] Sonja Sharp, *Children's Hospital Los Angeles halts transgender care under pressure from Trump*, Los Angeles Times (June 12, 2025), https://perma.cc/L7DY-PRE9.

20

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

3,000 patient families at the time of its closure in July 2025.[13] The proposed class includes all patients at the Center from January 1, 2020, until the Center's closure, making the class even larger. Numerosity is satisfied.

**C. There are questions of law or fact common to the proposed class.**

Moving Parties satisfy the commonality requirement of Rule 23(a)(2) because there are questions of law or fact common to the proposed class. Just one common question is sufficient for commonality, provided that the "determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Wal-Mart Stores*, 564 U.S. at 350. Rule 23(a)(2)'s commonality standard is "construed permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule." *Ellis*, 657 F.3d at 981. "[P]roposed class actions seeking injunctive and declaratory relief, such as this one, 'by their very nature' present common questions of law and fact." *Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9, 26 (D.D.C. 2006) (quoting 7A Wright, Miller & Kane, *Federal Practice and Procedure* § 1763 (3d ed. 2006)).

"[C]ommonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citations omitted). Where a class challenges a system-wide practice or policy, "individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Id.*

Here, DOJ has uniformly demanded disclosure of the proposed class's private medical information through the Subpoena. As described in the accompanying Motion to Quash, Moving Parties allege the Subpoena: (1) violates class members'

---

[13] *Id.*; Lauren Pozen, *Dozens protest Children's Hospital LA decision to end gender-affirming care*, CBS News (June 26, 2025), https://perma.cc/U398-WUCV; Nico Lang, *Children's Hospital LA shuts down trans youth clinic, leaving families scrambling*, LA Public Press (June 13, 2025), https://perma.cc/B65L-33U7; Megan Jamerson, *CHLA Transyouth Center closes — 3,000 families seek care elsewhere*, KCRW (July 23, 2025), https://perma.cc/5AVG-UDTJ.

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

privacy interests; (2) exceeds DOJ's statutory subpoena authority; and (3) has an improper purpose. These legal issues are common to all class members, rely on common evidence, and will be subject to common defenses.

Common questions shared by the class include:

- Whether the Subpoena implicates class members' right to informational privacy;
- Whether class members' privacy interests outweigh any purported government interest in the disclosure of class members' information and medical records;
- Whether the Subpoena is unreasonably broad or burdensome;
- Whether DOJ's "issuance of the Subpoena complied with statutory standards; and
- Whether DOJ issued the Subpoena for an improper purpose and/or in bad faith.

Key facts underlying class members' arguments are also common. The single Subpoena presents the same requests for each class member and raises for each class member the same risk of unlawful disclosure of their private medical information. Class members share the same informational privacy interest, as they are each part of a group that the Trump Administration has directly attacked and each face the same risk of identification and harms flowing from identification if Children's Hospital complies with the Subpoena and discloses their information to DOJ. *See supra* Section II.B–D.

Similarly, the relief that Moving Parties seek is also common to the proposed class: quashing the portions of the Subpoena that seek private, identifying or health information of patients and their parents/guardians. The granting of the motion would redress the injuries of the entire putative class.

**D. Proposed class representatives are typical of the proposed class.**

Proposed class representatives must show that their claims are typical of those

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether the other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (internal quotations omitted)**;** *see also Petersen v. Costco Wholesale Co.*, 312 F.R.D. 565, 577 (C.D. Cal. 2016) (citation omitted). Proposed class representatives in this case meet all of these criteria.

Here, the proposed class representatives—seven parents and guardians on behalf of six minor patients and themselves—are subject to the same injury as the rest of the class because their records are the target of the same single subpoena issued by DOJ, presenting the same risk of disclosure of private medical information. *See Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001) (typicality requirement met when "the cause of the injury is the same—here, the Board's discriminatory policy and practice"). Specifically, like the rest of the class, proposed class representatives sought or received gender-related care at Children's Hospital between January 1, 2020, and the present. Ex. 1, Decl. of AA ¶¶ 1, 9; Ex. 2, Decl. of BB1 and BB2 ¶¶ 1, 5; Ex. 3, Decl. of CC ¶¶ 1, 8; Ex. 4, Decl. of DD ¶¶ 1, 8; Ex. 5, Decl. of EE ¶ 1; Ex. 6, Decl. of FF ¶¶ 1, 5. The proposed class representatives, like all members of the class, are part of a group that is widely documented as highly vulnerable to violence, harassment, and discrimination and face serious risk of harm if their identities and medical records are disclosed to DOJ, other government agencies or the general public. [14]All class members, including proposed class representatives, share a well-

---

[14] *AMA Adopts New Policies on First Day of Voting at 2019 Annual Meeting*, AM. MED. ASS'N (June 10, 2019), https://perma.cc/T97S-S9LS (recognizing an "epidemic of violence against the transgender community"); *Transgender people over four times more likely than cisgender people to be victims of violent crime*, UCLA School of Law Williams Institute (March 2023, 2021), https://perma.cc/9V73-RY6C (transgender people are over four times more likely than cisgender people to experience violent crime, including physical and sexual assault); *Disparities in School Connectedness, Unstable Housing, Experiences of Violence, Mental Health,*

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

founded, collective fear of harm arising from the disclosure of their identifying information, including gender identity, and medical records. *See* Ex. 1, Decl. of AA ¶¶ 12–26; Ex. 2, Decl. of BB1 and BB2 ¶¶ 10–20; Ex. 3, Decl. of CC ¶¶ 10–18; Ex. 4, Decl. of DD ¶¶ 10–18; Ex. 5, Decl. of EE ¶¶ 11–14; Ex. 6, Decl. of FF ¶¶ 13–18. The proposed class representatives' experiences are therefore typical among those faced by the class as a whole.

Every member of the proposed class shares identical legal theories based on DOJ's improper issuance of the Subpoena. Class members share the same right to informational privacy and are subject to the same violations of that right. There are no unique defenses that may be asserted against the proposed class representatives as distinguished from other members of the proposed class, and the relief sought is common to the proposed class.

### E. Proposed class representatives and proposed class counsel are adequate representatives.

The final requirement under Rule 23(a) is that proposed class representatives and proposed class counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The court must determine whether the class representatives "have any conflicts of interest with other class members" and will "prosecute the action vigorously on behalf of the class" through qualified counsel. *Staton v. Boeing Corp.*, 327 F.3d 938, 957 (9th Cir. 2003). Proposed class representatives and proposed class counsel meet this requirement.

Proposed class representatives do not have any interest antagonistic to, or in conflict with, the interests of the class members they seek to represent. *See* Ex. 1,

*and Suicidal Thoughts and Behaviors Among Transgender and Cisgender High School Students — Youth Risk Behavior Survey, United States, 2023*, Center for Disease Control and Prevention (October 10, 2024), https://perma.cc/36NN-NEFT (two in five transgender high school students were bullied at school, one in four skipped school because they felt unsafe, and one in four reported attempting suicide in the past year).

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

Decl. of AA ¶¶ 29, 30; Ex. 2, Decl. of BB1 and BB2 ¶¶ 26, 27; Ex. 3, Decl. of CC ¶¶ 24, 25; Ex. 4, Decl. of DD ¶¶ 24, 25 ; Ex. 5, Decl. of EE ¶¶ 21, 22; Ex. 6, Decl. of FF ¶¶ 26, 27. The proposed class representatives and the entire putative class share a common goal: quashing the Subpoena requests that seek production of identifying information or medical records of patients and the parents/guardians of minors. Proposed Class Representatives intend to pursue this goal vigorously to secure remedies for the entire class. They understand their duties as class representatives, including prioritizing the interests of the class over their own. *See id.*

Proposed class representatives' concurrent motion to proceed anonymously in this action does not impact their adequacy as class representatives in a Rule 23(b)(2) class action. *See, e.g., CASA, Inc. v. Trump*, No. DLB-25-201, 2025 WL 2263001, at *12 (D. Md. Aug. 7, 2025) (certifying Rule 23(b)(2) class and noting that the fact that plaintiffs appeared pseudonymously does not defeat adequacy); *Davids v. Adams,* No. 1:25-CV-00334-AKB, 2025 WL 2083832, at *15 (D. Idaho July 24, 2025) (appointing class representatives in a Rule 23(b)(2) class proceeding pseudonymously and rejecting defendants' argument that it "could affect adequacy.")*; Doe v. U.S. Immigr. & Customs Enf't,* No. 1:23-CV-00971-MLG-JMR, 2024 WL 4389461, at *4 (D.N.M. Oct. 3, 2024) (finding that proceeding anonymously would not defeat adequacy in a Rule 23(b)(2) case because "class members cannot opt out of the litigation even if they are unsatisfied with their representation, making it less pressing that the public know the identifying details of their class representatives.").

**F. The proposed class meets the standard for Rule 23(b)(2) certification.**

Federal Rule of Civil Procedure 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Because one purpose of Rule 23(b)(2) was to enable plaintiffs to bring lawsuits vindicating civil rights, the rule must be

25

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

read liberally in the context of civil rights suits." *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980) (quotation marks omitted).

Rule 23(b)(2) is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688. The "indivisible nature of the injunctive and declaratory remedy" justifies certification because the conduct "can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131-32 (2007)).

By issuing the Subpoena to Children's Hospital for all its patients at the Transyouth Center from January 1, 2020, until the present, DOJ has acted on grounds that apply generally to the class. Proposed class representatives and the thousands of people who sought and/or received gender-affirming care will each suffer ongoing violations of their right to privacy should their identifying information and medical records be disclosed. Thus, granting the Moving Parties' motion to quash the Subpoena is appropriate injunctive relief respecting the class as a whole. *See Injunction,* Black's Law Dictionary 784 (6th ed.1990) (defining "injunction" as "[a] court order prohibiting someone from doing some specified act or commanding someone to undo some wrong or injury"); *cf. Nken v. Holder*, 556 U.S. 418, 428 (2009) (injunctive relief is a "means by which a court tells someone what to do or not to do.").

## VI.   THE COURT SHOULD APPOINT ATTORNEYS FROM WESTERN CENTER ON LAW AND POVERTY, LAWYERS FOR GOOD GOVERNMENT, AND IMPACT FUND AS CLASS COUNSEL UNDER RULE 23(G).

When certifying a class, the court is required to appoint counsel to represent the certified class. Fed. R. Civ. P. 23(g). This Court should appoint attorneys from

Western Center on Law and Poverty (Decl. of Robert D. Newman ¶ 1), Lawyers for Good Government (Decl. of Amy Powell ¶ 1), and the Impact Fund (Decl. of Lori Rifkin ¶¶ 1, 2) as class counsel.

In evaluating the adequacy of class counsel, the court must consider: (1) the work counsel has done investigating the claims; (2) counsel's experience in handling class actions and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *Id.* at 23(g)(1). In addition to those factors, the court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id*.

Proposed class counsel have been diligently investigating the specific claims in this case. The organizations have evaluated the legal issues relating to the issuance of the Subpoena, sought publicly available information related to the numerous other administrative subpoenas issued by DOJ to other hospitals around the country, and counseled individuals seeking to avoid the harms resulting from the disclosure of their identifying information and medical records. *See* Decl. of Robert D. Newman ¶ 24, Decl. of Amy Powell ¶ 6, Decl. of Lori Rifkin ¶ 6.

Proposed class counsel organizations and attorneys also have long-standing relevant expertise in federal civil rights and class action litigation. They have served as counsel in many class actions, including significant cases on behalf of LGBTQ+ class members. They have been approved to serve as class counsel in many major civil rights class actions in this Circuit, and federal courts throughout the country. *See* Decl. of Robert D. Newman ¶¶ 4–23, Decl. of Amy Powell ¶¶ 2–5, 8–9, Decl. of Lori Rifkin ¶¶ 3–11.

Proposed class counsel has committed, and is prepared to commit, the time and resources necessary to litigate this case and represent the interests of the class. *See* Decl. of Robert D. Newman ¶ 24, Decl. of Amy Powell ¶ 6, Decl. of Lori Rifkin ¶ 6.

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

## VII.  CONCLUSION

Because they satisfy all the requirements for class certification pursuant to Federal Rule of Civil Procedure, Moving Parties respectfully request that this Court certify the proposed class, appoint them as class representatives, and appoint their attorneys as class counsel.


Dated: November 21, 2025              Respectfully submitted,


                                      WESTERN CENTER ON LAW & POVERTY
                                      LAWYERS FOR GOOD GOVERNMENT
                                      IMPACT FUND

                                      /s/ Megan Flynn
                                      Megan Flynn

                                      /s/ Joy Dockter
                                      Joy Dockter

                                      *Attorneys for Moving Parties*

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Moving Parties, certifies that this brief contains 6,230 words, which complies with the word limit of L.R. 11-6.1.


Dated: November 21, 2025                Respectfully submitted,


                                        WESTERN CENTER ON LAW & POVERTY
                                        LAWYERS FOR GOOD GOVERNMENT
                                        IMPACT FUND

                                        /s/ Megan Flynn
                                        Megan Flynn

                                        /s/ Joy Dockter
                                        Joy Dockter

                                        *Attorneys for Moving Parties*

**MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**